**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOTUHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| _____ ) | |
| CATHY L. HAGER,                        ) | CIVIL ACTION NO: __5:19-cv-00484__ |
|                                                   ) | |
| on behalf of herself and all            ) | |
| others similarly situated,              ) | |
|                                                   ) | |
|            Plaintiff,                          ) | |
|                                                   ) | |
|            v.                                    ) | |
|                                                   ) | |
| OMNICARE, INC.                        ) | |
|                                                   ) | |
|            Defendant.                       ) | |
| _____ ) | |

**NATIONWIDE COLLECTIVE ACTION COMPLAINT**

**INTRODUCTION**

1.      This is an action brought on behalf of individuals who are current and former

delivery drivers of Defendant Omnicare, Inc. ("Omnicare" or "Defendant"), challenging the

unlawful misclassification of them as independent contractors instead of employees.  Omnicare

contracts with various companies (herein referred to as "Regional Services Companies"), who in

turn contract with pharmaceutical delivery drivers who meet the demands of Omnicare's

comprehensive pharmaceutical and pharmaceutical delivery business.  Omnicare controls,

supervises, and directs the manner in which its delivery drivers perform pharmaceutical delivery

services and Omnicare's business is inextricably intertwined to these services.  The above-named

Plaintiff asserts claims under the Fair Labor Standards Act on behalf of herself and all others

similarly situated who have performed delivery work for Defendant in the United States

(excluding drivers who have performed work in the State of Kentucky for Home Care Pharmacy,

LLC; D&R Pharmaceutical Services, LLC; or Three Forks Apothecary, LLC and were based in

Ashland, Beattyville, or Lexington, Kentucky)[1] and who were classified as independent

contractors, seeking remedies for statutory violations resulting from this misclassification.

## PARTIES

2.      Plaintiff Cathy Hager is an adult resident of Seth, Boone County, West Virginia.

From approximately October 2018 to May 17, 2019, Plaintiff Hager delivered pharmaceutical

products on behalf of and at the direction of Defendant in West Virginia.   During the relevant

time, she was Defendant's employee as that term is defined in the FLSA.

3.      Plaintiff Hager brings this action on her own behalf and on behalf of all similarly-

situated individuals.

4.      Defendant Omnicare is a for-profit corporate entity, organized in Delaware, with

its headquarters (principal place of business) in Cincinnati, Ohio.  On information and belief,

Defendant Omnicare conducts business throughout the United States in medical and nursing

facilities, senior living facilities, and distribution centers in at least forty-seven (47) states in the

United States, including West Virginia.

---

[1]      Plaintiff expressly carves out claims on behalf of these Kentucky drivers in view of a previously filed FLSA action in Kentucky, asserting FLSA claims on behalf of all delivery drivers of Defendant working in Kentucky who have performed work in the State of Kentucky for Home Care Pharmacy, LLC; D&R Pharmaceutical Services, LLC; or Three Forks Apothecary, LLC and were based in Ashland, Beattyville, or Lexington, Kentucky.  See Davis v. Omnicare, Inc., et al., Case No. 5:18-cv-00142-REW-MAS (E.D. Ky.)

5.      Defendant is the nation's largest provider of pharmaceutical services in nursing homes in the United States, delivering critical medicine and medical devices to its customers.  It has more than fifty (50) employees.

6.      Defendant is engaged in interstate commerce and employs individuals engaged in interstate commerce and is therefore covered by the FLSA, and is an "employer" as that term is defined in the FLSA.

**JURISDICTION AND VENUE**

7.      The Court has original (federal question) jurisdiction over the FLSA claims asserted in this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8.      Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (b), because a substantial part of the events giving rise to this action occurred in this District and the Defendant is subject to personal jurisdiction in this District.

9.      This complaint is a related case to Young v. Act Fast Delivery of West Virginia, Inc., et al., Case No. 5:16-cv-09788.

**FACTS**

10.      Defendant is a Cincinnati-based pharmaceutical services company specializing in the sale, delivery, and distribution of medicine, medical devices (herein jointly referred to as "pharmaceutical products"), and pharmaceutical services throughout the United States.

11.      Defendant's primary customers are medical and nursing facilities and senior living facilities, nationwide.

12.      Defendant subcontracts with regional delivery companies, who contract with pharmaceutical delivery drivers to provide delivery services to Defendant's customers, consistent with Defendant's contractual obligations to its customers.

13.     Plaintiff and other putative collective members (collectively, "Plaintiffs") have been uniformly misclassified as independent contractors.  Indeed, this Court has already determined that Omnicare is an employer of its drivers in West Virginia.  See Young v. Act Fast Delivery of W. Virginia, Inc., Case No. 5:16-CV-09788, 2018 WL 279996, (S.D.W. Va. Jan. 3, 2018).  On information and belief, Omnicare engages in the same misclassification scheme nationwide.

