**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOTUHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| CATHY L. HAGER, | ) | CIVIL ACTION NO: 5:19-CV-00484 |
| | ) | |
| on behalf of herself and all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OMNICARE, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO**
**DISMISS PLAINTIFF'S COMPLAINT**

**I.      INTRODUCTION**

Defendant Omnicare, Inc. ("Omnicare" or "Defendant") owns, controls, and operates at

least two wholly-owned subsidiaries in the State of West Virginia.  Despite this undisputable

fact, Omnicare curiously alleges that it "maintains no offices in West Virginia, and has no

employees in West Virginia."  (Dkt,. 10 at 5).  Indeed, as Plaintiff explains below, not only does

Omnicare own 100% of its West Virginia subsidiaries, but it also prepares and controls their

budgets, negotiates and controls their contractual affairs, submits their corporate filings to the

West Virginia Secretary of State, and otherwise exercises complete control over these West

Virginia entities in nearly all respects.  Moreover, the work done by these subsidiaries is in fact

the core, central work that Omnicare performs.

1

Further, Omnicare, Inc. *specifically* (in addition to its subsidiaries) is registered to do business in the State of West Virginia.  Within these publicly available documents (maintained by West Virginia's Secretary of State), Mr. Thomas S. Moffatt, Omnicare's Vice President and Secretary is listed as a Director and Secretary of Omnicare, Inc.  *See* Ex. A at 5, Omnicare, Inc. Documents Filed With West Virginia, Office of the Secretary of State ("Omnicare, Inc. WV Filings") (certified September 3, 2019).  Notably, here, Omnicare submitted an affidavit from Mr. Moffat in support of its motion to dismiss.  **Mr. Moffatt's affidavit is far more significant for what it *does not* allege, rather than what it claims.**  Although he claims that Omnicare does not have offices or employees[1] in West Virginia (*See* Dkt. 9-1 at ¶2-3), he does *not* deny that Omnicare does business in West Virginia – as he of course cannot for all of the reasons fully explained below.  In fact, Mr. Moffatt, acting as an agent of Omnicare, Inc., personally filed the 2019 Annual Report with the West Virginia Secretary of State for one of Omnicare's West Virginia subsidiary pharmacies.  *See* Ex. B at 7, Compass Health Services, LLC Documents Filed With West Virginia, Office of the Secretary of State ("Compass Health WV Filings") (certified September 3, 2019).  All of Plaintiff's claims in this lawsuit are tied directly to Omnicare's actions and practices in West Virginia.

---

[1]     As explained fully below, the constitutional reasonableness of exercising specific jurisdiction under a state's long-arm statute depends on the foreseeability "that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citation omitted).  A company who does lots of business in a state, *and relies on workers to meet its business demands*, can be reasonably expected to be called into court to answer complaints of labor violations in that forum.  **Omnicare's argument, that it should not have to answer the complaints of its workers because it allegedly does not employ them or anyone else in West Virginia, is absurd on its face where the allegations at issue challenge that very notion.**

Omnicare has continuous and substantial business operations and interests in West Virginia – far more than the minimum contacts necessary to establish specific jurisdiction under West Virginia's long-arm statute.   See, e.g., Nezan v. Aries Techs., Inc., 226 W. Va. 631, 640, 704 S.E.2d 631, 640 (2010) (minimum contacts established where it has been found that a defendant "purposefully avails [itself] of the privilege of conducting activities in the forum state." ).  This is especially true when applying West Virginia law that unmistakably indicates that personal jurisdiction is established over Omnicare, Inc. based on its evident control over and interest in its West Virginia subsidiaries.  See Bowers v. Wurzburg, 501 S.E.2d 479, 490 (W. Va. 1998).  Indeed, judges in this District have not hesitated to apply these principles to exercise personal jurisdiction over non-resident parent companies based on their relationships with their subsidiary entities in West Virginia. See, e.g., Adkins v. CSX Transportation, Inc., No. CV 3:18-0321, 2019 WL 3432537, at *2–3 (S.D.W. Va. July 30, 2019) (exercising personal jurisdiction over a non-resident corporate defendant based on the activities of its subsidiaries and the corporation's relationship with its local subsidiaries); Toney v. Family Dollar Stores, Inc., 273 F. Supp. 2d 757, 762 (S.D.W. Va. 2003) ("Where the parent exercises substantial, if not complete, hegemony over the subsidiary's operations and the subsidiary is a separate entity in name only, the parent corporation plainly has made a choice to avail itself of the benefits of the forum.").  In fact, declining to exercise jurisdiction would be contrary to the vast statutory reach of West Virginia's long-arm statute.  See, e.g., Aries Techs., Inc., 226 W. Va. at 642 (recognizing the breadth of West Virginia's long arm statute).

Additionally, here, Omnicare, Inc. does not actually dispute that it has "'purposely availed' itself of the privilege of conducting activities in the State" for personal jurisdiction purposes. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)

3

(internal bracket omitted).  As Plaintiff will explain, Omnicare attempts to create the mere illusion of lack of contact with the state, but it ultimately concedes this very point in apparent recognition of the well-established principle that jurisdiction under a state's long-arm statute "may not be avoided merely because the defendant did not *physically* enter the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. at 476.  Ultimately, Omnicare's sole argument with respect to specific jurisdiction is that Plaintiff's claims allegedly do not have a sufficient nexus to West Virginia.  See Dkt. 10 at 5.  This is plainly untrue.  Here, personal jurisdiction is easily established, notwithstanding Omnicare's declaration from Mr. Moffatt denying that it has offices or employees in West Virginia (a statement that can only reasonably be understood as part of a thinly veiled corporate shell game).

