UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

CATHY L. HAGER,

      Plaintiff,

v.                                      CIVIL ACTION NO.  5:19-cv-00484

OMNICARE, INC.,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      Pending are the Motion to Dismiss Plaintiff's Complaint [Doc. 9] ("motion to dismiss"), filed August 23, 2019, and Motion for a Protective Order and Stay Concerning October 31, 2019 Deadline and for an Expedited Briefing Schedule [Doc. 21] ("motion for stay"), filed by Defendant Omnicare, Inc. ("Omnicare") on October 28, 2019.

**I.**

      Plaintiff Cathy L. Hager, on behalf of herself and others similarly situated, instituted a collective action on June 28, 2019, against Omnicare alleging violations of the Fair Labor Standards Act (the "FLSA") [Doc. 1]. Omnicare is a for-profit entity that sells and distributes medicine and medical devices. It "conducts business throughout the United States in medical and nursing facilities, senior living facilities, and distribution centers in at least forty-seven (47) states in the United States, including West Virginia." [Doc. 1 at 2]. In order to deliver the products, Omnicare subcontracts with regional delivery companies.

      Ms. Hager alleges that she was a driver for one of those delivery companies and that, "[f]rom approximately October 2018 to May 17, 2019, [she] delivered pharmaceutical

products on behalf of and at the direction of Defendant in West Virginia." [Doc. 1 at 2]. According to Ms. Hager, Omnicare directs and supervises the drivers through the intermediary delivery companies. She alleges, for example, that Omnicare requires drug tests for the drivers, creates mandatory schedules and routes for the drivers, and closely monitors the drivers. Ms. Hager contends that this direction and supervision is done both directly by Omnicare but also indirectly through the third-party delivery companies.

The complaint alleges that Omnicare has engaged in a practice of unlawfully classifying delivery drivers as independent contractors instead of as employees. As a result, the drivers pay the costs associated with deliveries – such as tolls, gas, maintenance, and insurance – rather than Omnicare. Ms. Hager alleges that this practice effectively reduces driver pay below the applicable federal minimum wage. This alleged practice is the basis of Ms. Hager's FLSA claim.

On August 23, 2019, Omnicare moved to dismiss the complaint for lack of personal jurisdiction and improper venue. As to personal jurisdiction, Omnicare asserts that the Court lacks either general or specific jurisdiction over it. As to venue, Omnicare asserts that none of the grounds for proper venue are present in this case. In support of its motion, Omnicare offers the affidavit of Thomas S. Moffatt, the Vice President and Secretary of Omnicare [Doc. 9-1]. On September 6, 2019, Ms. Hager responded in opposition. Ms. Hager attached substantial evidence of Omnicare's general presence in West Virginia over a considerable timeframe. On September 13, 2019, Omnicare replied [Doc. 18].

Subsequently, on October 28, 2019, Omnicare moved to stay [Doc. 21]. It sought a protective order excusing it from compliance with the October 31, 2019, initial disclosures deadline. Additionally, Omnicare requested that the Court stay the deadline until after adjudication

of the motion to dismiss. Ms. Hager has responded and Omnicare has replied. The matters are now ready for adjudication.

## II.

### A.    Personal Jurisdiction

Federal Rule of Civil Procedure 12 provides that "a party may assert the lack of personal jurisdiction" by motion. Fed. R. Civ. P. 12(b)(2). During the early stages of a case, "[w]hen a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citations omitted). This analysis "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

Like under Rule 12(b)(6), the Court "give[s] the plaintiffs' allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff." *Sneha Media & Entm't, LLC v. Associated Broad. Co.*, 911 F.3d 192, 196 (4th Cir. 2018). But, "[u]nlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226; *see also Universal Leather*, 773 F.3d at 560 (requiring courts to "assume the credibility of [the plaintiff's] version of the facts, and to construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff].") Ultimately, "if the court denies a Rule 12(b)(2) motion under the *prima facie* standard, it can later revisit the jurisdictional issue when a fuller record is presented because the plaintiff 'bears the burden of demonstrating personal jurisdiction at every stage following [the defendant's

jurisdictional] challenge.'" *Sneha Media*, 911 F.3d at 196–97 (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

The Court may properly exercise jurisdiction over a foreign corporation only if: (1) jurisdiction is authorized by West Virginia's long-arm statute; and (2) application of the West Virginia long-arm statute is consistent with the Due Process clause. *See ESAB Grp., Inc. v. Zurich, Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). But, "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *In re Celotex Corp.*, 124 F.3d 619, 627–628 (4th Cir. 1997).

