**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

CATHY L. HAGER, on behalf of herself
and all others similarly situated,

              Plaintiff,

      v.

OMNICARE, INC.,

              Defendant.

Civil Action No. 5:19-CV-00484

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND COURT-
SUPERVISED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

## I.  INTRODUCTION

Court-supervised notice of a collective action under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.* is inappropriate where, as here, (1) Plaintiff seeks to

include non-resident drivers in the collective despite binding precedent from the Supreme

Court establishing that Defendant cannot be subjected to personal jurisdiction in West

Virginia for those claims; (2) Plaintiff's evidence establishes that Defendant did not have

a common illegal policy; (3) alleged pay policies to which drivers were subjected were

independently determined by the particular delivery companies with which they actually

contracted—none of which are named as defendants; and (4) Plaintiff ignores that pursuing

claims involving absent subcontractors and subsidiaries across 46 states—which will

necessarily implicate unique issues of alter ego and joint employment liability—cannot be

squared with her obligation to present evidence that the collective *as a whole* is similarly

situated.  In short, there is no glue binding the collective, and Plaintiff has not met her

burden for conditional certification.

Plaintiff's motion is deficient in other ways, too. She requests a collective definition that is temporally overbroad. She also requests that the Court order Defendant to provide contact information for the members of the collective, despite her knowledge that Defendant does not have that information. For all these reasons, the Court should deny Plaintiff's request for conditional certification.

## II.   STANDARD OF REVIEW

The FLSA authorizes a plaintiff to file suit "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Courts generally follow a two-stage approach to determine whether members of a proposed FLSA collective action are similarly situated:

> The "notice stage" comes first; if the court makes the preliminary determination that notice should be given to potential class members, it "conditionally certifies" the class and potential class members can then "opt-in." After most of the discovery has taken place and the matter is ready for trial, the defendant can initiate the second stage inquiry by moving to "decertify" the class. At that point, the court makes a factual determination as to whether the class is truly "similarly situated."

*Purdham v. Fairfax Cty. Pub. Schs.*, No. 1:09cv50 (JCC), 629 F. Supp. 2d 544, 548 (E.D. Va. 2009) (citation omitted).

Even at the notice stage, the "similarly situated" standard must be met with respect to all members of the proposed collective. *Yerger v. Liberty Mut. Grp., Inc.*, No. 5:11-CV-238-D, 2011 WL 5593151, at *3 (E.D.N.C. Nov. 15, 2011). Thus, Plaintiff bears the burden of showing she "and potential plaintiffs together were victims of a common policy or plan that violated the law." *Purdham*, 629 F. Supp. at 548. While this burden is modest at the notice stage, it is "not invisible." *Id.* "[M]ere allegations will not suffice; some factual evidence is necessary." *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435

(E.D. Va. 2002).  If conditional certification is granted, the members of the collective do not automatically participate in the case.  Instead, unlike in a Rule 23 class action, "[t]hose wishing to participate must give written consent in order to become a party plaintiff."  *Id.*

## III.   DISCUSSION

Plaintiff has failed to carry her burden for conditional collective certification.[1] First, because Defendant is not subject to personal jurisdiction in this Court for the claims of non-resident opt-ins, the members of Plaintiff's proposed nationwide collective are not similarly situated.  Second, Plaintiff's evidentiary submissions and the other evidence of record indicate that Defendant did not have a common policy or plan applicable to the entire collective to violate the FLSA.  Instead, Plaintiff's allegations concern a large number of discrete payment policies implemented by individual delivery companies. Third, the claims of the proposed opt-ins, which encompass drivers working for delivery subcontractors across facilities operated by entities other than Defendant in 46 states, will necessitate individualized alter ego and joint employment analyses that are incapable of being resolved on a collective basis.  Fourth, Plaintiff's proposed collective definition is temporally overbroad.  Finally, Plaintiff has not proposed a notice plan to the Court that is feasible or consistent with the law.

> **A.   This Court Lacks Personal Jurisdiction over Defendant Regarding the Claims of Putative Collective Members who Did Not Work for Delivery Companies in West Virginia.**

Plaintiff's request for nationwide conditional certification fails because this Court may not exercise personal jurisdiction with respect to the claims of non-residents under

---

[1] While Plaintiff attempts to rely on other cases filed by its counsel against Defendant, she ignores that these cases (1) involved entirely different courier companies and (2) did not seek nationwide certification.  Accordingly, they are not instructive here.

*Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017).[2] There, "[a] group of plaintiffs—consisting of 86 California residents and 592 residents from 33 other States—filed eight separate complaints in California Superior Court," asserting they were injured by one of defendant's drugs. *Id.* at 1778. The nonresident plaintiffs did not allege that they obtained medicine through a California source or were injured there. *Id.* The California Supreme Court found jurisdiction because "the claims of the nonresidents were similar in several ways to the claims of the California residents." *Id.* at 1779.

The U.S. Supreme Court reversed, observing that, by relying on similarity of claims alone, "[t]he State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims." *Id.* at 1781. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested [medicine] in California—and allegedly sustained the same injuries as the nonresidents—d[id] not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* Instead, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue," and "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

The Supreme Court held that the defendant was not subject to personal jurisdiction in California with respect to the nonresidents' claims because they did not claim to have suffered harm in California. *Id.* at 1782. The Supreme Court also rejected plaintiffs' efforts to conjure up a "parade of horribles" that would result from its ruling, noting that the decision "d[id] not prevent the California and out-of-state plaintiffs from joining together

---

[2] Defendant also continues to maintain that it is not subject to personal jurisdiction with respect to in-state plaintiffs on grounds other than those outlined herein. These arguments will be raised at a later date.

in a consolidated action in the States that have general jurisdiction over [the defendant]." *Id.* at 1783. The residents of each state could also "sue together in their home States." *Id.*

Following *Bristol-Myers*, a growing number of courts have arrived at the necessary conclusion that the Supreme Court's analysis applies with equal force to FLSA collective actions. *See, e.g., Pettenato v. Beacon Health Options, Inc.*, No. 19-CV-1646 (JPO) (BCM), 2019 WL 5587335, at *9 (S.D.N.Y. Oct. 25, 2019) (applying *Bristol-Myers* to determine that "there is a lack of connection 'between the forum and the underlying controversy' sufficient to provide the Court with specific personal jurisdiction over [defendant] with respect to the out-of-state employees' FLSA claims"); *Chavira v. OS Rest. Servs., LLC*, No. 18-cv-10029-ADB, 2019 WL 4769101, at *6-7 (D. Mass. Sept. 30, 2019) (denying conditional certification of nationwide collective based on *Bristol-Myers*); *Rafferty v. Denny's, Inc.*, No. 5:18-cv-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019) ("[E]xercising personal jurisdiction over Denny's for claims of any out-of-state putative collective member would violate due process."); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 58 (D. Mass. 2018) ("[T]he principles stated in *Bristol-Myers* . . . preclude this court from asserting personal jurisdiction over the claims of potential opt-in plaintiffs who do not work . . . in [the forum state]."); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018) ("*Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of [out-of-state] plaintiffs against [the defendant].").

In well-reasoned opinions, these courts have relied primarily on two grounds: (1) the similarities between opt-in FLSA collective actions, the mass tort plaintiffs in *Bristol-Myers*, and parties in similar situations that have been required to individually establish

specific jurisdiction; and (2) the ability of parties to file their collective actions in other, proper fora.

### 1.   FLSA Opt-In Plaintiffs Are Indistinguishable from the Mass Tort Plaintiffs in *Bristol-Myers*.

First, these decisions are rooted in the opt-in procedure of the FLSA, and the similarities between FLSA collective actions and mass tort and other circumstances in which courts regularly require personal jurisdiction as to all plaintiffs individually.  These courts note that "an FLSA collective action is more comparable to the mass tort action in *Bristol-Myers* than to a Rule 23 class action.  That is so because, in an FLSA collective action, 'every plaintiff who opts in to a collective action has party status.'"[3]  *Pettenato*, 2019 WL 5587335, at *9 (quoting 7B Wright & Miller, *Federal Practice and Procedure* § 1807 (3d ed. 2004)).  "Indeed, '[a] collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases.'"  *Id.* (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)); *accord Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013) ("A mass action is more akin to an opt-in than it is to a class action . . . ."); *Roy*, F. Supp. 3d at 59 ("[The FLSA] does not truly authorize a class action: it is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees.").

On the other hand, the few courts that have not extended *Bristol-Myers* to the FLSA have failed to recognize the critical differences between FLSA collective actions and Rule 23 class actions.  For example, in *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13,

---

[3] Class actions, on the other hand, have "independent legal status" once certified.  *Roy*, 353 F. Supp. 3d at 59; *accord Pettenato*, 2019 WL 5587335, at *7.

