IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CATHY L. HAGER, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>OMNICARE, INC.,<br><br>    Defendant. | Civil Action No. 5:19-CV-00484 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE NOTICE OF CONSENT FILED BY EUGENE MESSICK AND TO DISMISS HIM WITHOUT PREJUDICE**

**I.    INTRODUCTION**

On January 16, 2020, Eugene Messick ("Messick") filed a Notice of Consent to Join and Authorization to Represent ("Notice of Consent") in this action. (Dkt. No. 34-1.) Messick, however, has made clear—both in the Notice of Consent and in a prior declaration (Dkt. No. 32-8) submitted to this Court—that he never performed any work in West Virginia. It is undisputed that Defendant is not subject to general jurisdiction in West Virginia. (Dkt. No. 1 ¶¶ 4, 10 (alleging that Defendant's principal place of business was Ohio and that Defendant was organized in Delaware); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holing that the "paradigm" bases for a corporation's general jurisdiction are the place of incorporation and principal place of business).) Moreover, given the above admissions, Messick's individual claims plainly have no connection to any alleged action by Defendant in West Virginia, so as to give rise to specific jurisdiction in this Court. Under the Supreme Court's clear dictates in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1778 (2017), these facts establish that

Defendant is not subject to personal jurisdiction in West Virginia with respect to Messick's claims. Messick's Notice of Consent (Dk. No. 34-1) should therefore be stricken, and Messick should be dismissed from this case without prejudice.

## II. DISCUSSION

In *Bristol-Myers*, "[a] group of plaintiffs—consisting of 86 California residents and 592 residents from 33 other States—filed eight separate complaints in California Superior Court," asserting they were injured by one of defendant's drugs. 137 S. Ct. at 1778. The nonresident plaintiffs did not allege, however, that they obtained the medicine through a California source or were injured in California. *Id.* The California Supreme Court initially found jurisdiction because "the claims of the nonresidents were similar in several ways to the claims of the California residents." *Id.* at 1779.

The U.S. Supreme Court reversed, observing that, by relying on similarity of claims alone, "[t]he State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims." *Id.* at 1781. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the medicine] in California—and allegedly sustained the same injuries as the nonresidents—d[id] not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original). Instead, "[w]hat is needed—and what is missing here—is a connection between the forum *and the specific claims at issue*," and "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (emphasis added).

The Supreme Court held that the defendant was not subject to personal jurisdiction in California with respect to the nonresidents' claims because they did not claim to have

suffered harm in California. *Id.* at 1782. The Supreme Court also rejected plaintiffs' efforts to conjure up a "parade of horribles" that would result from its ruling, noting that the decision "d[id] not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over [the defendant]." *Id.* at 1783. The residents of each state could also "sue together in their home States." *Id.*

Following *Bristol-Myers*, a growing number of courts have arrived at the necessary conclusion that the Supreme Court's analysis applies with equal force to FLSA collective actions. *See, e.g., Pettenato v. Beacon Health Options, Inc.*, No. 19-CV-1646 (JPO) (BCM), 2019 WL 5587335, at *9 (S.D.N.Y. Oct. 25, 2019) (applying *Bristol-Myers* to determine that "there is a lack of connection 'between the forum and the underlying controversy' sufficient to provide the Court with specific personal jurisdiction over [defendant] with respect to the out-of-state employees' FLSA claims"); *Chavira v. OS Restaurant Servs., LLC*, No. 18-cv-10029-ADB, 2019 WL 4769101, at *6-7 (D. Mass. Sept. 30, 2019) (denying conditional certification of a nationwide collective based on *Bristol-Myers*); *Rafferty v. Denny's, Inc.*, No. 5:18-cv-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019) ("[E]xercising personal jurisdiction over Denny's for claims of any out-of-state putative collective member would violate due process."); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 58 (D. Mass. 2018) ("[T]he principles stated in *Bristol-Myers* . . . preclude this court from asserting personal jurisdiction over the claims of potential opt-in plaintiffs who do not work . . . in [the forum state]."); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018) ("*Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of [out-of-state] plaintiffs against [the defendant].").

3

In well-reasoned and thorough opinions, these courts have relied primarily on two grounds: (1) the similarities between opt-in plaintiffs in FLSA collective actions, the mass tort plaintiffs in *Bristol-Myers*, and parties in similar situations that have been required to individually establish specific jurisdiction; and (2) the ability of parties to file their collective actions in other, proper fora.

### A. FLSA Opt-In Plaintiffs Are Indistinguishable from the Mass Tort Plaintiffs in *Bristol-Myers* and from Other Parties that Are Regularly Required to Establish Specific Jurisdiction Individually.