14.     These regional delivery companies have contracts with Defendant that expressly govern critical terms and conditions of delivery drivers work (such as hiring and firing standards and the manner in which delivery work for Defendant must be performed).  For example, in order to work for Defendant, Plaintiff and other delivery drivers were required to submit to a background check and drug test.

15.     Defendant mandates these contractual terms in its agreements with regional service companies for the purpose of establishing controls over the services performed by Plaintiffs for Defendant (e.g., mandates regarding the facilities to be served and the manner and time in which the deliveries are to be performed with respect to each facility).  Upon information and belief, all the delivery drivers working for Defendant operate out of Defendant's warehouses and pharmacies.

16.     Regional delivery companies enter into agreements with drivers, like Plaintiff, for the drivers to deliver pharmaceutical products from Defendant's warehouse and pharmacy facilities to Defendant's customers.

17.     Although the agreements between drivers and the regional delivery companies (and the regional delivery companies and Defendant) state that drivers are not employees of the Defendant, the economic reality of the arrangement is that drivers are actually employees of the Defendant.

18.     Regional delivery companies are used as intermediaries, but Defendant controls and supervises the delivery process.

19.     Though the length of each driver's day can vary, drivers typically work more than eight (8) hours per day from the time they arrive at the Defendant's facilities until their route servicing Defendant's customers is complete. Upon information and belief, drivers often work twelve (12) or more hours from the time they arrive at the Defendant's facilities until their route is complete.

20.     Drivers, including Plaintiff Hager, typically work more than forty (40) hours per week while providing services for Defendant.  However, drivers are never provided with time and one-half their regular rate of pay for hours worked greater than forty (40) hours in a work week. For example, Plaintiff Hager frequently worked six (6) days in a week for eight (8) or more hours per day.  Consequently, she worked more than forty (40) hours in one week delivering pharmaceutical products for Defendant.  However, she only was paid her ordinary per delivery rate and was never paid any overtime pay.

21.      Drivers, including Plaintiff Hager, frequently are not paid for all hours worked at an hourly rate at or in excess of the minimum wage rates established by the FLSA, 29 U.S.C. § 206, and its implementing regulations.  In many weeks, the payment that the drivers, including Plaintiff Hager, receive for performing delivery services, once subtracted from their out of pocket work related expenses and  divided by the number of hours the drivers had performed those services, has resulted and will continue to result in an hourly rate of pay below the relevant federal minimum wages.

22.     Moreover, Defendant, by misclassifying drivers as independent contractors, forces all drivers to bear all of the costs of performing delivery services, including, but not

limited to, gasoline, tolls, vehicle maintenance (for those who provide their own vehicles), and insurance. Upon information and belief, when these expenses are taken into account, Defendant fails to pay an hourly rate of pay to drivers, including Plaintiff Hager, equal to or greater than the applicable federal minimum wages.  29 C.F.R. § 531.35.

23.     Defendant has the power to terminate any driver for any reason by instructing a regional delivery company to end its relationship with a driver.

24.     The delivery of the pharmaceutical products is a critical and integral part of Defendant's nationwide business, and its delivery business is therefore closely controlled and monitored by Defendant.

25.     On its website, Defendant markets its "24/7 access "and "[d]aily delivery" business services to prospective senior living facility and post-acute facility customers.  Defendant serves as the pharmacy to its customers and clients and provides prescription drug needs through the delivery service it markets.

26.     Defendant contracts with the nursing homes and medical facilities described above. As part of these contracts, Defendant expressly promises to provide pharmaceutical related delivery services and incorporates the cost of its delivery services into the negotiated price package with its customers.  Put another way, Defendant is to suffer all delivery costs as a part of its promise to provide broad pharmaceutical services to its clients.

27.     While Plaintiffs nominally work for regional delivery companies, they make deliveries on behalf of Defendant from Defendant's facilities to Defendant's customers throughout the nation.   Defendant directs the way Plaintiffs must perform these deliveries, consistent with Defendant's business interests, standards, and regulations.  The Plaintiffs' services are fully integrated into Defendant's nationwide business.

28.     Notwithstanding claims by Defendant that its delivery drivers are not employees, the nature of the services that Plaintiffs and collective members performed, and the manner in which they performed these services, indicate that they are actually employees of Defendant.

29.     In addition to direct and indirect controls such as, but not limited to, mandating schedules and routes drivers must comply with, Plaintiffs are closely monitored by Defendant to ensure the protection of Defendant's business interests and the performance of delivery services consistent with such interests.

30.     Defendant maintains offices at the distribution centers where Plaintiffs work. Moreover, Defendant effectively maintains on site offices at each senior facility where Defendant provides pharmacy services and where Plaintiffs make deliveries for Defendant nationwide.

31.     Defendant's managers, supervisors, and other agents are engaged in monitoring Plaintiffs' work and providing instructions directly or indirectly (e.g., through an intermediary service provider) to further Defendant's business interests and promote compliance with its policies.