Finally, venue is proper for reasons overlapping with those that establish personal jurisdiction over Defendant.  Plaintiff has alleged that a substantial part of the events at issue occurred in the Southern District of West Virginia, a jurisdiction where the Defendant does extensive business and relies upon the work of delivery drivers such as Plaintiff.  S*ee* Complaint at ¶¶ 2, 4 8, 20, 32.   Accordingly, Omnicare's Motion to Dismiss Plaintiff's Complaint should be denied in its entirety.

**II.     FACTS**

For purposes of Omnicare's motion, all facts must be reviewed in the light most favorable to Plaintiff, and Plaintiff's allegations must be taken as true.  Bashaw v. Belz Hotel Mgmt. Co., 872 F. Supp. 323, 324 (S.D.W. Va. 1995), quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).  Omnicare is "a Cincinnati-based pharmaceutical services company specializing in the sale, delivery, and distribution of medicine, medical devices (herein jointly referred to as 'pharmaceutical products'), and pharmaceutical services throughout the United

4

States." Complaint at ¶ 10. In fact, Omnicare conducts business "in at least forty-seven (47)

states in the United States, including West Virginia." Complaint at ¶ 4.

Although Omnicare claims that it "maintains no offices in West Virginia, and has no

employees in West Virginia" (Dkt. 10 at 5), in fact, it owns 100 percent of two West Virginia

entities that are completely controlled by Omnicare, Inc. The facts supporting this assertion are

as follows:

**Omnicare's Ownership and Control Over Its West Virginia Subsidiaries**

- Home Care Pharmacy, LLC, d/b/a Omnicare of Nitro, (hereinafter "Omnicare of Nitro")
  and Compass Health Services, LLC, d/b/a Omnicare of Morgantown, (hereinafter
  "Omnicare of Morgantown") are wholly-owned corporate subsidiaries of Omnicare, Inc.
  doing business in West Virginia. *See* Borman Dep. Excerpts at 8, 25-26 (dated August
  9, 2017)[2], attached hereto as Ex. C; Ex N to Shuford Decl. (Ex. D[3]) at ¶ 13 (an Omnicare
  SEC filing reflecting that it owns 100% of these West Virginia entities).

- Omnicare has recently acted as a *single entity* for purposes of defending similar legal
  claims in the Southern District of West Virginia. Indeed, in <u>Young v. Act Fast Delivery
  of W. Virginia, Inc.</u>, Case No. 5:16-CV-09788, Omnicare, Inc. answered the complaint
  collectively with its West Virginia subsidiaries as "Omnicare Defendants"). *See* Dkt. 17.
  Further, in <u>Young</u>, Defendant and its West Virginia subsidiaries collectively explained
  that "Omnicare contracts with long-term care facilities to provide them with patient
  pharmaceuticals-including narcotics-**out of its two West Virginia-based pharmacies
  located in Morgantown and Nitro**." *See* <u>Young v. Act Fast Delivery of W. Virginia,
  Inc.</u>, Case No. 5:16-CV-09788, Dkt. 209 at 1-2 (emphasis added) (The Omnicare
  Defendants' Brief in Support of Their Motion for Summary Judgment).

- Chris Lockard, who identified himself as the General Manager of Omnicare of
  Morgantown (in an August 11, 2017 deposition) explained that his pay checks were
  historically issued by Omnicare, Inc., and more recently by CVS, Omnicare Inc.'s parent
  company. *See* Lockard Dep. at 9-10 (dated August 11, 2017) attached hereto as Ex. E.
  Mr. Lockard reports directly to an Omnicare, Inc. corporate executive. <u>Id</u>. at 63.

- Mr. Lockard was previously designated by Omnicare to explain the relationship between
  it and its West Virginia subsidiaries. <u>Id</u>. at 60. As Mr. Lockard explained, Omnicare,

---

[2]      Mr. Borman was designated by Omnicare as the corporate representative of Omnicare of
Morgantown, Omnicare of Nitro, and Omnicare, Inc. for purposes of this deposition. <u>Id</u>. at 22.
[3]      Because of the large size of Exhibit D, it has been broken into multiple parts and filed as
Ex. D(1) and Ex. D(2).

Inc. directs all of the activities of Omnicare of Nitro and Omnicare of Morgantown.  Id.
at 63.  Indeed, Omnicare, Inc. operates all of its West Virginia pharmacies.  Id. at 61-62.

- Omnicare, Inc. establishes annual budgets for its subsidiaries – Mr. Lockard has nothing
  to do with preparing these annual budgets.  Id. at 72.  In fact, in August 2017, Mr.
  Lockard testified that the budgets he has received from Omnicare, Inc. "ha[ve] gone
  down every year since [he's] been doing this."  Id. at 80.

- At his deposition, Mr. Lockard agreed that "Omnicare, Inc., is putting pressure [on], and
  lowering the allocated amount that" is used for West Virginia delivery services in the
  budget created by Omnicare, Inc.  Id. at 80.  Moreover, Mr. Lockard explained that, not
  only does Omnicare, Inc. control the West Virginia pharmacies' annual budgets, but the
  routes performed by delivery drivers in West Virginia "are monitored daily, and that's a
  Corporate monitoring process."  Id. at 83.