"Under the Fourteenth Amendment's Due Process clause, there are two paths permitting a court to assert personal jurisdiction over a nonresident defendant." *Universal Leather*, 773 F.3d at 559 (citations omitted). The first, general jurisdiction, allows a court to "hear any and all claims against [foreign corporations] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The paradigm forums in which a corporate defendant is at home . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation marks omitted).

The second, specific jurisdiction, "may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather*, 773 F.3d at 559. The specific jurisdiction analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted). To determine whether the exercise of specific jurisdiction is appropriate, our Court of

Appeals requires analysis of "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (internal quotation marks omitted). A nonresident corporation has purposefully availed itself of the privilege of conducting activities in the forum state when its "conduct and connection with the forum [s]tate are such that . . . [it] should reasonably anticipate being haled into court there." *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989) (internal quotation marks omitted).

Our Court of Appeals has additionally provided the following non-exhaustive list of factors for courts to consider when evaluating purposeful availment:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media*, 911 F.3d at 198–99. For example, the Fourth Circuit has found "that a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." *Universal Leather*, 773 F.3d at 560 (internal quotation marks omitted).

**B.   Venue**

A plaintiff may bring an action in: (1) a judicial district in which any defendant resides, if all defendants are residents of the same state; (2) a judicial district in which a substantial

part of the events or omissions giving rise to the claim occurred, or a substantial part of the property

that is the subject of the action is located; or (3) a judicial district in which any defendant is subject

to personal jurisdiction, if no other district is proper under this section. *See* 28 U.S.C. § 1391(b).

For venue purposes, an entity "shall be deemed to reside, if a defendant, in any judicial district in

which such defendant is subject to the court's personal jurisdiction with respect to the civil action

in question." *Id.* § 1391(c)(2).

### III.

       Ms. Hager offers a number of material allegations in her Complaint, including the

following:

> From approximately October 2018 to May 17, 2019, Plaintiff Hager delivered pharmaceutical products on behalf of and at the direction of Defendant in West Virginia.

> On information and belief, Defendant Omnicare conducts business throughout the United States in medical and nursing facilities, senior living facilities, and distribution centers in at least forty-seven (47) states in the United States, including West Virginia.

[Doc. 1, ¶¶2, 4]. As noted, Omnicare challenges the existence of personal jurisdiction, asserting

the predicates for both general and specific jurisdiction are absent. In his affidavit, Mr. Moffatt

recites, in part, the following:

> Omnicare had no employees in West Virginia during Ms. Hager's employment, from October 2018 and May 17, 2019.

> Omnicare has no employees in West Virginia currently.

> During Ms. Hager's employment, Omnicare "did not control, supervise, monitor, direct, set requirements for, or provide instructions" to Ms. Hager

> During Ms. Hager's employment, Omnicare "did not dictate the schedules of routes, if any, driven by" Ms. Hager.

> During Ms. Hager's employment, Omnicare had no interaction with Ms. Hager.

> During Ms. Hager's employment, Omnicare did not enter into any contracts with West Virginia courier companies.
>
> During Ms. Hager's employment, Omnicare "did not classify (or misclassify), compensate, require background or drug tests for, or set the hiring or firing standards for" Ms. Hager.

[Doc. 9-1]. Omnicare specifically argues that the lack of any contract between itself and a third-party delivery company is fatal to Ms. Hager's assertion of personal jurisdiction [Doc. 10]. Indeed, Omnicare repeatedly asserts that "it did not *enter into* any contracts for the delivery of pharmaceuticals with a courier company in West Virginia during the time frame in which Plaintiff worked, and did not interact with Plaintiff at all." [Doc. 10 at 8 (emphasis added)].