2019 WL 6528594 (N.D. W. Va. Dec. 4, 2019), the court relied on the decision of a separate district court assessing *absent Rule 23 class members* to hold that, because jurisdiction is measured "at the level of the suit," only the named plaintiff needed to satisfy the requirements of specific jurisdiction in an FLSA collective action. *Id.* at 3. However, unlike absent class members, FLSA opt-in plaintiffs are individual parties with individual cases who are brought together through the FLSA's joinder mechanism, not as a "class." *See, e.g.*, *Anjum v. J.C. Penney Co.*, No. 13 CV 0460(RJD)(RER), 2014 WL 5090018, at *12 (E.D.N.Y. Oct. 9, 2014) ("[T]he FLSA, standing alone, creates a relatively simple rule of joinder. . . . [The opt-in] becomes party to the lawsuit through a separate action joined to the original suit, which commences on the date written consent is filed."). *Hunt* simply cannot be reconciled with the FLSA's opt-in procedure, and is inconsistent with the Supreme Court's admonition in *Bristol-Myers* that "[w]hat is needed . . . is a connection between the forum and the *specific claims at issue*." 137 S. Ct. at 1781 (emphasis added).

Courts applying *Bristol-Myers* have also noted that courts "generally have extended the specific jurisdiction principles articulated in *Bristol-Myers* to the analysis of personal jurisdiction over named plaintiffs in federal class actions." *Roy*, 353 F. Supp. 3d at 56–57. Even for class actions, courts require that specific jurisdiction be established for each individual with independent party status (i.e., who are not absent class members). *Id.*

Given the above, courts have held that

an analysis of the similarities between the nonresident party plaintiffs in *Bristol-Myers*, the out-of-forum named plaintiffs in Rule 23 class actions class actions, and the nonresident opt-in plaintiffs in FLSA suits supports [the] position that, even if the principles in *Bristol-Myers* do not extend to class members in class actions, they preclude [a] court from asserting personal jurisdiction over the claims of potential opt-in plaintiffs who do not work for [the defendant] in [the forum state].

*Id.* at 58; *Chavira*, 2019 WL 4769101, at *5. Indeed, "it is difficult to come to a different conclusion given the language in *Bristol-Myers*, which is repeated twice in the opinion, to the effect that for each plaintiff, 'there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State." *Chavira*, 2019 WL 4769101, at *6.

### 2. As *Bristol-Myers* Noted, FLSA Plaintiffs May File Collective Actions, Including of a Nationwide Scope, in Other Courts.

The decisions applying *Bristol-Myers* also reject efforts to rely on the same "parade of horribles" arguments rejected by the *Bristol-Myers* court. *See, e.g., Pettenato*, 2019 WL 5587335, at *10. For example, in *Swamy v. Title Source, Inc.*, No. C 17-01175, 2017 WL 5196780, at *2 (N.D. Cal. 2017), the district court erroneously refused to extend *Bristol-Myers* to FLSA collective actions because it believed doing so "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Accord Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019) (basing its decision on the above language from *Swamy*).

However, "[a]pplying *Bristol-Myers* to FLSA collective actions will *not* prevent a nationwide collective of plaintiffs from 'joining together in a consolidated action' in a state that has general jurisdiction over [a defendant]. . . ." *Pettenato*, 2019 WL 5587335, at *10 (quoting *Bristol-Myers*, 137 S. Ct. at 1783). *Swamy*'s reasoning ignores that personal jurisdiction is a creature of "the Due Process Clause, acting as an instrument of interstate federalism," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980), and that "the FLSA does not authorize nationwide service of process," *Roy*, 353 F. Supp. 3d at 56. Whatever policy interests may underlie the FLSA, they cannot supersede constitutional

due process protections.  *See, e.g., Pettenato*, 2019 WL 5587335, at *10 ("[T]he Court's obligation to follow [*Bristol-Myers*] cannot be overshadowed by 'even the most compelling' policy arguments." (quoting *Chavira*, 2019 WL 4769101, at *6)).  The holding of *Bristol-Myers* therefore applies with equal force in the FLSA collective action context.