First, their decisions are rooted in an analysis of the procedural mechanisms of the FLSA, and the similarities between collective actions and mass tort and other circumstances in which courts regularly require personal jurisdiction to be established as to all plaintiffs individually. In that regard, these courts note that "an FLSA collective action is more comparable to the mass tort action in *Bristol-Myers* than to a Rule 23 class action. That is so because, in an FLSA collective action, 'every plaintiff who opts in to a collective action has party status.'"[1] *Pettenato*, 2019 WL 5587335, at *9 (quoting 7B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1807 (3d ed. 2004)). "Indeed, '[a] collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases.'" *Id.* (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)); *accord Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013) ("A mass action is more akin to an opt-in than it is to a class action . . . ."); *Roy*, F. Supp. 3d at 59 ("[The FLSA] does not truly authorize a class action: it is

---

[1] Class actions, on the other hand, have "independent legal status" once certified. *Roy*, 353 F. Supp. 3d at 59; *accord Pettenato*, 2019 WL 5587335, at *7.

properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees.").

On the other hand, the few courts that have declined to extend *Bristol-Myers* to the FLSA have failed to recognize the critical differences between FLSA collective actions and Rule 23 class actions. For example, in *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594 (N.D. W. Va. Dec. 4, 2019), the court relied on the decision of a separate district court assessing *absent Rule 23 class members* to hold that, because jurisdiction is measured "at the level of the suit," only the named plaintiff needed to satisfy the requirements of specific jurisdiction in an FLSA collective action. *Id.* at 3. However, as discussed above, unlike absent class members, FLSA opt-in plaintiffs are individual parties with individual cases who are brought together through the FLSA's joinder mechanism, not as a "class." *See, e.g.*, *Anjum v. J.C. Penney Co.*, No. 13 CV 0460(RJD)(RER), 2014 WL 5090018, at *12 (E.D.N.Y. Oct. 9, 2014) ("[T]he FLSA, standing alone, creates a relatively simple rule of joinder. . . . [The opt-in] becomes party to the lawsuit through a separate action joined to the original suit, which commences on the date written consent is filed."). *Hunt* simply cannot be reconciled with the procedural realities of the FLSA, and is inconsistent with the Supreme Court's admonition in *Bristol-Myers* that "[w]hat is needed . . . is a connection between the forum and the *specific claims at issue*." 137 S. Ct. at 1781 (emphasis added).

In addition to noting the similarities between FLSA collective actions and mass tort actions, courts applying *Bristol-Myers* have also noted that courts "generally have extended the specific jurisdiction principles articulated in *Bristol-Myers* to the analysis of personal jurisdiction over named plaintiffs in federal class actions." *Roy*, 353 F. Supp. 3d at 56–57.

5

Even for class actions, courts require that specific jurisdiction be established for the claims of each individual with independent party status (i.e., who are not absent class members). *Id.*

> Given the above, courts have held that
>
> an analysis of the similarities between the nonresident party plaintiffs in *Bristol-Myers*, the out-of-forum named plaintiffs in Rule 23 class actions class actions, and the nonresident opt-in plaintiffs in FLSA suits supports [the] position that, even if the principles in *Bristol-Myers* do not extend to class members in class actions, they preclude [a] court from asserting personal jurisdiction over the claims of potential opt-in plaintiffs who do not work for [the defendant] in [the forum state].

*Id.* at 58; *Chavira*, 2019 WL 4769101, at *5. Indeed, "it is difficult to come to a different conclusion given the language in *Bristol-Myers*, which is repeated twice in the opinion, to the effect that for each plaintiff, 'there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State." *Chavira*, 2019 WL 4769101, at *6.

### B. As the *Bristol-Myers* Court Observed, FLSA Plaintiffs Remain Free to File Collective Actions, Including Those of a Nationwide Scope, in Other Courts.

The second ground for the decisions applying *Bristol-Myers* is a rejection of efforts by other courts to rely on the same "parade of horribles" arguments rejected by the *Bristol-Myers* court. *See, e.g., Pettenato*, 2019 WL 5587335, at *10. For example, in *Swamy v. Title Source, Inc.*, No. C 17-01175, 2017 WL 5196780, at *2 (N.D. Cal. 2017), the district court erroneously refused to extend *Bristol-Myers* to FLSA collective actions because it believed doing so "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Accord Mason v. Lumber Liquidators, Inc.*,

No. 17-CV-4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019) (basing its decision on the above language from *Swamy*).

However, as courts rejecting the reasoning underlying *Swamy* have observed, "[a]pplying *Bristol-Myers* to FLSA collective actions will *not* prevent a nationwide collective of plaintiffs from 'joining together in a consolidated action' in a state that has general jurisdiction over [a defendant]. . . ." *Pettenato*, 2019 WL 5587335, at *10 (quoting *Bristol-Myers*, 137 S. Ct. at 1783). Apart from being plainly inconsistent with *Bristol-Myers*, *Swamy*'s reasoning ignores that personal jurisdiction is a creature of "the Due Process Clause, acting as an instrument of interstate federalism," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980), and that "the FLSA does not authorize nationwide service of process," *Roy*, 353 F. Supp. 3d at 56. Whatever policy interests may underlie the FLSA, they cannot supersede constitutional due process protections. *See, e.g., Pettenato*, 2019 WL 5587335, at *10 ("[T]he Court's obligation to follow [*Bristol-Myers*] cannot be overshadowed by 'even the most compelling' policy arguments." (quoting *Chavira*, 2019 WL 4769101, at *6)). The holding of *Bristol-Myers* therefore applies with equal force in the FLSA collective action context.