32.     The work performed by Plaintiff and the putative collective mainly consists of driving vehicles to Defendant's customers and clients pursuant to routes and schedules mandated by Defendant and its affiliates, delivering Defendant's products to these healthcare facilities, and otherwise meeting Defendant's pharmaceutical delivery needs, consistent with Defendant's policies and standards.  The drivers' duties entail, at least in part, picking up products from Defendant's warehouses (including time spent waiting for a prescription and/or route to be released) and driving vehicles to Defendant's customers and clients pursuant to routes and schedules mandated by Defendant, delivering Defendant's products to these senior facilities, waiting at senior facilities for receipt of the delivery, and documenting the pharmaceutical delivery via mandated electronic applications that allow Defendant to track delivery drivers'

work. Drivers also sometimes must make additional trips to Defendant's warehouses if medication is returned or rejected by Defendant's clients.

33.     In addition, Defendant uses its misclassification scheme to unlawfully reduce its normal business expenses and to unlawfully shift those expenses and burdens to Plaintiff and the putative collective without additional compensation.

34.     The delivery drivers are not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as the services they provide to Defendant. Based on all the hours that Defendant requires Plaintiffs to spend making deliveries and servicing Defendant's customers and clients, there is little or no time left for Plaintiffs to make deliveries for any other company besides Defendant. As a result, the Plaintiffs are economically dependent on Defendant.

35.     Defendant's misclassification of its delivery drivers as independent contractors and the additional violations of the FLSA described above were willful and undertaken in bad faith.

**NATIONWIDE COLLECTIVE ACTION ALLEGATIONS**

36.     Plaintiff asserts claims under the FLSA on behalf of all similarly situated drivers nationwide.[2]

37.     Plaintiff's FLSA claims should proceed as a collective action because Plaintiff and other putative collective members worked pursuant to the common misclassification scheme

---

[2]     As indicated in the introduction of this Complaint, these nationwide allegations exclude claims on behalf of delivery drivers of Defendant who have performed work in Kentucky for Home Care Pharmacy, LLC; D&R Pharmaceutical Services, LLC; or Three Forks Apothecary, LLC and were based in Ashland, Beattyville, or Lexington, Kentucky, in view of a previously filed FLSA action alleging claims on their behalf. See Davis v. Omnicare, Inc., et al., Case No. 5:18-cv-00142-REW-MAS (E.D. Ky.)

described above under which Defendant did not pay drivers at least the minimum wage for all hours worked and did not provide any overtime premium when delivery drivers worked more than forty hours per week, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I

### FAIR LABOR STANDARDS ACT–FAILURE TO PAY MINIMUM WAGES
### (INDIVIDUAL AND COLLECTIVE ACTION)

38.     Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

39.     Defendant's willful conduct in failing to ensure that its delivery drivers across the country, with whom it has relied upon to perform a critical and integral component of its business services, receive the federal minimum wage, after accounting for the expenses they paid that were necessary to perform their job, violates the FLSA, 29 U.S.C. § 201, *et seq*.  This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT II

### FAIR LABOR STANDARDS ACT–FAILURE TO PAY OVERTIME WAGES
### (INDIVIDUAL AND COLLECTIVE ACTION)

40.     Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

41.     Plaintiff and the members of the proposed FLSA collective routinely worked in excess of forty (40) hours per workweek for Defendant.

42.     Defendant failed to pay Plaintiff and the members of the putative FLSA collective at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty

hours weekly as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

43.    Plaintiff and the members of the putative collective are entitled to back wages at the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty hours per week, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b). The failure of Defendant to compensate Plaintiff and the members of the putative collective for overtime work as required by the FLSA was knowing, willful, intentional, and done in bad faith.

44.    Plaintiff and the members of the putative collective are also entitled to liquidated damages equal to the amount of unpaid overtime compensation due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

45.    Plaintiff and those similarly situated are also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this honorable Court to enter the following relief:

a.    An Order granting certification of this case as an FLSA collective action and permitting notice to be sent to potential Opt-in Plaintiffs;

b.    An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendant's misclassification, as described above;

c.    Statutory liquidated damages, pursuant to the FLSA;

d.    Attorneys' fees and costs; and

e.    Such other legal and equitable relief as the Court deems just and proper.

Cathy Hager,
on behalf of herself and all
others similarly situated,

By their Attorneys,


/s/ Thomas R. Goodwin
Thomas R. Goodwin (WV Bar No. 1435)
Susan C. Wittemeier (WV Bar No. 4104)
W. Jeffrey Vollmer (WV Bar No. 10277)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
trg@goodwingoodwin.com
scw@goodwingoodwin.com

Harold L. Lichten, *pro hac vice* anticipated
Zachary L. Rubin, *pro hac vice* anticipated
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA  02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com