- Jonathan Borman was Omnicare Inc.'s Vice President of Strategic Sourcing and Real
  Estate until June 2016.  Borman Dep. (Ex. C) at 6-7.  In this role, he controlled an $800
  million purchasing budget for Omnicare, Inc., spent throughout its 200 locations
  nationwide, including Omnicare's pharmacies located in Nitro and Morgantown, West
  Virginia.  Id. at 7-8.  His purchasing responsibilities included delivery services for
  Omnicare in Nitro and Morgantown, West Virginia.  Id. at 8.

- At least during Mr. Borman's tenure, Omnicare Inc. was centrally involved in the
  purchasing responsibilities for delivery services at its locations in Nitro and Morgantown
  (and in negotiating the related courier agreements).  Id. at 7-8, 26-27.  As Mr. Borman
  explained, while Omnicare Inc.'s physical requests for proposals (RFPs) for delivery
  subcontracting services were initiated and controlled by Omnicare, Inc., the contracts
  were technically in the names of and signed by Omnicare's subsidiaries.  Id.  at 11-12.
  However, Mr. Borman explained that he, as an executive of Omnicare, Inc., had "rights
  to govern **all other entities** from a purchasing responsibility standpoint" despite the fact
  that the delivery contracts technically had subsidiaries' names on them.  Id. at 12.
  (emphasis added).  Further, while he would work with the local subsidiaries to select a
  delivery contractor, he "had the responsibility of developing the contract which included
  the pricing, and responsibility of getting the contract executed by the appropriate
  powers."  Id. at 13-14.

- Omnicare Inc.'s goal in negotiating these agreements is to keep these delivery contract
  costs "as low as possible" "[b]ecause that would increase the profits of Omnicare, Inc."
  Id. at 15.

## Omnicare's Corporate Filings with the State of West Virginia

- In 2018 and 2019, as well as years prior, Omnicare, Inc. filed Annual Reports with the
  Secretary of State of West Virginia, in order to do business in this State.  *See* Ex. A, at 5-
  9.  In fact, Omnicare's Vice President and Secretary, Thomas S. Moffatt, does not dispute
  the fact that Omnicare conducts business in the State of West Virginia.  *See generally*,

Dkt. 9-1 (hereinafter "Decl. of Moffatt"). Nor could he, because Mr. Moffatt's name can be found on numerous corporate filings submitted to the State of West Virginia as a required by entities engaging in business in the State. *See* Ex. A, at 5-9.

- Indeed, on Omnicare's Inc.'s corporate filings to engage in business in West Virginia, Mr. Moffatt is listed as Omnicare Inc.'s Director and Secretary. Id. at 7.

- Further, a review of the 2019 Annual Report submitted by Omnicare of Morgantown reveals that Mr. Moffatt is in fact the individual who submitted the report to the State of West Virginia. *See* Ex. B at 7. Indeed, Mr. Moffatt expressly "certify[ied] that [he is] a member or manager or individual holding a power-of-attorney and [was] duly authorized to file" Omnicare of Morgantown's 2019 Annual Report "as required by West Virginia Code §31B-2-211." Id. Therein, Mr. Moffatt expressly indicates that his capacity is that of a member of Omnicare of Morgantown. Id.

- According to corporate filings with the West Virginia Secretary of State, Omnicare of Nitro and Omnicare of Morgantown both share a designated office **that is the same as Omnicare Inc.'s headquarters, at** 900 Omnicare Center, 201 East Fourth Street, Cincinnati, OH 45202 ("900 Omnicare Center"). *See* Ex. F at 13, **Home Care Pharmacy, Inc. Corporate Filings with West Virginia, Secretary of State's Office (certified September 3, 2019);** Ex. B at 6; *See also* Ex. D, Shuford Declaration at ¶ 8, Ex. G to Shuford Declaration.

- Omnicare, Inc.'s headquarters, 900 Omnicare Center, is not just the designated office address of its West Virginia subsidiaries, but it is also the address of the "member" organizations designated in the West Virginia corporate filings of Omnicare of Nitro and Omnicare of Morgantown. For example, Omnicare of Nitro's designated member, according to the public records available on the Secretary of State's online corporate database service, is an entity named "Neighborcare Pharmacy Services, Inc." – **an entity that is also located at 900 Omnicare Center in Cincinnati**.[4] See Ex. F at 13.

**Further Evidence of Omnicare's Purposeful Contact with this Forum and Plaintiff**

- In order to apply for a job with Omnicare in West Virginia, applicants can visit Omnicare's corporate website. See Shuford Decl. (Ex. D) at ¶¶ 3-6. Omnicare's website provides a link titled "Click here to see our current opening." Shuford Decl. at ¶ 4. Clicking on the link redirects applicants to a job portal hosted by Omnicare's parent

---

[4]     Further, Neighborcare Pharmacy Services, Inc, a "member" of Omnicare of Nitro, lists none other than declarant Thomas Moffat as a "Director" and "President" of Neighborcare Pharmacy Services, Inc. *See* Decl. of Shuford at ¶ 12, Ex. L to Shuford Declaration. **In other words, Omnicare of Nitro is controlled by an entity that shares a location with Omnicare, Inc.'s corporate headquarters, Neighborcare Pharmacy Services, Inc., and that same entity is controlled by Omnicare Inc.'s Vice President and Secretary, Thomas S. Moffatt**. *See also* Decl. of Moffatt at ¶ 1.

company, CVS.  Id.  Therein, applicants can search for jobs by location, including in West Virginia.  Id. at ¶ 3-5.