At this stage in the litigation, the Court need not resolve the factual skirmish apparent from the operative pleading and the affidavit. As noted, the Court is required to treat the allegations in the complaint as true and draw any conflicting facts – even where an affidavit has been submitted – in the light most favorable to Ms. Hager. Scrutinizing the allegations through this lens, the three requirements for the exercise of personal jurisdiction are met at this early stage of litigation. Consequently, Ms. Hager has made out a prima facie case supporting the exercise of personal jurisdiction.

First, Ms. Hager alleges that Omnicare conducted business in West Virginia, by contract with third-party courier companies for the supply and delivery of pharmaceuticals to facilities across the state. Through such conduct, Omnicare could "reasonably anticipate being haled into court" in West Virginia. *Lake Shore*, 886 F.2d at 658. And where those third-party companies employ residents of the Southern District of West Virginia to conduct business here, Omnicare could "reasonably anticipate being haled into court" in this District. *Id.* At this stage in the litigation, it is hardly a novel proposition to conclude that a company entering a contract with *continuing* obligations within in a state could be haled into court in that state. *See Burger King v.*

*Rudzewicz*, 471 U.S. 462, 474 (1984) (finding personal jurisdiction in a state where party had no other presence as the result of a franchising contract with continuing obligations); *see also Sneha Media*, 911 F.3d at 198–99. Nor is it a novel proposition to conclude that a company might purposefully avail itself of a forum without having a physical presence therein. *See Walden*, 571 U.S. at 285 ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State – either by the defendant in person, or through an agent, goods, mail, *or some other means* – is certainly a relevant contact." (emphasis added) (citation omitted)). As the Supreme Court has observed, "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476.

Second, Ms. Hager alleges that Omnicare substantially collaborated with a forum resident – the third-party courier company which directly employed Ms. Hager – and her claims arise from that relationship. *See Universal Leather*, 773 F.3d at 560 ("a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant 'substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" (citation omitted)). And while Omnicare repeatedly asserts that it did not contract in West Virginia during the relevant time period, this argument fails. Notably absent from Omnicare's contention – and from the Moffatt affidavit – is any assertion that Omnicare has *never* "enter[ed] into [a] contract[] for the delivery of pharmaceuticals with a courier company in West Virginia" that may have continued through Ms. Hager's employment. Nor is there any assertion that no contract existed during Ms. Hager's employment. Indeed, it is hardly dispositive to state that no new courier contracts were entered into during Ms. Hager's employment

if Ms. Hager's employment was subsequent to the entry into such a contract. And, while Omnicare asserts it had no direct contact with Ms. Hager, it does not contest that she made deliveries on its behalf and for its benefit within West Virginia.

Third, Omnicare has not demonstrated that it would be constitutionally unreasonable to exercise personal jurisdiction at this stage; certainly, there is no showing that this "litigation [is] so gravely difficult and inconvenient that" Omnicare would be unfairly placed at a "severe disadvantage in comparison to [its] opponent[s]." *ESAB Group*, 685 F.3d at 392 (internal quotation marks omitted). Omnicare offers no "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Indeed, Omnicare has recently litigated a similar case in this very District. *See Young v. Act Fast Delivery of W. Va., Inc.*, 5:16-cv-09788 (S.D.W. Va. filed Oct. 7, 2016).

At a later stage of litigation, it may become clear that the exercise of personal jurisdiction is improper. The well-pled allegations at this point, however, clearly suffice under the Due Process clause.

Finally, inasmuch as the Court has found it proper at this stage to exercise personal jurisdiction over Omnicare, it similarly concludes that venue is appropriate. Omnicare is subject to personal jurisdiction – and thus, for venue purposes, resides – in the Southern District of West Virginia. *See* 28 U.S.C. § 1391(b)(1).

## IV.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint [**Doc. 9**] without prejudice and, given that the relevant dates have passed, **DENIES** as moot Defendant Omnicare, Inc.'s Motion for a Protective Order and Stay Concerning October 31,

2019 Deadline and for an Expedited Briefing Schedule [**Doc. 21**]. A Scheduling Order will enter forthwith.

The Clerk is ordered to transmit copies of this Order to any unrepresented parties and counsel of record herein.

ENTERED: November 19, 2019

Frank W. Volk
United States District Judge

10