> **2.  Because Defendant Is Not Subject to General Jurisdiction in West Virginia, Out-of-State Plaintiffs Must Establish Specific Jurisdiction for Each of Their Claims.**

Defendant is not subject to general jurisdiction in West Virginia.  (Dkt. No. 10, at 4–5.)  As a result, to establish specific jurisdiction and satisfy the minimum contacts inquiry, *all* out-of-state plaintiffs must establish purposeful availment, relatedness, and reasonableness for *each* of their claims.  *Sneha Media & Entm't, LLC v. Assoc. Broadcasting Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018).  The relatedness prong requires that "the plaintiffs' claims arise out of [the defendant's] activities directed at the state." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)

Here, non-resident opt-in plaintiffs cannot meet the relatedness prong because "[t]here is no nexus between the wages out-of-state opt-in plaintiffs received and Defendant['s] activities in [West Virginia]."  *Chavira*, 2019 WL 4769101, at *6.  For example, Plaintiff has submitted one declaration from a driver other than herself who falls within the alleged collective definition.[4]  In that declaration, Eugene Messick asserts only that he has "personally made deliveries for Omnicare in Ohio, Indiana, and Kentucky" during a sixteen-year period.  (Dkt. No. 32-8 ¶¶ 3–4.)  While it is impossible to divine from this declaration whether Mr. Messick worked in all of those states during the collective

---

[4] Two declarations were years prior to the proposed collective period.  (Dkt. No. 32-9; Dkt. No. 32-11.)  The third concerns a state carved out of the collective.  (Dkt. No. 32-10.)

period,[5] it is clear that he never performed deliveries in West Virginia.  (*Id.*)

Mr. Messick's claims, or those of any other out-of-state individual falling within the Plaintiff's collective definition, do not "arise out of" Defendant's alleged contacts in West Virginia.  *Chavira*, 2019 WL 4769101, at *6.  Thus, conditional certification must be denied as to all individuals who performed work outside of West Virginia, because they cannot be similarly situated to Plaintiff, who is allegedly a West Virginia resident.  *See, e.g.*, *Pettenato*, 2019 WL 5587335, at *10 (applying *Bristol-Myers* and denying conditional certification of a nationwide collective); *Roy*, 353 F. Supp. 2d at 62 ("The failure to meet the relatedness requirement dooms Plaintiffs' request to issue notice of an FLSA collective action to FedEx Ground drivers who did not work in Massachusetts."); *Chavira*, 2019 WL 4769101, at *7 (striking consent forms filed by out-of-state opt-in plaintiffs).

### B.    Plaintiffs Are Not Similarly Situated Because They Were Not Subjected to a Common Policy or Plan that Violated the FLSA.

In addition to the above, Plaintiff's request for conditional certification must be denied because she cannot establish that she and all members of the proposed collective are "victims of a common policy or plan that violated the [FLSA]."  *MacGregor v. Farmers Ins. Exchange*, No. 2:10-CV-03088, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).  A plaintiff bears the burden of presenting evidence demonstrating this "common policy" for a court to grant conditional certification and authorize notice.  *Id.*

Plaintiff's brief is devoid of any evidence of a *common* policy applicable to the collective that violated the FLSA,[6] and the facts of this case are nearly identical to those

---

[5] Mr. Messick's declaration appears to concern a 16-year period, making it unclear when he performed deliveries in Kentucky and Indiana.  (Dkt. No. 32-8 ¶¶ 3, 6, 8.)
[6] Plaintiff devotes much of her brief to arguing that Defendant allegedly exercised control over opt-ins, such that it was the joint employer.  While Defendant contests this argument,

that warranted denial of nationwide conditional certification in *Gibbs v. MLK Express Services, LLC*, No. 2:18-cv-434-FtM-38MRM, 2019 WL 2635746 (M.D. Fla. June 27, 2019). There, the named plaintiff sought conditional certification encompassing all drivers for each delivery company with which Amazon contracted across the country, on a joint employer theory. *Id.* at *1. In assessing whether conditional certification should be granted, the court looked to whether the plaintiff had presented any evidence of a common policy, noting that the "issue is complicated because Amazon contracts with [delivery companies] who hire [drivers]." *Id.* at *6. To that end, "the evidence did not suggest Amazon had a common policy of dictating how [delivery companies] paid the [drivers]. The evidence shows the opposite: [delivery companies], not Amazon, control [driver] pay and many use different pay schemes that Amazon cannot control." *Id.* at *6. While the plaintiff's "self-described 'avalanche of evidence' goes to Amazon's control over [driver] duties," it "sa[id] nothing about how [drivers] nationwide are similarly situated 'with regard to their pay provisions.'" *Id.* at *8. The court concluded that "even if the Court ultimately determined Amazon is a joint employer, it would still need to examine every [delivery company's] payment scheme individually for FLSA violations." *Id.* It therefore denied nationwide conditional certification. *Id.* at *10.

Plaintiff here seeks conditional certification of individuals she admits contracted only with third-party delivery companies. (Dkt. No. 1 ¶ 12 ("Defendant subcontracts with regional delivery companies, who contract with pharmaceutical delivery drivers . . . .").