### C. Because Defendant Is Not Subject to Personal Jurisdiction in West Virginia with Respect to the Claims of Messick, Messick's Notice of Consent Should Be Stricken and His Claims Must Be Dismissed Without Prejudice.

For the reasons discussed above, *Bristol-Myers* dictates the resolution of Messick's claims in this Court. Defendant is not subject to general jurisdiction in West Virginia. (Dkt. No. 10, at 4–5.) To establish specific jurisdiction and satisfy the minimum contacts inquiry, Messick must establish purposeful availment, relatedness, and reasonableness for each of his individual claims. *Sneha Media & Entm't, LLC v. Assoc. Broadcasting Co. P*

*Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018). The relatedness prong requires that "the plaintiffs' claims arise out of [the defendant's] activities directed at the state." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)

Here, Messick cannot meet the relatedness prong because "[t]here is no nexus between the wages [Messick] received and Defendant['s] activities in [West Virginia]." *Chavira*, 2019 WL 4769101, at *6. In his declaration submitted to the Court, Messick asserts only that he has "personally made deliveries for Omnicare in Ohio, Indiana, and Kentucky" during a sixteen-year period. (Dkt. No. 32-8 ¶¶ 3–4.) While it is impossible to divine from this declaration whether Messick worked in all of those states during the collective period,[2] he only asserts in his Notice of Consent that the performed deliveries in "Cincinnati, OH." (Dkt. No. 34-1.) Each of these filings make clear that Messick never performed deliveries in West Virginia. (*Id.*)

Given the foregoing, there is no plausible argument that any claims by Messick (or any other out-of-state individual[3]) "arise out of" Defendant's alleged contacts in West Virginia. *Chavira*, 2019 WL 4769101, at *6. On that ground alone, Messick's Notice of Consent should be stricken, and Messick should be dismissed without prejudice. *See, e.g.*, *id.* at *7 (striking consent forms filed by out-of-state opt-in plaintiffs).

---

[2] Mr. Messick's declaration appears to concern a 16-year period, making it unclear when he performed deliveries in Kentucky and Indiana. (Dkt. No. 32-8 ¶¶ 3, 6, 8.)

[3] It is conceivable that out-of-state individuals may continue to filed opt-in forms that raise this same dispositive issue. Defendant respectfully submits that the parties and the Court may benefit from establishing a procedure for resolving such issues (and any other personal jurisdiction issues) on a consolidated basis, rather than through the filing of separate motions when each opt-in joins the case.

## III. CONCLUSION

For all the foregoing reasons, Messick's Notice of Consent (Dkt. No. 34-1) should be stricken, and Messick should be dismissed from this case without prejudice.

Respectfully submitted,  DATED:  January 24, 2020

**DINSMORE & SHOHL LLP**

*/s/ Ashley C. Pack*
Ashley C. Pack (WV Bar No. 10477)
Anna M. Dailey (WV Bar No. 4525)
707 Virginia St. E., Suite 1300
Charleston, WV 25301
Tel.: (304) 357-9937
ashley.pack@dinsmore.com
anna.dailey@dinsmore.com

*Counsel for Defendant Omnicare, Inc.*

**SEYFARTH SHAW LLP**
Nancy E. Rafuse (*pro hac vice*)
James J. Swartz, Jr. (*pro hac vice*)
J Stanton Hill (*pro hac vice*)
Andrew M. McKinley (*pro hac vice*)
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA  30309-3958
Tel.:(404) 885-1500
nrafuse@seyfarth.com
jswartz@seyfarth.com
shill@seyfarth.com
amckinley@seyfarth.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, I caused to be served a true copy of DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE NOTICE OF CONSENT FILED BY EUGENE MESSICK AND TO DISMISS HIM WITHOUT PREJUDICE by electronic means (ECF) on:

Thomas R. Goodwin
Susan C. Wittemeier
W. Jeffrey Vollmer
Carrie Goodwin Fenwick
**GOODWIN & GOODWIN, LLP**
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
trg@goodwingoodwin.com
scw@goodwingoodwin.com
wjv@goodwingoodwin.com
cgf@goodwingoodwin.com

Harold L. Lichten
Zachary L. Rubin
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com

*/s/ Ashley C. Pack*
Ashley C. Pack

*Counsel for Defendant Omnicare, Inc.*