- As of September 3, 2019, Omnicare was advertising to hire a "Registered Nurse Consultant – Long Term Care – West Virginia.".  *See* Shuford Decl. at ¶3-6.  The job description provides that "[d]irectly, and through our subsidiaries, Omnicare provides a broad array of pharmacy-related services to long term care and to other customers in the health care environment."  See Ex. D to Shuford Decl.  Omnicare maintains nearly identical job postings in other jurisdictions, near and far, such as in Charleston, South Carolina and De Moines, Iowa.  Shuford Decl. at ¶ 7.

- Omnicare, Inc.'s executives and agents negotiate courier agreements that include details about the services to be provided by delivery drivers to Omnicare's customers in West Virginia.  Borman Dep. (Ex. C) at 27-29.

- Indeed, as Mr. Lockard explained, not only does Omnicare, Inc. negotiate courier agreements and dictate their terms, but the routes performed by delivery drivers in West Virginia "are monitored daily, and that's a Corporate monitoring process."  Lockard Dep. (Ex. E) at 83.

- Further, when Omnicare submits a Request for Proposal ("RFP") to a delivery courier, Omnicare includes specifications regarding the routes and mileage in the RFP.  See Lockard Dep. (Ex. E) at 126.  In addition to crafting the West Virginia RFPs, Omnicare, Inc. ultimately determines whether or not to renew its courier contracts in West Virginia.  See Ennis Dep. at 105 (dated August 3, 2017), attached hereto as Ex. G.

- Omnicare, Inc. requires its local subsidiaries to comply with corporate security policies at the Omnicare facilities where delivery drivers work.  Borman Dep. (Ex. C) at 20.  ("[E]ven though the [Omnicare] buildings were leased, Omnicare put [its] own security systems which included key access, camera, et. cetera.").  Specifically, Omnicare of Nitro and Omnicare of Morgantown had delivery driver waiting areas, "so the drivers would have a swipe card to be able to gain access to the driver waiting area only".  Id.

- Omnicare, Inc. and its agents are also intimately involved in preparing and submitting bids to obtain business in the State of West Virginia.   For example, attached as Exhibit P to Decl. of Shuford is an Omnicare of Nitro bid submitted to the West Virginia Department of Administration (dated August 15, 2013).  The three-page executive summary of this Omnicare Nitro bid is signed by Matthew Lerner, **Contracts Manager, Government Accounts, Omnicare, Inc**.  See Id. at 6.

- In addition to Omnicare of Nitro, Omnicare also utilizes its Morgantown subsidiary to seek business in West Virginia.  See Omnicare Bid Documents submitted April 3, 2017, attached Ex. O to Decl. of Shuford.  These bid documents underscore Omnicare Inc.'s control over Omnicare of Morgantown; indeed, Omnicare, Inc.'s corporate logo marks

nearly every page and the bid provides that "**Omnicare, Inc. has provided service in West Virginia for years**."  Ex. O to Shuford Decl. at 4. (emphasis added)[5]

In sum, not only does Omnicare own 100% of its West Virginia subsidiaries, but it also prepares and controls their budgets, negotiates and controls their contractual affairs, submits their corporate filings to the West Virginia Secretary of State, and otherwise exercises control over these West Virginia entities in nearly all respects.

**Plaintiff's Work as a Delivery Driver for Omnicare In West Virginia**

Delivery drivers, such as Plaintiff, "deliver pharmaceutical products from Defendant's warehouse and pharmacy facilities to Defendant's customers."  Complaint at ¶ 16.  This delivery work is "a critical and integral part of Defendant's nationwide business, and its delivery business is therefore closely controlled and monitored by Defendant."  Complaint at ¶ 24.  Indeed, high-level executives of Omnicare are intimately involved in executing the agreements "with regional service companies for the purpose of establishing controls over the services performed by Plaintiffs for Defendant."  Complaint at ¶ 15; *See also*, Borman Dep. at 11-15 (Ex. C).  Under this nationwide misclassification scheme orchestrated by Defendant, "[f]rom approximately October 2018 to May 17, 2019, Plaintiff Hager delivered pharmaceutical products on behalf of and at the direction of Defendant in West Virginia."  Complaint at ¶ 2.

---

[5]      In attempting to acquire business from the State of West Virginia, Omnicare of Morgantown has warranted that "[b]ecause of Omnicare [of Morgantown's] presence within Omnicare, Inc., the resources, information and ability to draw on nationwide pharmacy resources uniquely qualifies [it] to continue working with [West Virginia] to provide the best quality of care to meet the patients' needs."  Ex. O to Decl. of Shuford at 6.  While these detailed bid documents were purportedly submitted by Omnicare of Morgantown, the underlying documents were repeatedly signed by Joshua Schiller, Senior Legal Counsel.  Id. at 33, 35, 38, 40, 42, 44, 45, 47-49-50.  According to Attorney Schiller's Linkedin profile, he is presently Associate General Counsel at Omnicare, Inc. and has been since March of 2011.  *Available at* https://www.linkedin.com/in/joshua-schiller-4457157.  In fact, the State of West Virginia "Purchasing Affidavit" was notarized by Attorney Schiller in **Hamilton County, Ohio**.  Ex. O to Decl. of Shuford at 50.  Cincinnati, Ohio, the location of Omnicare's headquarters, is located in Hamilton County.