---

an entity's status as an "employer," does not itself constitute a violation of the FLSA. *See, e.g., Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2019 WL 6499127, at *12 (E.D. Ky. Dec. 3, 2019) ("[E]mploying (as statutorily defined) a Driver is not itself a 'violation of federal law or wrongdoing[.]"). To hold otherwise would effectively open the floodgates to conditional certification in nearly all FLSA cases.

Like the plaintiff in *Gibbs*, however, she presents no evidence plausibly suggesting that Defendant itself had a common policy, applicable to the entire collective, of paying drivers below the minimum wage or of failing to pay overtime. *Accord Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 879 (E.D. La. 2008) (denying conditional certification because the court would be required to analyze the payroll practices of each subcontractor at each facility individually to determine whether the FLSA had been violated). This failing is unsurprising, given that *all* of the evidence indicates that each delivery company—not Defendant—had the exclusive ability to determine its own unique pay policies.

Plaintiff submits excerpts from a single courier agreement outside of West Virginia. (Dkt. No. 32-4.)  The only party to this agreement is "CVS Pharmacy, Inc.," and it is therefore not evidence of a "policy" or "plan" by Defendant.[7]  (Dkt. No. 32-4, at 10.) Regardless, as in *Gibbs*, the only "plan" evidenced by this document is that of vesting complete control over driver hiring and pay in the delivery company subcontractors.  For example, the agreement leaves to the courier company the sole discretion of whether to classify drivers as employees or independent contractors.  (*Id.* at 8 (stating that the delivery company has sole responsibility for any individual is "retains, employs or contracts with").) It further provides that the courier company was "solely responsible" for "all staffing, labor, personnel and human resources functions" and for "federal and state wage-hour

---

[7] To be sure, the contract purports to identify Omnicare, Inc. as a third-party beneficiary. (Dkt. No. 32-4, at 2.)  However, there is a world of difference between being a party to a contract and a third-party beneficiary of it.  The former requires concerted action on Defendant's behalf, while the latter does not.  *Cf., e.g., Stella Maris Ins. Co. Ltd. v. Catholic Health E.*, No. 10-1946, 2010 WL 3522106, at *7 (E.D. Pa. Sept. 8, 2010) (holding that an individual's status as a third party beneficiary could not establish purposeful availment for jurisdictional purposes); *Paulsson Geophysical Servs., Inc. v. Sigmar*, No. A-06-CA-952-SS, 2007 WL 9702437, at *6 (W.D. Tex. May 25, 2007).

obligations (including overtime)."[8]  (*Id.* at 6–7.)

The declarations submitted by Plaintiff, along with other evidence related to drivers, only further highlight the highly individualized policies that flowed from and were independently implemented by each individual courier company.  For example, Plaintiff, who allegedly contracted with Dicom, states that she was paid a fixed rate for her standard route.  (Dkt. No. 32-7, at 6 ¶¶ 11, 32.)  Eugene Messick, who claims to currently contract with Priority in Ohio, alleges he is paid on a per-mile basis, which has varied over time.  (Dkt. No. 32-8, at 6 ¶¶ 29, 31.)  In California, a driver alleges that First Choice Delivery and 4 Sameday Transportation paid her at a day rate.  (Exhibit A ¶ 13.)  In Maryland, a driver for US Pack alleged that she was paid 50% of the cost of each delivery in commission.  (Ex. B ¶ 37; Decl. of John Piotti, Ex. C, ¶ 2 (stating that US Pack provided delivery services for "Omnicare of Annapolis Junction".)

Plaintiff also submits affidavits from time periods and locations carved out of the proposed collective action.  Even if considered, despite their irrelevance, these declarations would only establish further variance in pay practices between couriers.  Abdiwali Abdi, who allegedly performed deliveries for Business as Usual in Maine, alleged that he was paid a "stem" fee for each shift, plus an additional fixed sum for each stop he made.  (Dkt. No. 32-9, at 3 n.11.)  Daniel Davis, a driver for Act Fast in Kentucky, alleged that he was paid a flat fee per route and a per mile rate for stat runs.  (Dkt. No. 32-10, at 3 ¶ 7.)  Meanwhile, Jacob Kepford, a driver for Act Fast and Powerforce in Colorado, alleged that he was paid "on a per route basis *or* a per delivery basis."  (Dkt. No. 32-11, at 2 ¶ 11.)