Plaintiff is a resident of Seth, Boone County, in the Southern District of West Virginia. Id. Plaintiff has alleged that under the economic realities of the relationship with Defendant, drivers delivering pharmaceutical products for Omnicare "are actually employees of Defendant." Complaint at ¶ 17. In fact, this Court has already determined that at least some of Omnicare's delivery drivers **are its employees under the economic realities of the relationship**. See Young v. Act Fast Delivery of W. Virginia, Inc., Case No. 5:16-CV-09788, 2018 WL 279996, (S.D.W. Va. Jan. 3, 2018); Complaint at ¶ 13. In contradiction with this Court's finding in January 2018 that Omnicare is a statutory employer under the Fair Labor Standards Act ("FLSA") of the West Virginia drivers in that case, Omnicare's Vice President and Secretary claims that "[b]etween October 2018 and May 2019, Omnicare, Inc. did not have—and does not currently have—any employees in West Virginia." Decl. of Moffat at ¶ 3 (Dkt. 9-1).

Nonetheless, Omnicare and its wholly-owned corporate subsidiaries actively seek and do business in West Virginia. In order to meet its business promises such as those Omnicare makes to the State of West Virginia, Omnicare subcontracts with regional delivery companies who contract with delivery drivers such as Plaintiff "to provide delivery services to Defendant's customers, consistent with Defendant's contractual obligations to its customers." Complaint at ¶ 12. Indeed, in bid documents submitted to West Virginia's Department of Administration, Omnicare of Morgantown explains that it "provides same-day delivery through certified and bonded carriers familiar with the delivery needs of our customers." Ex. O to Decl. of Shuford at 4.[6] These contracts "expressly govern critical terms and conditions of delivery work (such as

---

[6]     As Plaintiff has alleged, these carriers (or "regional service companies") "are used as intermediaries, but Defendant controls and supervises the delivery process." **Complaint at ¶ 18.**

hiring and firing standards and the manner in which delivery work for Defendant must be performed)."  Complaint at ¶ 14.

### III.   LEGAL STANDARD

Although Plaintiff bears the burden of establishing jurisdiction, such burden is light at this early stage of the proceedings, and Plaintiff need only make a *prima facie* showing that personal jurisdiction is appropriate. See Miller v. SMS Schloemann-Siemag, Inc., 203 F. Supp. 2d 633, 638 (S.D.W.Va. 2002); Bashaw v. Belz Hotel Mgt. Co., 872 F. Supp. 323, 324 (S.D.W.Va. 1995).  Further, "the Court must 'construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" Bashaw v. Belz Hotel Mgmt. Co., 872 F. Supp. 323, 324 (S.D. W. Va. 1995), quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

### A.  Personal Jurisdiction Under West Virginia's Long-Arm Statute

Pursuant to "Federal Rule of Civil Procedure 4(k)(1)(A)…a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." Vass v. Volvo Trucks N. Am., Inc., 304 F. Supp. 2d 851, 853 (S.D.W. Va. 2004).  As the Fourth Circuit has explained, West Virginia's long-arm jurisdictional statute "is coextensive with the full reach of due process." In re Celotex Corp., 124 F.3d 619, 627 (4th Cir. 1997).  As such, the inquiry into whether a court may exercise jurisdiction over a non-resident under West Virginia's long-arm statute "necessarily merges with the Constitutional inquiry" and thus "centers on whether exercising personal jurisdiction over [a defendant] is consistent with the Due Process Clause." Id.  at 628.

It is well-established that jurisdiction is proper under the State's long-arm statute where a defendant has "minimum contacts with the state of the forum that the maintenance of an action in

the forum does not offend traditional notions of fair play and substantial justice." Easterling v. Am. Optical Corp., 207 W. Va. 123, 130, 529 S.E.2d 588, 595 (2000) (citations omitted). Ultimately, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. (citations omitted).

## III.   ARGUMENT

### A. Personal Jurisdiction Is Easily Established in View of Omnicare's Overwhelming Control Over Its West Virginia Subsidiaries

Personal jurisdiction over the Defendant is easily established here under West Virginia law recognizing the appropriateness of exercising jurisdiction over a non-resident corporation that exerts significant control over subsidiary entities in West Virginia.  As the Supreme Court of Appeals has explained, "Justice may require that courts look beyond the bare legal relationship of the parties to prevent the corporate form from being used to perpetrate injustice, defeat public convenience or justify wrong." State ex rel. Bell Atl.-W. Virginia, Inc. v. Ranson, 201 W. Va. 402, 416, 497 S.E.2d 755, 769 (1997) (citation and internal quotation marks omitted).  Here, like in State ex rel. Bell Atl.-W. Virginia, Inc.:

> [b]ased upon the facts presented and looking beyond the petitioners' 'formal separate corporate structure,'… to the extent they have been presented, it is difficult to discern where [Omnicare, Inc.'s] activities stop and [its West Virginia subsidiaries] begin. Construing plaintiffs' allegations in the light most favorable to them, plaintiffs have made a *prima facie* showing that [Omnicare] is transacting business in this State under *W.Va.Code,* 56–3–33(a)(1)

Id. at 416–17.  Courts consider the following eleven factors in this jurisdictional analysis:

1. Whether the parent corporation owns all or most of the capital stock of the subsidiary;
2. Whether the parent and subsidiary corporations have common directors and officers;
3. Whether the parent corporation finances the subsidiary;
4. Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
5. Whether the subsidiary has grossly inadequate capital;

6. Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;
7. Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
8. Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
9. Whether the parent corporation uses the property of the subsidiary as its own;
10. Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
11. Whether the formal legal requirements of the subsidiary are not observed.