---

[8] Moreover, while the agreement provides that "Courier" must provide vehicles, it leaves to the delivery companies' discretion whether the company will provide vehicles or require drivers to use their own vehicles.  (*Id.* at 4.)

This case will also require individualized inquiries into whether each individual courier company actually required their drivers to cover the vehicle expenses that form the basis for Plaintiff's claim of minimum wage violations.  For example, E.C. Delivery Service provided delivery services for "Omnicare of Lynchburg" in Virginia.  (Ex. C ¶ 3.) While Plaintiff's damages theory assumes drivers incur their own vehicle costs, E.C. Delivery "provides company-owned vehicles" for use by its drivers.  (Decl. of James Swartz, Ex. D, ¶2, Ex. 1 thereto.)  Therefore, even the question of whether drivers incurred vehicle expenses will require individualized inquiries.

Plaintiff's motion makes little effort to engage these wide variations in delivery company pay practices, and fails to provide any information concerning the pay practices of the large majority of delivery companies.  *See, e.g., Keenum v. Lott Enters.*, No. 2:14-cv-02504-JPM-tmp, 2014 WL 11369832, at *4 (W.D. Tenn. Nov. 25, 2014) (denying conditional certification where plaintiff failed to show that opt-ins "paid on different pay schemes[] were paid in violation of the FLSA"); *Wallace v. Norcross Assocs., LLC*, No. 1:13-CV-1349-RWS, 2014 WL 1373659, at *4 (N.D. Ga. Apr. 8, 2014) (denying conditional certification because "to determine whether Defendants violated the FLSA, the Court would have to analyze Plaintiff's respective compensation schemes separately"); *Carlson v. Leprino Foods Co.*, No. 1:05-CV-798, 2006 WL 1851245, at *5 (W.D. Mich. June 30, 2006) (denying conditional certification when a defendant's plants employed distinct policies related to payment); *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, 2006 WL 6012784, at *6 (N.D. Ala. Nov. 15, 2006) (denying conditional certification when compensation decisions were made by individual facilities, rather than as result of a single decision by the defendants).  Nor does it make any effort to explain how these varied

14

practices constitute a single common pay policy or practice of Defendant *applicable to all members of the proposed nationwide collective*.   In fact, "[t]he evidence shows the opposite: [delivery companies], not [Defendant], control [driver] pay and many use different pay schemes that [Defendant] cannot control." *Gibbs*, 2019 WL 2635746, at *6.

Even at the West Virginia and individual facility levels, Plaintiff has not submitted sufficient evidence of commonality of pay practices to support a narrower collective. Plaintiff's minimal evidentiary submission concerning pay in West Virginia consists of nothing more than a discussion of her pay for performing her "standard fixed route." (Dkt. No. 32-7, at 6 ¶ 32.)   Despite attempting to credit hours worked on "additional route assignments and stat runs" she performed, Plaintiff provides no information concerning the pay she received for such tasks.  (*Id.* at 6 ¶ 31.)  There is no authority supporting Plaintiff's effort to exclude categories of compensation, while claiming related work hours for purposes of alleging FLSA violations.[9]   Absent complete information concerning the *complete* pay structure, Plaintiff has not presented evidence sufficient to show that she— let alone any other individual with whom she worked—failed to receive a minimum wage. Similarly, while she generically asserts that drivers "never received overtime premiums for hours worked in excess of 40" (*id.* at 4 ¶ 13), she does not allege that any other individual in West Virginia *actually worked* over 40 hours in any week.[10]

---

[9] For this reason, Plaintiff's effort to compare her pay rate to Eugene Messick's rate while working in Ohio is meritless. (Dkt. No. 33, at 12.)  The exclusion of entire categories of pay results only in a flawed calculation.  In any event, the comparison does nothing to dispel the fact that the subject courier companies' pay policies were distinct from one another and disconnected from Defendant.

[10] Outside of West Virginia, Eugene Messick admits that he does not work 40 hours a week. (Dkt. No. 32-8, at 2–3 ¶ 11.)  This admission only further evidences that a collective encompassing overtime claims will necessarily devolve into individualized inquiries.

**C.      Plaintiff's Collective Will Require Individualized Alter Ego and Joint Employment Analyses for Each Opt-In.**

Plaintiff's collective definition seeks to include drivers working for a wide range of delivery subcontractors across facilities operated by entities other than Defendant in 46 states.  The wide range of entities that will need to be analyzed in relation to Defendant—beyond pay practices—further support the denial of conditional certification in this case.