See Adkins v. CSX Transportation, Inc., No. CV 3:18-0321, 2019 WL 3432537, at *2 (S.D.W. Va. July 30, 2019) (where Judge Chambers recently exercised jurisdiction over CSX Transportation, Inc. based on its relationship with its local subsidiaries and application of the above factors). Personal jurisdiction is overwhelmingly established when applying these factors here. Plaintiff can easily satisfy her light burden. Specifically:

- Omnicare of Nitro and Omnicare of Morgantown are wholly owned subsidiaries of Omnicare, pursuant to Omnicare, Inc's own corporate filings (Factors 1 and 4). *See* Exs. Ex N to Shuford Decl. (Ex. D) at ¶ 13 (an Omnicare SEC filing reflecting that it owns 100% of these West Virginia entities).

- Omnicare, Inc. causes these local entities to file Annual Reports in the State of West Virginia and has organized these entities in a manner to bypass the technical legal requirements that they are separate entities (i.e., these local subsidiaries are all controlled by entities or individuals directly tied to Omnicare's corporate headquarters). Individuals managing the day-to-day operations of these subsidiaries take their orders from Omnicare, Inc. (Factors 2 & 10) *See* Ex. B at 6, 7; Ex. F at 13; Ex. E at 63. **In short, all roads to lead to Omnicare's headquarters at 900 Omnicare Center.**

- Omnicare controls its subsidiaries' assets, provides these subsidiaries with annual budgets (that it has historically cut), and controls these subsidiaries business contracts, including, but not limited to their courier contracts. Omnicare, Inc. operates these subsidiaries with the goal of cutting costs and increasing its own profits. *See* Ex. C at 15. The businesses of these subsidiaries exist to serve Omnicare, Inc.'s interests and they have substantially no business that is separate from the control of Omnicare, Inc. Not only does Omnicare, Inc. control these local entities as their own, but Omnicare, Inc. uses them to bid on business with the State of West Virginia. *See* Exs. O and P to Shuford Decl. Further, Omnicare, Inc. and/or its parent company pay the salaries of Omnicare's agents in this state. *See* Lockard Dep. at 9-10. (Factors 3-7, 9).

- Throughout public filings (e.g., bids to the state and pleadings to this Court) Omnicare, Inc. has routinely referred to Omnicare, Inc. and its subsidiaries collectively as "Omnicare."  Further, these subsidiaries notably use Omnicare's corporate name to do business (as opposed to their technical legal names, Home Care Pharmacy and Compass Health).  Indeed, these legal names are intended to convey that these entities are "a department or division of the parent corporation."  See Factor 8, supra.  Additionally, in job postings across the nation, Omnicare refers to its subsidiaries and Omnicare, Inc. collectively as Omnicare (Factor 8); See Ex. D to Shuford Decl; Shuford Decl. at ¶¶ 3-7.

- Generally speaking, apart from the mere corporate formalities, these West Virginia subsidiaries, d/b/a/ as Omnicare of Nitro and Morgantown respectively, are not actually distinct from Omnicare, Inc.   (Factor 11).

As in Toney v. Family Dollar Stores, Inc., "[a]pplying the Bowers factors, a considerable majority support the conclusion that [Omnicare of Nitro and Omnicare of Morgantown] are not correctly characterized as separate corporations for jurisdictional purposes, but instead [Omnicare of Nitro and Omnicare of Morgantown], operate as divisions or branches of [Omnicare], Inc., which is 'The Company.'"  Family Dollar Stores, Inc., 273 F. Supp. 2d 757, 762–63.  See also Id. at 762 ("Where the parent exercises substantial, if not complete, hegemony over the subsidiary's operations and the subsidiary is a separate entity in name only, the parent corporation plainly has made a choice to avail itself of the benefits of the forum."); Rowe v. AT & T, Inc., No. 6:13-CV-01206-GRA, 2014 WL 172510, at *6 (D.S.C. Jan. 15, 2014), quoting Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir.2004) ("an 'agent's actions may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct.'"); See also Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 722 (D.S.C. 2007) ("The contacts within the forum of a party's agent, partner, or joint venturer may…be attributed to the party for purposes of establishing jurisdiction.").

### B. Extensive Contacts Exist to Establish Personal Jurisdiction Over Omnicare – An Entity Engaging in Substantial Business in West Virginia and Profiting from the Work of Plaintiff

Personal jurisdiction is also clearly established in this case based on a straightforward application of the Fourth Circuit's specific jurisdiction test.  This is especially true where Omnicare *does not actually dispute*: (1) doing business in the State of West Virginia and: (2) the prongs in the jurisdictional test that concern the requirement that a non-resident Defendant have minimum contacts with a forum state.

Omnicare's current Vice President and Secretary, Thomas S. Moffat, alleges that "Defendant maintains no offices in West Virginia, and has no employees in West Virginia." Dkt. 10 at 5, citing Decl. of Thomas S. Moffatt, Ex. A at ¶¶ 2-3.  Although he claims that Omnicare does not have offices or employees in West Virginia, he does *not* deny that Omnicare does business in West Virginia – as he of course cannot for all of the reasons discussed above. As established above, Omnicare has continuous and substantial business operations and interests in West Virginia – far more than the minimum contacts necessary to establish specific jurisdiction under West Virginia's long-arm statute.  *See*, e.g., Nezan v. Aries Techs., Inc., 226 W. Va. at 640 (minimum contacts established where it has been found that a defendant "purposefully avails [itself] of the privilege of conducting activities in the forum state."  (citation omitted)); *See also* State ex rel. Ford Motor Co. v. McGraw, 237 W. Va. 573, 589, 788 S.E.2d 319, 335 (2016) (accord).