As Plaintiff's prior briefs in this case make clear, her claims against Defendant are dependent upon her belief that Defendant is an alter ego of the entities allegedly operating the facilities from which deliveries were made.  (Dkt. No. 17, at 12–14.)  These alter ego theories will inevitably be unique to the particular location at which each driver worked, the alleged entity acting as the alter ego of Defendant at that entity, and the time periods during which each driver worked.  *See e.g., Alkire v. N.L.R.D.*, 716 F.2d 1014, 1017 n.3 (4th Cir. 1983) (observing that "[i]f no *alter ego* relationship existed at th[e] time" of an alleged wrong, a company had no corresponding duty"); *cf. Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (denying certification because, inter alia, class members were "employed by different subsidiaries and affiliates of defendant" and had different "payment systems").  These inquiries are incapable of being resolved on a collective basis.

Similarly, while Plaintiff attempts to prematurely adjudicate issues of joint employment[11]—and supports the effort largely with allegations, rather than the required evidence—it is clear that questions of joint employment will vary greatly from subcontractor to subcontractor and facility to facility.  *See, e.g., Gibbs*, 2019 WL 2635746,

---

[11] On January 12, 2020, the Department of Labor announced its final rule clarifying the issue of joint employment under the FLSA.  *Joint Employer Status Under the Fair Labor Standards Act*, 85 FR 2820.  Many of the considerations cited by Plaintiff are inconsistent with this rule.

at *9 ("[J]oint employer issues will destroy judicial economy of the Nationwide Class, which consists of an unknown number of [delivery companies] separately employing a vast number of [drivers] and contracting with [Defendant].")  To that end, Plaintiff's counsel, in at least one other forum, has filed pleadings on behalf of all drivers of USPack in Maryland for a period dating back to February 20, 2016.  (Ex. B ¶ 11.)  During portions of that time period, USPack performed deliveries out of "Omnicare of Annapolis."  (Decl. of John Piotti, Ex. C, ¶ 2.)  In that case, the plaintiffs claim that the delivery companies "are in complete control of the manner in which Plaintiffs and Class Members perform their services"—an allegation inconsistent with the claims of Defendant's joint employment in this case.  (Ex. B ¶ 20.)  These disparate factual circumstances of each individual driver provide further support for the denial of conditional certification.

### D.        Plaintiff's Collective Definition Is Temporally Overbroad

Plaintiff requests that the Court issue notice to individuals who performed deliveries "from June 28, 2016 to the present."  (Dkt. No. 33, at 20.)  Because FLSA opt-in plaintiffs are only able to bring claims dating back, at most, to three years before they join this case, the complaint's filing date is not the appropriate measuring point.  Thus, courts limit the collective notice period to three years prior to the date of the order granting conditional certification.  *Davis*, 2019 WL 6499127, at *12; *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015).  This practice "help[s] ensure that notice of the collective action is not sent to former employees whose statutes of limitations may have already expired."  *Atkinson*, 2015 WL 853234, at *3.

### E.      Plaintiff's Proposed Notice Plan Is Futile

If the Court determines that any measure of notice is warranted, Plaintiff's motion should separately be denied for three reasons: (1) Plaintiff has not identified a feasible plan for distribution of notice; (2) Plaintiff's proposed notice is inconsistent and inaccurate; and (3) Plaintiff's request for a reminder notice and 90-day notice period is unwarranted.

**First**, despite acknowledging that drivers were hired by third party delivery companies—rather than Defendant—Plaintiff now requests that the court "order Defendant to produce to Plaintiff a list of the potential opt-in plaintiffs' names, last-known or obtainable mailing addresses, email addresses, telephone numbers, work locations and courier company contact information, and dates of employment."  (Dkt. No. 33, at 19.) Because Defendant did not hire or otherwise contract with the drivers of third-party delivery companies, it does not know the full list of drivers within the collective definition or which, if any, "were classified as independent contractors," so as to fall within the collective definition.  (Dkt. No. 32, at 1.)  Nor does it know the information requested that is specific to each of these individuals, such as mailing addresses, email addresses, and telephone addresses.[12]  This is no surprise to Plaintiff's counsel who, in the *Davis v. Omnicare, Inc.* case they cite, needed to serve subpoenas on the courier company—and subcontractors of that courier company, with whom the defendants in that action had no contractual relationship—to effectuate notice.  2019 WL 6499127, at *12.  Plaintiff's strategic decision to not include these delivery companies as parties to this litigation cannot be brushed aside, and she chose not to seek such information from the third parties via

---

[12] Defendant has no control over information possessed by subcontractors for the reasons set forth in Defendant's portion of the parties Rule 26(f) Discovery Plan. (Dkt. No. 19 at ¶¶9, 11.)

subpoena prior to filing this motion.  Because Plaintiff's proposal is futile, her motion should be denied.