Second, as explained below, although exercising personal jurisdiction over Omnicare based on the overwhelming control it exercises over its corporate subsidiaries in this State is itself plainly proper, jurisdiction is also easily established in this case because Omnicare does *not actually dispute* the existence of minimum contacts with West Virginia.  As Omnicare recognizes in its brief, in assessing specific jurisdiction, courts in this Circuit consider:

 (1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those

15

activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

Dkt. 10 at 5, quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); *See also* State ex rel. Ford Motor Co. v. McGraw, 237 W. Va. at 589 (accord).

In sum, Omnicare conceded in its brief the two prongs in the Fourth Circuit's specific jurisdictional analysis that concern a defendant having sufficient contacts with a state in order to properly exercise jurisdiction (prongs 1 and 3, *supra*).  Omnicare only contends that "Plaintiff cannot establish **the second prong** of the personal jurisdiction inquiry."  Dkt. 10 at 5.  (emphasis added).  In other words, Omnicare is not challenging the constitutional reasonableness of being "haled into court" in this District; it is simply arguing that Plaintiff's claims do not arise out of its activities in West Virginia.  **Omnicare's contention is wrong**.

## C. Plaintiff's Claims Arise Out of Omnicare's Pharmaceutical Business in The State

Defendant has solely challenged "prong 2" of the Fourth Circuit's specific jurisdictional analysis.  In arguing that Plaintiff cannot satisfy prong 2 of the Fourth Circuit's specific jurisdiction analysis (i.e., "whether the plaintiffs' claims arise out of those activities directed at the State") Defendant erroneously argues that "Plaintiff's jurisdictional theory is predicated on one fundamental misconception—namely, that Defendant 'contracts with various companies…, who in turn contract with pharmaceutical drivers,' including Plaintiff.  (Doc. 1 ¶ 1.)."  Dkt. 10 at 6.  However, the ultimate question regarding prong 2 is "whether the litigation results from alleged injuries that 'arise out of or relate to' the nonresident defendant's activities in the forum."  State ex rel. Ford Motor Co, 237 W. Va. at 596, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

Defendant attempts to paint "Plaintiff's jurisdictional theory" as being predicated on a single allegation in her complaint.  This argument underscores Defendant's studious efforts to

16

obfuscate the clear nexus between Plaintiff's complaint and Defendant's activities in the forum

(viewed in their entirety and while drawing all reasonable inferences Plaintiff's favor)[7].  *See*,

e.g., Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014), *quoting*

Combs v. Bakker, 886 F.2d at 676 (On Defendant's 12(b)(2) motion, "the district court 'must

construe all relevant pleading allegations in the light most favorable to the plaintiff, assume

credibility, and draw the most favorable inferences for the existence of jurisdiction.'"); State ex

rel. Ford Motor Co., 237 W. Va. at 581–82 (accord).

Indeed, Plaintiff's claims under the FLSA "arise out of or relate" to the fact she worked

for Omnicare in West Virginia without receiving minimum wages for all hours worked or a

premium for the hours she worked in excess of 40 per week in this forum and pursuant to

Omnicare's misclassification scheme – a scheme that she has alleged is nationwide, including

West Virginia.  *See* Complaint at ¶¶ 2, 4, 13, 20-22.  **Ultimately, the question for the Court is**

**whether Omnicare can foreseeably be expected to be called into this Court to answer for its**

**labor practices as alleged by Plaintiff.  The answer to that question is a resounding "yes."**

Indeed, Omnicare has recently been called into this Court to answer for its labor practices and

reliance on misclassified workers such as Plaintiff.  Here, "[i]n view of the evidence in this case,

[the court] cannot conclude that hauling [Omnicare] into a court in West Virginia to answer for

an alleged injury associated with its [pharmaceutical delivery services] in this State, 'offend[s]

---

[7]      While Defendant cites Combs v. Bakker, 886 F.2d at 676 (Dkt. 10 at 2) for the ultimate
proposition that it is Plaintiff's burden to prove jurisdiction by a preponderance of evidence,
Plaintiff need only make a *prima facie* showing of personal jurisdiction.  *See* Grayson v.
Anderson, 816 F.3d 262, 268 (4th Cir. 2016) (if "the court addresses the personal jurisdiction
question by reviewing only the parties' motion papers, affidavits attached to the motion,
supporting legal memoranda, and the allegations in the complaint...plaintiff need only make
a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge")

traditional notions of fair play and substantial justice." Easterling v. Am. Optical Corp., 207 W. Va. at 132, quoting Norfolk S. Ry. Co. v. Maynard, 190 W. Va. 113, 116, 437 S.E.2d 277, 280 (1993); See also, Sigala v. ABR of VA, Inc., 145 F. Supp. 3d 486, 490 (D. Md. 2015) (personal jurisdiction proper over nonresident Defendant in FLSA collective where "Plaintiffs allege in their Complaint that Defendants caused them injury by failing to properly compensate them for overtime hours that Plaintiffs worked on jobsites in Maryland, and by failing to pay the minimum wage for some regular hours worked in Maryland.")