**Second**, Defendant further objects to the proposed notice and opt-in form submitted by Plaintiff, which are inconsistent and include incomplete and inaccurate statements. First, Plaintiff's submissions contain a number of inconsistencies.  For example, while Paragraph 9 of the notice accurately states that opt-ins may obtain their own counsel, Paragraph 10 and the consent form incorrectly advise that opting into the case is consent to being represented by Plaintiff's counsel.  (Dkt. No. 32-14, at 4–5, 7.)  Similarly, the consent form improperly requires that the named plaintiff will act as their agent to make decisions in the litigation.  However, because FLSA opt-ins are party plaintiffs, "[e]ach FLSA claimant has the right to be present in court to advance his or her own claim." *Johnson v. TruGreen Ltd. P'ship*, No. A-12-CV-166-LY, 2013 WL 12120413, at *4 (W.D. Tex. May 21, 2013).  That right has resulted in courts refusing to include nearly identical language in FLSA notices.  *See, e.g., Davis*, 2019 WL 6499127, at *11 ("[A]ny suggestions of mandatory joint representation are incomplete or inaccurate and must be modified or stricken.").  Moreover, the notice contains no statement informing opt-ins that they may be held liable for Defendant's costs.  Such language is regularly required in FLSA notices. *Byard*, 287 F.R.D. 365, 375 (N.D. W. Va. 2012); *Davis*, 2019 WL 6499127, at *12.

**Third,** Plaintiff's requests for a reminder notice and a 90-day notice period should be rejected.  In other cases filed by her counsel against Defendant, courts have rejected requests for reminder notices.  *See Young v. Act Fast Delivery of W. Va., Inc.*, No. 5:16-cv-09788, 2017 WL 3445562, at *3 (S.D. W. Va. Aug. 10, 2017) (rejecting request for a reminder notice); *Davis*, 2019 WL 6499127, at *10 ("Plaintiffs have not explained why

reminder notices are necessary in this case, and in the interest of eliminating the concerns of judicial endorsement . . . , the Court declines to authorize the issuance of a reminder notice."). "[A] reminder notice . . . is both 'unnecessary' and potentially improper." *Byard*, 287 F.R.D. at 375 (citing cases).

Also, Plaintiff has failed to present any justification for extending the notice period beyond 60 days. *See, e.g., Byard*, 287 F.R.D. at 373 (rejecting a 90-day opt-in period; "opt-in period between 30-60 days is appropriate"). Indeed, the prior cases filed by Plaintiff's counsel have set the notice period at 60 days. *Davis*, 2019 WL 6499127, at *12 (authorizing a 60-day notice period); *Young*, 2017 WL 3445562, at *3 (same).

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's motion for conditional certification should be denied.

Respectfully submitted,

DATED: January 24, 2020

**DINSMORE & SHOHL LLP**

*/s/ Ashley C. Pack*
Ashley C. Pack (WV Bar No. 10477)
Anna M. Dailey (WV Bar No. 4525)
707 Virginia St. E., Suite 1300
Charleston, WV 25301
Tel.: (304) 357-9937
ashley.pack@dinsmore.com
anna.dailey@dinsmore.com

*Counsel for Defendant Omnicare, Inc.*

**SEYFARTH SHAW LLP**
Nancy E. Rafuse (*pro hac vice*)
James J. Swartz, Jr. (*pro hac vice*)
J Stanton Hill (*pro hac vice*)
Andrew M. McKinley (*pro hac vice*)
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA  30309-3958
Tel.:(404) 885-1500
nrafuse@seyfarth.com
jswartz@seyfarth.com
shill@seyfarth.com
amckinley@seyfarth.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2020, I caused to be served a true copy of DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND COURT-SUPERVISED NOTICE PURSUANT TO 29 U.S.C. § 216(b) by electronic means (ECF) on:

Thomas R. Goodwin
Susan C. Wittemeier
W. Jeffrey Vollmer
Carrie Goodwin Fenwick
**GOODWIN & GOODWIN, LLP**
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
trg@goodwingoodwin.com
scw@goodwingoodwin.com
wjv@goodwingoodwin.com
cgf@goodwingoodwin.com

Harold L. Lichten
Zachary L. Rubin
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com

*/s/ Ashley C. Pack*
Ashley C. Pack

*Counsel for Defendant Omnicare, Inc.*