In sum, Plaintiff has put forth more than sufficient evidence and allegations to establish that Omnicare, in order to increase its profits, has engaged in the misclassification scheme at issue in this case.[8]  Omnicare does business in the State of West Virginia (including with the State itself) and it relies upon delivery drivers such as Plaintiff to fulfill its promises to its customers, consistent with Omnicare's standards and delivery practices (that it uses to attract customers to its nationwide pharmaceutical business).

**D. Venue is Similarly Proper Where All of Plaintiff's Work for Omnicare Occurred in This State**

---

[8]     The non-binding cases from other jurisdictions cited by Defendant for the supposed proposition that "the acts of one alleged joint employer do not suffice to create specific jurisdiction over another" (Dkt. 10 at 6) are simply irrelevant here and constitute a red herring under the facts of this case.  Plaintiff is not asserting that the acts of the "regional service companies" Omnicare contracts with provide the sole jurisdictional basis here; it is specifically alleging that the Defendant's conduct in this forum (i.e., its practice of failing to classify those individuals delivering its pharmaceutical products to its customers, pursuant to its mandates, standards, and business requirements) provides the jurisdictional basis.  **In any event, and contrary to Omnicare's assertions, joint-employer allegations may in fact establish personal jurisdiction**.  See Hajela v. ING Groep, N.V., 582 F. Supp. 2d 227, 238 (D. Conn. 2008) ("Based on these contacts, the court finds that the defendants, at least with respect to its alleged joint employer relationship with [its subsidiary], could reasonably have expected to be haled into a Connecticut court.")

The Defendant also claims that venue is not proper because the Complaint "alleged acts 'in West Virginia' generally, [but] makes no allegations specific to this District or Division." *See* Dkt 10 at 8. Plaintiff's allegations indicate that she resides in the Southern District of West Virginia (specifically, she is a resident of Seth, Boone County, West Virginia) and that she made deliveries for Defendant in West Virginia. Complaint at ¶ 2. The Complaint also specifically alleges that a substantial part of events giving rise to her action occurred in this District and she clearly engaged in delivery activity in this District based on her work for Omnicare (*See* Complaint at ¶¶ 2, 4 8, 20, 32), which as explained herein has a prominent location based in Nitro. Indeed, while this Court is well aware that Omnicare operates out its Nitro facility, Plaintiff expressly cites Young v. Act Fast Delivery of West Virginia, a still-pending case before this Court, twice in her complaint and explains that this case is related. *See* Complaint at ¶¶ 9, 13. The Complaint contains far more than sufficient facts and allegations to establish venue.[9] And, of course, plaintiff must make only a "prima facie showing." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir. 2012). Based on all of the facts and allegations here indicating that Plaintiff worked in this District (where Omnicare of Nitro is located), it is clear that Plaintiff has carried her minimal burden and venue is proper.

## IV.    CONCLUSION

Personal jurisdiction over Omnicare is abundantly clear and venue is similarly proper. Plaintiff has demonstrated that her employment misclassification claims under the FLSA arise

---

[9]     Although both personal jurisdiction and venue are apparent on the face of the complaint, if the Court deems it necessary, Plaintiff will seek leave to amend. Indeed, should the Court grant Defendant's motion to dismiss in whole or in part, Plaintiff hereby respectfully requests leave to amend the complaint. In the alternative, if the Court finds that additional facts are needed for the analyses raised herein, the Court may order appropriate discovery to be conducted. *See*, e.g., S & S Mgmt., Inc. v. White, No. 3:15-CV-00122-FDW, 2015 WL 3818881, at *2 (W.D.N.C. June 18, 2015) (recognizing a court's broad discretion to permit limited discovery on the issue of personal jurisdiction raised by defendant).

out of or relate to her work for Omnicare (all of which occurred in this forum).  Plaintiff

respectfully requests that the Court DENY the Defendant's Motion to Dismiss in its entirety.


Cathy Hager,
on behalf of herself and all
others similarly situated,

By her Attorneys,



/s/   Thomas R. Goodwin
Thomas R. Goodwin (WV Bar No. 1435)
Susan C. Wittemeier (WV Bar No. 4104)
W. Jeffrey Vollmer (WV Bar No. 10277)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
trg@goodwingoodwin.com
scw@goodwingoodwin.com
wjv@goodwingoodwin.com

Harold L. Lichten, admitted *pro hac vice*
Zachary L. Rubin, admitted *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA  02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOTUHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

|  |  |
|---|---|
| _____ ) | |
| CATHY L. HAGER, ) | CIVIL ACTION NO: 5:19-CV-00484 |
| ) | |
| on behalf of herself and all ) | |
| others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OMNICARE, INC. ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

I certify that a copy of the foregoing "Plaintiff's Memorandum in Opposition To Defendant's Motion to Dismiss Plaintiff's Complaint was served via CM-ECF on September 6, 2019 to the following:

Ashley C. Pack (WVSB No. 10477)
Anna M. Dailey (WVSB No. 4525)
Dinsmore & Shohl LLP
707 Virginia St., East; Suite 1300
Charleston, WV 25301

Nancy E. Rafuse, Esq.
James J. Swartz, Jr. Esq.
J. Stanton Hill, Esq.
Andrew M. McKinley, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street, NE; Suite 2500
Atlanta, GA 30309

*Counsel for Defendants*

/s/   Thomas R. Goodwin_____
Thomas R. Goodwin (WV Bar No. 1435)

21