**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| _____ ) | |
| CATHY L. HAGER, ) | CIVIL ACTION NO: 5:19-CV-00484 |
| ) | |
| on behalf of herself and all ) | |
| others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OMNICARE, INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR CONDITIONAL**
**CERTIFICATION OF COLLECTIVE ACTION AND COURT-SUPERVISED NOTICE**
**PURSUANT TO 29 U.S.C. § 216(b)**

## I.      INTRODUCTION

In response to Plaintiff's motion for conditional certification (Dkt. 32), Defendant Omnicare's lead argument is a personal jurisdiction defense under *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1776, 198 L. Ed. 2d 395 (2017).[1]  Omnicare's *Bristol-Myers* argument, and the other arguments in its response brief, are wholly without merit.  This Court and its sister districts in the Fourth Circuit (as well as numerous other courts) have plainly held that *Bristol-Myers* is inapplicable to class and collective actions in federal court.  *See, e.g., Ross v. Huron Law Grp. W. Virginia, PLLC*, No. CV 3:18-0036, 2019 WL 637717, at *3 (S.D.W. Va. Feb. 14, 2019) (rejecting application of *Bristol-Myers* to class actions and finding that class actions contain due process protections not present in state mass tort actions); *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *2 (N.D.W. Va. Dec. 4, 2019) (*Bristol-Myers* "does not apply to FLSA collective actions."); *see also Solomon v. Am. Web Loan*, No. 4:17CV145, 2019 WL 1320790, at *18 (E.D. Va. Mar. 22, 2019) (*Bristol-Myers* does not apply to federal RICO claims where the conspiracy reached the forum state, in contrast to the California state tort actions in *Bristol-Myers* alleged by out-of-state plaintiffs); *Hicks v. Houston Baptist Univ.*, No. 5:17-CV-629-FL, 2019 WL 96219, at *5 (E.D.N.C. Jan. 3, 2019) (*Bristol-Myers* does not apply to class actions in federal court; *Morgan v. U.S. Xpress, Inc.*, No. 3:17-CV-00085, 2018 WL 3580775, at *5 (W.D. Va. July 25, 2018) ("*Bristol-Myers Squibb's* holding and logic do not extend to the federal class action context.").  Indeed, the U.S. Supreme Court has itself clarified that its *Bristol-Myers* decision was limited to "the due process limits on the exercise of specific jurisdiction by a State" court, leaving open the question of "whether the

---

[1]      Omnicare already moved to dismiss for a purported lack of personal jurisdiction.  *See* Dkt. 10.  The Court ruled against Omnicare.  *See* Dkt. 26.  Omnicare's response thus seeks to relitigate a decided issue that it has already lost.  Thus, Omnicare's failure to raise its flawed *Bristol-Myers* argument in its prior motion to dismiss Plaintiff's claims bars the present motion.

same restrictions on the exercise of personal jurisdiction [apply to] a federal court." *Bristol-Myers*, 137 S. Ct. at 1784. There is no reason to depart from the well-reasoned, persuasive, and on point decisions from federal courts in both the Southern and Northern Districts of West Virginia that have already addressed this issue.

Omnicare's secondary arguments against conditional certification fare no better. Instead of addressing the vast body of case law that Plaintiff cited in support of conditional certification, Defendant argues for an unsupported and harsh interpretation of the conditional certification process that is not supported by the law or the unique facts of this case. Contrary to Omnicare's arguments, "courts nationwide generally consider the burden on the named plaintiffs at the first stage to be relatively lenient," as the Southern District of West Virginia already recognizes. *Deskins v. S. W. Virginia Cmty. & Tech. Coll.*, No. 2:18-CV-01109, 2019 WL 3987759, at *3 (S.D.W. Va. Aug. 22, 2019); *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 539 (S.D. Tex. 2008) ("It simply cannot be that an employer may establish policies that create strong incentives for managers to encourage or allow employees to work off-the-clock, and avoid a FLSA collective action because a large number of employees at a number of different stores are affected."). Indeed, Omnicare completely omits any discussion of multiple cases cited by Plaintiff that support nationwide conditional certification. For example, Defendant fails to distinguish—or even mention—*Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, No. CV 18-1698, 2019 WL 4750141, at *1 (W.D. Pa. Sept. 30, 2019), where the court certified a nationwide collective of FedEx drivers working for divergent FedEx subcontractors. Perhaps even more surprising is Omnicare's complete failure to discuss this district court's decision in *Young v. Act Fast Delivery of W. Virginia, Inc.*, No. 5:16-CV-09788, 2017 WL 3445562 (S.D.W. Va. Aug. 10, 2017) (granting conditional certification and finding that merits based joint employer defenses or factual disputes

are "not relevant [to] conditional class certification.").[2]

The remainder of Defendant's opposition brief addresses irrelevant arguments regarding the underlying merits of Plaintiff's claims, and virtually ignores the only material question presented at this time: whether the putative collective members are in fact similarly situated for purposes of conditional certification.  It is well established that arguments going to the merits of plaintiffs' claims are irrelevant at the conditional certification stage.  *See Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 371 (N.D.W. Va. 2012) (courts do not resolve "issues going to the merits." Similarly, where "defendants attempt to highlight the dissimilarities of the proposed class," courts determine the relevancy of these alleged distinctions "at the second [decertification] stage of the [FLSA] analysis." (citation omitted) *Id*.  Governing case law from the Fourth Circuit makes clear that all of the arguments raised by Omnicare are irrelevant at this stage in the proceedings.

Ultimately, Omnicare does not actually refute the clear evidence that its delivery drivers across the nation are subject to the same basic unlawful scheme.  Omnicare misclassified these low wage workers as independent contractors across the country.  These drivers thus became the inevitable victims of minimum wage and overtime violations directly tied to Omnicare's common misclassification scheme and business practices.  Indeed, rather than refute Plaintiff's overwhelming body of evidence that it has a policy or practice of repudiating its statutory obligations to its drivers (drivers that Omnicare refers to "as the 'face of the company'" (*see* Shuford Decl. (Dkt. 32-1) Ex. 2 at 1) it raises legally irrelevant alleged differences that are

---

[2]     The only mention of *Young* comes at pages 19-20 of Defendant's brief for the purpose of arguing against Plaintiff's request for a reminder notice and a 90-day notice period.  *See* Dkt. 35 at 19-20.  Omnicare fails to discuss the court's decision on conditional certification at all.

quintessentially issues to be addressed at the post-discovery decertification stage.[3]

      In focusing its opposition on the merits of Plaintiff's claims and legally immaterial alleged differences between Omnicare's drivers, Defendant has demonstrated one thing: there is no basis to deny Plaintiff's motion.

## II.    ARGUMENT

###    *A.*   *Bristol-Myers does not apply to FLSA collectives in federal court.*

####     **i.**    **This Court and others have found that *Bristol-Myers* does not apply here.**

      The authority in this district and the Fourth Circuit is overwhelming that *Bristol-Myers* does not apply to collective and class actions. *See Ross v. Huron Law Grp. W. Virginia, PLLC*, 2019 WL 637717, at *3; *Hunt v. Interactive Med. Specialists, Inc.*, 2019 WL 6528594, at *2; *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *5; *Hicks v. Houston Baptist Univ.*, 2019 WL 96219, at *5. *Bristol-Myers* is flatly inapposite here.[4]

---

[3]    *See Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 577 (D. Md. 2014) ("the possibility of individualized inquiries is not a basis for denying conditional certification" and are "properly raised [at the decertification stage] after the parties have conducted discovery."); *Id.* at 576 (certifying a FLSA collective where putative collective members worked for "different subcontractors"). Omnicare also ignores Fourth Circuit law making clear that individualized damages inquiries do not defeat class wide certification and are irrelevant at this stage. *See Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (unpublished) (4th Cir. 2010); *see also Vasto v. Credico (USA) LLC*, No. 15 CIV. 9298 (PAE), 2016 WL 2658172, at *11 (S.D.N.Y. May 5, 2016) (granting nationwide certification where court could reasonably "infer, at a minimum, a *de facto* policy by [defendant] under which [more than 400 different subcontractors] were obligated or incented" to violate the FLSA). Here, Plaintiff has "made a strong case for [her] argument that [Omnicare's] system dictates that [subcontractor] managers must commit the FLSA violations alleged…in order to [obtain their low-cost contracts], or at least that they are strongly motivated to do so." *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *6 (M.D. Tenn. Sept. 26, 2006), *aff'd*, 278 F. App'x 488 (6th Cir. 2008). Indeed, although all putative collective members here hold the identical job of Omnicare delivery driver, "[P]laintiff must show only that [her] position is similar, not identical." *Byard*, 287 F.R.D. 365, 371 (N.D.W. Va. 2012). "Courts routinely find that plaintiffs are similarly situated despite distinctions in their job titles, functions, or pay." *Id.* (citation and internal quotation marks omitted).

[4]    Omnicare could have asserted this personal jurisdiction argument at that time. *See Thomas v. Kellogg Co.*, No. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (finding that Defendant waived Bristol-Myers personal jurisdiction defense and otherwise expressing skepticism that it applied to federal FLSA collectives). Omnicare's belated *Bristol-Myers* argument is simply a distraction from the fact that Plaintiff has overwhelming met her light burden

As explained by this district in *Ross*, *Bristol-Myers'* holding does not extend to federal class actions. 2019 WL 637717, at *4. Indeed, unlike state mass tort actions in state court (that often are brought as individual actions because they cannot be adjudicated on a class wide basis), federal statutory class and collective actions contain procedural due process safeguards that permit nationwide resolution of similarly situated claims in federal court. *Id*. at *3-4.

ii.     **Other courts from outside this Circuit have similarly rejected application of *Bristol-Myers* in collective and class actions.**

The unanimous view of the district courts in the Fourth Circuit is shared by the majority of courts throughout the country. *See Garcia v. Peterson*, 319 F. Supp. 3d 863, 880 (S.D. Tex. 2018) (*Bristol-Myers* does not apply the FLSA collective actions); *Swamy v. Title Source Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) (finding *Bristol-Myers* inapplicable to FLSA collective actions where "[u]nlike the claims at issue in Bristol-Myers, [the court had before it] a federal claim created by Congress specifically to address employment practices nationwide"); *Seiffert v. Qwest Corp.*, No. CV-18-70-GF-BMM, 2018 WL 6590836, at *3 (D. Mont. Dec. 14, 2018) ("[T]he Supreme Court in *Bristol-Myers* did not intend to restrict a federal district court's personal jurisdiction in FLSA collective actions authorized by Congress."); *Mason v. Lumber Liquidators, Inc.*, No. 17CV4780MKBRLM, 2019 WL 3940846, at *7 (E.D.N.Y. Aug. 19, 2019) (even if defendant had not waived its *Bristol-Myers* defense, it would not apply to federal FLSA

---

for conditional certification. *See Byard*, 287 F.R.D. at 369 (plaintiffs must merely make a "modest factual showing" at the conditional certification stage; the evidence at this first stage does not need to conclusively establish that similarly situated individuals exist); *see also Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("The proper inquiry is simply whether plaintiffs are similarly situated with respect to their allegations that the law has been violated." (emphasis in original; citation and internal quotation marks omitted). Due to the FLSA's bifurcated class certification process, courts have found that the bar for conditionally certifying a collective is much lower than "the bar for certifying a Rule 23 class." *Westfall v. Kendle Int'l, CPU, LLC*, No. 1:05-CV-00118, 2007 WL 486606, at *14 (N.D.W. Va. Feb. 15, 2007). Stage-two of the decertification process is more akin to a Rule 23 analysis.

collective); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018) (*Bristol-Myers* does not apply to class actions because due process "is not offended by a potential class-action in federal court where the plaintiff class is made up in part with non-resident members."); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* No. CV 09-4115, 2020 WL 128589, at *5 (E.D. La. Jan. 10, 2020) ("*Bristol–Myers Squibb* does not change this Court's jurisdictional findings and class certification."); *Krumm v. Kittrich Corp.,* No. 4:19 CV 182 CDP, 2019 WL 6876059, at *5 (E.D. Mo. Dec. 17, 2019) (rejecting application of *Bristol-Myers* to class actions); *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2019 WL 5394050, at *8 (D. Colo. Oct. 22, 2019) ("agree[ing] with the majority position and declin[ing] to extend the holding in *Bristol-Myers* to the class action at issue.").

Defendant's argument that *Bristol-Myers* should apply is based on legally and factually erroneous analogies between state mass tort actions in state court and federal collective actions in federal court.[5] *Bristol-Myers* concerns the specific case where out of state plaintiffs attempt to avail themselves of foreign state law claims in state court; not federal collective claims in federal court. The due process analysis in *Bristol-Myers* is wholly irrelevant and Defendant's assertion that *Bristol-Myers* is controlling is belied by the Supreme Court's holding itself stating that its decision is limited to state mass tort actions, not federal actions in federal court. *See* 137 S. Ct. at 1784. The due process concerns at issue in *Bristol-Myers* are immaterial here where Congress has expressly authorized collective actions and where the federal claims at issue under the FLSA are

---

[5]     Omnicare's reliance on *Bristol-Myers* is misplaced because that case was expressly limited to the very different question of the limits to a state court's personal jurisdiction over an out-of-state defendant based on federalism concerns inherent in the Fourteenth Amendment's Due Process Clause. 137 S.Ct. at 1799 ("Because 'a state court's assertion of jurisdiction exposes defendants to the State's coercive power,' it is 'subject to review for compatibility with the Fourteenth Amendment's Due Process Clause,' which 'limits the power of a state court to render personal judgment against a nonresident defendant....'" *Id*. at 1799 (citations omitted).

the same regardless of the claimant's residency.  *See Plixer Int'l, Inc. v. Scrutinizer GMBH,* 2017 WL 4683922, *3 (D. Me. Oct. 18, 2017) ("Because federal law controls, the Fifth Amendment rather than the Fourteenth Amendment due process clause applies.  That creates a conceptual difference because the Fifth Amendment, unlike the Fourteenth, does not involve the factor of relationships among states in our federal system.").  Nothing about a federal court asserting personal jurisdiction over Omnicare for violations of federal law arising out of Omnicare's uniform system of delivering pharmaceutical products nationwide offends the principles of due process.  In contrast to a case where individual plaintiffs asserted "13 claims under California law" despite not being California residents, the putative collective members here are all protected by the FLSA and are all permitted by Congress to join Plaintiff's collective action.  Indeed, nationwide collectives are commonly certified under the FLSA, including where the defendant and putative collective members are non-residents of the federal forum.[6]

Although there are differences between the FLSA's two-stage certification process of certifying a class under the FLSA compared to under Rule 23, both federal procedures provide robust procedural protections that are unavailable in the context of state mass tort actions.  More fundamentally, FLSA claims are federal claims intended to be resolved on a class wide basis and

---

[6]     *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262-69 (11th Cir. 2008) (upholding the denial of a motion to decertify a nationwide FLSA collective action for thousands of store managers seeking to recover unpaid overtime compensation against a North Carolina corporation); *Godhigh v. Savers, LLC*, 2016 WL 7406659 (N.D. Cal. Dec. 22, 2016) (granting conditional certification of nationwide class of managers working at retail thrift stores across the country owned by company incorporated in Washington state); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759 (N.D. Ohio 2015) (granting conditional certification of individuals in 49 states who worked as co-managers at in-store bank branches operated by company incorporated in Delaware with principal executive offices in Minnesota); *Gordon v. TBC Retail Grp., Inc.*, 134 F. Supp. 3d 1027 (D.S.C. 2015) (granting conditional certification of nationwide class of mechanics employed by company with corporate offices in Florida and retail and distribution centers located across the country); *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 276 (N.D. Cal. 2015) (granting conditional certification of nationwide class of executive chefs employed at senior retirement communities across the country operated by company incorporated in Oregon).

the class certification process is nothing like out-of-state residents asserting state law claims in state court. FLSA collectives and Rule 23 actions are far more similar for purposes of the due process analysis. Both FLSA collectives and Rule 23 actions depend on representative plaintiffs asserting claims that are to be adjudicated based on common evidence. If Congress intended the FLSA process to be akin to mass tort actions, the two-tiered FLSA certification process to determine whether class members are similarly situated to representative plaintiffs would be nonsensical. *See Turner v. BFI Waste Servs., LLC*, 292 F. Supp. 3d 650, 652 (D.S.C. 2017) (emphasis added) ("[O]nce a collective action has been certified, FLSA plaintiffs opt in to an action as a whole as opposed to a claim-by-claim basis.").[7]

## B. Plaintiff's burden at this stage is exceptionally low.

As set forth in Plaintiff's opening brief, FLSA certification typically unfolds in a two-step process. At this stage—conditional certification—the burden on Plaintiff is extremely low. *See Young*, 2017 WL 3445562, at *2; *see, e.g., Williams v. ezStorage Corp.,* No. RDB–10–3335, 2011 WL 1539941, at *3 (D. Md. 2011) (rejecting self-storage company's argument that a single affidavit was insufficient to support certification and certifying a multi-state collective). Plaintiff has easily carried this burden. *See, generally*, Dkts. 33 and 32 through 32-13 (opening brief and exhibits). If the Court agrees, and grants conditional certification, then Omnicare will have an opportunity after the close of discovery to move for "de-certification" which will involve a higher level of proof and scrutiny. *See, e.g.*, *Wiley v. Asplundh Tree Expert Co.*, No. 2:13-CV-2952, 2013

---

[7] State mass torts, by comparison, are simply a conglomeration of truly individual cases that are adjudicated on an individual basis. An FLSA collective action is nothing like out of state residents asserting state law claims in state court on an individual (albeit mass) basis. Defendant has wholly failed to explain why this Court should depart from every court in this Circuit that has found that *Bristol-Myers* does not apply to class and collective actions or has at least applied great skepticism regarding its application (without affirmatively deciding the issue). *See, e.g., Weisheit*, 2018 WL 1942196 at *5 (expressing skepticism that *Bristol-Myers* applies to class and collective actions, while declining to decide the issue).

WL 12182398, at *2 (S.D.W. Va. Nov. 1, 2013).  Although Omnicare's arguments lack merit at

any stage of these proceedings, they would be asserted more appropriately at stage-two of the

FLSA certification process (if they are to be asserted anywhere).

### C.   Omnicare does not actually dispute the evidence submitted by Plaintiff that overwhelmingly demonstrates that Omnicare drivers are similarly situated nationwide.

It is thus well established that Plaintiff's burden of proof at this stage is light.  *See Gordon*,

134 F. Supp. 3d at 1031 ("[T]he plaintiff's burden at this initial stage is fairly lenient, requiring

only a modest factual showing that members of the proposed class are victims of a common policy

or plan that violated the law." (internal quotes and citation omitted)).  Here, Plaintiff has easily

met that burden by producing a substantial body of evidence at this early stage that Omnicare fails

to even address, much less dispute. First, the entire class has been misclassified as independent

contractors; a common issue independently sufficient to support conditional certification.  Indeed,

Plaintiff's evidence shows:

- Omnicare recently recruited a delivery manager, to be assigned to any Omnicare hub pharmacy around the country, wherein it referred to delivery drivers as "the face of the company" and "crucial" to its business.  *See* Ex. 2 to Shuford Dec. (Dkt. 32-3) at 1.
- This position "partners cross-functionally with numerous groups throughout Omnicare but most crucially with logistics and procurement." *Id*. Some of the relevant duties include: "Optimizing a courier network," "Working directly with couriers in onboarding, training, etc.," and "Managing courier performance." *Id*. at 2.
- Omnicare delivery drivers across the country are classified as independent contractors and are not paid any overtime for hours worked in excess of 40 per week, nor are they reimbursed for all work-related expenses (despite being paid low wages that make them uniquely susceptible to minimum wage/FLSA kick back violation).  *See* Dkt. 33 at 17.
- Delivery drivers are required to comply with Omnicare's record keeping policies, as Omnicare has admitted in *Davis*.  *Id*. at 10-11.
- Omnicare creates, monitors, and makes changes to delivery drivers' routes.
- Omnicare dictates specific employment policies in its courier agreements, including training requirement, pre-hiring requirements, and it maintains contractual control over personnel decisions such as the right to terminate a driver.  *Id*. at 7-8.
- Delivery drivers all work out of Omnicare's pharmacy and perform identical or substantially the same work; work that is integral to Omnicare's business and, in its

9

own words, "is crucial to excellent customer service and represents a large risk factor in customers deciding to stay with or leave Omnicare."  Ex. 2 to Dkt. 32-03 at 1.

- Regardless of the intermediary courier company delivery drivers must contract with, delivery drivers working for Omnicare are not paid overtime for any hours worked in excess of 40 or reimbursed for all work-related expenses.  Dkt. 33 at 9-10.

- The nature of delivery drivers' work for Omnicare requires them to drive hundreds if not thousands of miles per week for Omnicare, likely resulting in frequent minimum wage violations where drivers' meager compensation often does not even (or barely) cover their expenses.  *Id.* at 16.

- Omnicare's uniform corporate policy, codified in its courier agreements and reflected in its answer to this case, is to deny any statutory employment responsibilities to its misclassified delivery drivers.  *Id.* at 6.

- One driver, who has delivered for Omnicare for years and in multiple states while ostensibly "employed" by a revolving door of intermediary courier companies, attested to the consistency and unwavering nature of Omnicare's scheme.  *Id.* at 10.

i.      **The common denominators nationwide are that Omnicare engaged in a nearly identical misclassification scheme, has a policy and practice of denying its obligations under the FLSA, fails to reimburse drivers for all work-related expenses, and aims to keep delivery costs as low as possible without regard for compliance with statutorily due minimum and overtime wages.**

Rather than deny the overwhelming similarities between the work performed and the unlawfully low compensation received by Omnicare drivers from coast to coast, Defendant attempts to obfuscate these realities.  For example, it ignores the fact that "[a]lthough Omnicare has changed courier companies that it subcontracts with from time to time in Ohio, [for example], drivers work under substantially the same conditions regardless of the courier company Omnicare contracts with" while trying to attribute relevance to the fact that Mr. Messick's pay varied from time to time over a 16-year period.  *See* Dkt. 32-8 at ¶ 10.  *See* also Abdi Decl. (Dk. 32-9) at ¶¶ 4, 10, 12, 19, 21 (a delivery driver making pharmaceutical deliveries for Omnicare in Maine via a subcontractor was required to use his personal vehicle, was never reimbursed for the cost of using his vehicle, and was never paid overtime despite frequently working more than 40 hours); *See also* Decl. of Kepford (Dkt. 32-11) at ¶ 3, 6-7 (declaring that he delivered pharmaceutical products from designated Omnicare warehouses in Colorado and that in some weeks he "did not receive the

minimum wage because [he] worked so many hours for such little pay, especially considering that he had to pay for [his] own gas.").

Omnicare's FLSA violations are plainly rooted in common corporate policies and practices designed to keep delivery costs as low as possible while maintaining control of drivers' work. *See* Dkt. 32-5 at 15. Omnicare wishes the Court to believe that the frequent minimum wage and overtime violations are merely coincidental. Omnicare's common policies and practices are inextricably tied to the frequent FLSA violations across the country, regardless of the intermediary subcontractor. It is no accident that Mr. Messick has experienced similar FLSA violations for 16 years over the span of 4 different courier companies, while performing the exact same delivery work for Omnicare. Mr. Messick's experience in the Midwest is, for example, remarkably similar to the experience of the Omnicare drivers in Massachusetts. *See Scalia v. USPack Logistics, LLC*, No. 4:20-cv-40009, Dkt. 1 at ¶ 38 (D. Mass. 2020) (attached as Ex. A) (a complaint filed by the Secretary of Labor on January 23, 2020 alleging identical FLSA violations against an Omnicare subcontractor in Massachusetts and explaining that "[a] large portion of the drivers who worked for USPack during the time period covered by this Complaint also drove as couriers for the company that had the delivery contract with Omnicare prior to USPack, and those couriers also drive for the company that took over the Omnicare delivery contract after USPack."). It is also no accident that Omnicare commonly continues to employ drivers previously working for its predecessor courier companies; the economic relationship between Omnicare and its drivers is clearly enduring and is not dependent upon any particular subcontractor. Mr. Messick, the drivers in Massachusetts[8], and former colleagues of Ms. Hager (*see* Dkt. 32.07 at ¶ 12) all continued to

---

[8]     The evidence submitted by Defendant reflects that USPack also had a contract with Omnicare in Maryland during the relevant period. Dkt. 35-3. It can easily be inferred that USPack likely had contracts covering states other than Maryland and Massachusetts (*see also* Ennis Dep.

work for Omnicare after Defendant changed a subcontractor relationship. The common denominator is always Omnicare and the economic realities are obvious: the work performed by Omnicare drivers is inextricably tied to Omnicare's business practices and policies.

**D.    *Defendant makes premature arguments going to the merits and individual damages that are irrelevant at this stage and should be disregarded.***

It is black letter law that Courts do not consider arguments going to the merits of plaintiffs' claims at the conditional certification stage. *See, e.g.*, *Pontones v. San Jose Rest. Inc.*, No. 5:18-CV-219-D, 2019 WL 5680347, at *5 (E.D.N.C. Oct. 31, 2019) (rejecting defendant's attacks on the merits of plaintiff's claims as irrelevant and conditionally certifying a collective in a joint employer case). Rather, courts only consider the mere possibility that a class of plaintiffs might be able to prove liability on a class wide basis with respect to similar FLSA violations.[9] Similarly, "individual variances in time worked or damage computation[s]" are also irrelevant at the conditional certification stage. *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 455–56 (M.D.N.C. 2015) (citation omitted); *Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 106

---

excerpts (Ex. B) and exhibit to Ennis Dep. (Ex. C), reflecting that Omnicare also contracted with USPack in West Virginia during the relevant period and assisted in recruiting drivers). The complaint from the Secretary of Labor against USPack contains allegations and legal theories that are nearly identical to Plaintiff's in this case (e.g., failure to pay minimum wages reimburse expenses at IRS rate; no overtime). These independent allegations from the federal government support Plaintiff's allegations and theory of the case. Ironically, Omnicare points to a separate action brought by Plaintiff's counsel against USPack in Maryland that has absolutely nothing to do with Omnicare or its delivery drivers. Had Omnicare carefully read the complaint (Dkt. 35-2) and Plaintiffs' pending motion for conditional certification in that case this would have been perfectly clear. The case involves USPack drivers affiliated with a company known as Medifleet that USPack acquired and that makes medical specimen (e.g., blood and urine) deliveries to hospitals and labs (*Id.* at ¶ 15); Omnicare delivery drivers are not part of that class. Omnicare's relationship with USPack simply demonstrates the breadth of its misclassification scheme and the similarities of that scheme nationwide, regardless of the precise contractor.

[9]      Omnicare does not and cannot dispute that it has a nationwide practice of subcontracting delivery driver work and fails to take any responsibility for its FLSA obligations. This alone is sufficient to warrant conditional certification where "[t]he FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Omnicare's blanket assertions that its subcontractors share control over certain technical employment terms does not in any way absolve them of liability under the FLSA if they are found to be joint employers.

(D.D.C. 2018) ("[D]efendants cannot defeat conditional certification by pointing to immaterial variations in how the improper policies alleged by the plaintiff were applied…Conditional certification is also often appropriate despite differences among putative class members that go to damages, because a trial on liability may be followed by individualized damages calculations." (citation and internal quotes omitted)).[10]

> Indeed, as explained in *Gordon*, 134 F. Supp. 3d at 1035 (citations omitted), n. 6:

> With respect to other differences in potential class member's pay, the court notes that while each class member's actual hours, flat-rate, and commissions as a percentage of total pay will vary, courts have held that [d]ifferences as to time actually worked, wages actually due[,] and hours involved are, of course, not significant in determining whether proposed class members are similarly situated.

> Here, "Defendant['s] argument that individual issues will swamp the litigation and make it unmanageable [are] premature." *Cent. Wesleyan Coll. v. W.R. Grace & Co.,* 6 F.3d 177, 186 (4th Cir. 1993). Indeed, this District has found that arguments regarding the alleged "individualized nature of [FLSA] claims…[are] more appropriately decided at step two [decertification], after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." *Wiley*, 2013 WL 12182398, at *2; *see also Mason v. Lumber Liquidators, Inc.*, 2019 WL 3940846, at *4 (alleged "individual defenses" do not serve "as a basis to deny certification at the first step" and should be evaluated after discovery on a more complete record).

---

[10]   Further, at the decertification stage, the Court has full discretion to create subclasses for case-management purposes.  However, Plaintiff believes that discovery will show that such an action is not necessary because the common evidence will more than establish that Omnicare is liable under the FLSA with respect to all of its drivers nationwide.  Further, the evidence produced reflects that there may be a relatively small number of subcontractors/courier agreements governing Omnicare's nationwide business because it awards contracts to courier companies covering multiple states.  Thus, it is even more appropriate here to grant conditional certification than in *Credico*, *supra*, where the court conditionally certified a nationwide collective that worked for 400 different subcontractors.

i.      **The fact that putative collective members nominally worked for various Omnicare subcontractors or were paid similarly low wages (but in slightly different forms) does not defeat conditional certification.**

The fact that putative collective members nominally worked for different intermediary subcontractors is irrelevant and courts have frequently granted conditional certification where defendants have made similarly misguided arguments. *See Vasto v. Credico,* 2016 WL 2658172, at *11 (granting nationwide certification where court could reasonably "infer, at a minimum, a *de facto* policy by [defendant] under which [more than 400 different subcontractors] were obligated or incented" to violate the FLSA); *Fair v. Commc'ns Unlimited, Inc.*, No. 4:17CV02391 SRC, 2019 WL 4695942, at *5 (E.D. Mo. Sept. 26, 2019) (conditionally certifying collective of technicians working in 14 different states who worked for defendant's subcontractors and were classified as independent contractors); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 800 (E.D. La. 2007) ("given the lenient standard at the notice stage" the Court granted conditional certification of FLSA collective, "including [putative members] who worked for other subcontractors"); *Sullivan-Blake*, 2019 WL 4750141, at *4 (certifying a nationwide collective of FedEx drivers working for FedEx's numerous subcontractors); *see also Castillo v. P & R Enterprises, Inc.*, 517 F. Supp. 2d 440, 448 (D.D.C. 2007) ("courts have previously certified conditional classes consisting of employees located in different buildings and presumably subject to different layers of oversight.").

Ultimately, it is well established that joint employers "are jointly and severally liable" for compliance with the FLSA. *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 301 (4th Cir. 2006). Plaintiff and putative class members need not join Omnicare's subcontractors in order to win their case.[11]  Omnicare's policy of repudiating FLSA responsibility in its courier agreements itself is a

---

[11]      Indeed, the whole point of this case is proving that Omnicare cannot simply avoid

uniform policy or practice sufficient to warrant nationwide conditional certification. Indeed, just like FedEx could not defeat nationwide conditional certification by arguing that its drivers were *technically* paid by different subcontractors under somewhat different terms, Omnicare cannot defeat conditional certification here by arguing that Plaintiff Hager was paid a small lump sum (equating to around 50 cents per mile) and Mr. Messick was paid at a similarly low rate per mile.[12] All evidence reflects rampant and inevitable FLSA violations and any different inquiries into specific pay are simply relevant to assessing damages, not liability.[13]

---

employment obligations by entering into illusory subcontracting agreements designed to thwart the FLSA. The economic realities between Omnicare and its drivers are too overwhelming; Plaintiff can more than plausibly prove that all delivery drivers are Omnicare employees notwithstanding alleged differences in some shared employment terms. As the Court explained in *Davis*, joint employment is "is not one of the irreducible mandatory elements." *Davis v. Omnicare, Inc.*, 2018 WL 6932118, at *8 (E.D. Ky. Dec. 12, 2018). Here, even given some of these alleged differences, which Plaintiff asserts are immaterial (especially at this stage), Plaintiff and putative class members will easily be able to show that economic realities are clear. *Id.* ("Ultimately, the facts Plaintiff *did* aver, under all the circumstances and as a matter of economic reality, amount to a plausible claim that [Omnicare] significantly controlled and thus employed [its delivery drivers].")

[12] As Plaintiff will show at the decertification stage, these alleged differences will not undermine the ability to resolve collective members' claims on a class-wide basis. Omnicare's arguments to the contrary are simply irrelevant merits and damage based inquires; both are prematurely raised in response to Plaintiff's motion. Indeed, Omnicare refers to differences regarding "Plaintiff's damages theory." Dkt. 35 at 14. Plaintiff's damages theory (as opposed to liability) is wholly irrelevant at this stage and Defendant's arguments to the contrary demonstrate a misunderstanding of collective and class adjudication. Indeed, they ignore the Fourth Circuit's holding in *Stillmock*, 385 F. App'x at 273 (vacating and remanding a district court's denial of class action certification due to the need for individualized damages inquiries) and the Supreme Court's decision in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (class may be proper "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members").

[13] Omnicare cryptically refers to a Lynchburg, Virginia subcontractor that it has contracted with since "prior to January 2020." Dkt. 35.03 at ¶ 3. Given this peculiar phrasing, it can be inferred that Omnicare may have entered into this contract as recently as December 2019 – perhaps in response to this litigation. This cryptic assertion has absolutely no bearing on whether conditional certification should be granted, and if anything, it provides a strong basis for granting conditional certification and allowing the Parties to engage in discovery regarding new Omnicare subcontractors such as this. For all Plaintiff knows, this new subcontractor similarly fails to pay overtime or reimburse its employees for significant work-related expenses such as gasoline notwithstanding that they may be provided "company-vehicles." In any event, Plaintiff has every reason to believe that Omnicare's uniform misclassification scheme extends into Virginia and putative collective members in the state should receive notice and the Court should reserve judgment on the relevance of Omnicare's cryptic assertions until the decertification stage.

As the court in *Sullivan-Blake v. FedEx* explained in rejecting nearly the same arguments made by Omnicare here:

> In opposing the Motion, FedEx contends that Plaintiffs have failed to identify a uniform FedEx compensation policy that deprives them and the members of the proposed collective action of overtime pay. (ECF No. 29 at 8). Pointing to its [subcontractor/ISP] model, FedEx maintains that each ISP, not FedEx, has "sole and complete discretion" over their drivers' pay. (*Id.* at 9). Because not all ISPs have the same pay policies, FedEx contends, Plaintiffs cannot show that "all drivers employed by all ISPs are subject to the same compensation policy that produced the FLSA violations they allege." (*Id.*). FedEx also argues that its ISP model does not qualify as a common policy supporting conditional certification. (*Id.* at 11–12).

> **However, these contentions focus either on merits of the Plaintiffs' claims, or on whether the potential opt-ins are in fact similarly situated to Plaintiffs. This is an inquiry that will be undertaken at step two of the certification process with a more developed record.**

*Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, 2019 WL 4750141, at *4 (emphasis added); *see also Id*. at n. 3 (emphasis added):

> FedEx's argument appears to be that it had no obligation to pay overtime to those [sic] delivery drivers because it expected the [subcontractors] to pay overtime to their own employees. The Court need not entertain this argument, **which goes to the merits of Plaintiffs' claim**, at this stage of the proceedings but notes that "[t]he FLSA establishes a federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Symczyk*, 569 U.S. at 69.

Omnicare chiefly relies on factually distinguishable and outlier cases that cannot be squared with the facts of this case or the overwhelming body of law in FLSA cases.  For example, Omnicare relies on *Gibbs v. MLK Express Servs., LLC*, No. 218CV434FTM38MRM, 2019 WL 2635746, at *6 (M.D. Fla. June 27, 2019).  This case is limited to its facts and contains a muddled legal analysis that is at odds with the law of this Circuit and the overwhelming majority of courts.

---

Moreover, even assuming *arguendo* that Defendant's liability with respect to some putative collective members was recently cut off in Virginia, that fact does not preclude conditional certification. *See Jackson v. Fed. Nat'l Mortg. Ass'n*, 181 F. Supp. 3d 1044, 1060–61 (N.D. Ga. 2016); *see also Rosinbaum v. Flowers Foods, Inc.,* 238 F. Supp. 3d 738, 746 (E.D.N.C. 2017) (rejecting defendant's arguments that dissimilarities between putative collective members defeats conditional certification where it is not clear that any of the alleged differences are "material to determining whether a given worker qualifies as an employee." (reserving judgment for decertification)).

First, the court in *Gibbs* denied conditional certification because it did not "find anything [there] sticking Amazon [an alleged joint employer] to individual contractors pay policies or overtime violations." *Id*. Here, in contrast, Plaintiff has produced overwhelming evidence that Omnicare's misclassification scheme is designed to keep costs as low as possible and to avoid its obligations to comply with the FLSA; despite the fact that it controls, monitors, and regulates the work of drivers nationwide at the corporate level. Omnicare's courier agreements are ripe with evidence of direct and indirect control over drivers and plainly states Omnicare's policy of denying any responsibility for its statutory obligations under the FLSA. *See* also *Young v. Act Fast Delivery of W. Virginia, Inc.*, 2018 WL 279996, at *6 (S.D.W. Va. Jan. 3, 2018) (finding employment liability by examining Omnicare's courier agreement).[14] Second, *Gibbs* is unpersuasive and based on flawed reasoning that collapses the FLSA's two-stage conditional certification process into a single inquiry that requires a heightened and erroneous burden of proof (prior to discovery) and inappropriately resolves core merits-based disputes. The decision in *Gibbs* analysis is muddled and presumes the merits of the underlying disputes prior to any discovery.[15] Courts in this Circuit and throughout the country have declined to adopt such an interpretation of the FLSA certification process. *See, e.g., Presson v. Recovery Connections Cmty.,* No. 5:18-CV-466-BO, 2019 WL

---

[14]    Omnicare's arguments regarding the alleged inability to determine joint employment based on common evidence is unpersuasive in view of *Young*. Indeed, the Court in *Young* did just that. In any event, Omnicare's arguments are ripe for the decertification stage after the Parties have engaged in discovery. *See, e.g., Irvine v. Destination Wild Dunes Mgmt., Inc.,* 132 F. Supp. 3d 707, 710 (D.S.C. 2015) (reserving judgment on relevance of "different job assignments, work sites and payment levels of putative class" until the decertification stage once the record has been more developed after discovery).

[15]    Defendant notes that the Department of Labor recently finalized new regulations regarding joint employment. These regulations have been contested during the notice process and it is not clear whether they are valid and/or otherwise entitled to *Chevron deference*. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984). Further, they cannot be applied retroactively. *See, e.g., Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 684 (D. Md. 2012). In any event, these merit-based questions are irrelevant at this stage and Plaintiff will prevail under any joint employment standard. Omnicare also mischaracterizes Plaintiff's FLSA theory as depending on an alter-ego analysis. This is simply not true and not supported by the law and the FLSA's broad definition of employer.

3047114, at *3 (E.D.N.C. July 11, 2019) ("Indeed, in instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination."   (quotation, brackets, and citation omitted)). Omnicare "will have an ample opportunity at the second stage of the certification process to argue that the class should be decertified.  The Court, at that time, will have a full record upon which to make that determination." *Irvine v. Destination Wild Dunes Mgmt., Inc.,* 132 F. Supp. 3d 707, 710 (D.S.C. 2015) (rejecting Defendants' arguments that "different job assignments, work sites and payment levels of the putative class" defeated conditional certification where Plaintiff's alleged "substantial underpayment of wages to the proposed class.").

In contrast to *Gibbs*, this case is far more like *Sullivan-Blake v. FedEx* and, of course, *Young* – cases Plaintiff cites in her brief that Defendant wholly failed to discuss or distinguish.[16]

### E.    *Notice is Proper; Omnicare's Arguments Are Illusory and Lacking Support.*

Courts in this circuit recognize that "judicial economy is served by conditionally certifying and providing notice to a larger rather than a smaller class." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 835 (E.D. Va. 2008).  A 90-day period is warranted given the scope of the collective and based on Omnicare's self-serving position that it has no ability to obtain information that would streamline the notice process and make administrative issues during the notice period less likely

---

[16]    The other cases Defendant relies on are also inapposite.  In *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) the plaintiffs failed to prove a uniform scheme where the defendant had acquired small companies employing different job titles under terms that preexisted the defendant's acquisition and therefore were not evidence of a centralized scheme or policy.  Here, to the contrary, the evidence indicates that Omnicare subcontractors come and go, but drivers continue to perform the exact same work for unlawfully low wages.  *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 880 (E.D. La. 2008) involved 2,100 different subcontractors of a general construction contractor.  Here in contrast, the evidence reflects that Omnicare relies on much fewer subcontractors (relying on a single subcontractor to cover numerous states) and maintains far more control.

to occur.  Second, Omnicare's arguments that notice is futile is not supported by any law and patently false.  It made the same argument in *Davis* to no avail.  The reality is that Omnicare has information to assist in identifying putative collective members and it could streamline the process by simply emailing all its contractors tomorrow to obtain information relevant to notice. S*ee M.L.C., Inc. v. North American Philips Corp.*, 109 F.R.D. 134, 138 (S.D.N.Y. 1986) (determination documents in control of defendants supported by "defendants' ability to easily obtain these [documents] when it was in their interest to do so").  Indeed, Plaintiff put Omnicare on notice in the Parties' Rule 26(f) Report that it had an obligation to take reasonable efforts to preserve such plainly relevant information.  *See* Dkt. 19 at 5-6.  Information that may technically be in the possession of Omnicare's subcontractors is certainly within its control for discovery purposes.[17]  Finally, courts have found reminder notices appropriate because they are consistent with "the FLSA's intentions to inform as many plaintiffs as possible of their right to opt into a collective action." *Walters v. Buffets, Inc.*, No. 6:13–CV–02995–JMC, 2016 WL 4203851, at *1 (D.S.C. Mar. 1, 2016). Here, given the scope of the class reminder notices are especially warranted where it is predictable that some class members may not receive the initial notice.  *See Clark v. Williamson*, No. 1:16CV1413, 2018 WL 1626305, at *7 (M.D.N.C. Mar. 30, 2018) (reminder notices appropriate where there are concerns about reaching collective members).

---

[17]      *See Newill v. Campbell Transp. Co.,* 2013 WL 6002349, at *6 (W.D. Pa. Nov. 12, 2013) ("The term 'control' is construed broadly, such that '[a] party controls documents that it has the right, authority, or ability to obtain upon demand.'" (citation omitted). Courts within the Fourth Circuit have interpreted Fed. R. Civ. P. 34 as requiring the production of documents that a party has the "practical-ability-to-obtain". *See, e.g., Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, 318 F.R.D. 309, 312 (M.D.N.C. 2016) (selecting "practical-ability-to-obtain" test over "legal-ability-to-obtain" test for discovery production). Given Omnicare's position, it should be ordered to demonstrate reasonable efforts it has taken or will take to obtain the information that is commonly required to be produced after a court grant's conditional certification.  *See also Rivera v. Power Design, Inc.*, 172 F. Supp. 3d 321, 330 (D.D.C. 2016) (in granting conditional certification the court ordered defendant to contact subcontractors to obtain contact information of potential collective members to effectuate notice).

## III.    CONCLUSION

Plaintiff has amply met her burden.  Plaintiff respectfully requests that the Court enter an

Order in the form of Dkt. 32-15.

Dated: January 31, 2020

Respectfully submitted,

Cathy Hager,
on behalf of herself and all
others similarly situated,

By her attorneys,

/s/ _Thomas R. Goodwin_____
Thomas R. Goodwin (WV Bar No. 1435)
Susan C. Wittemeier (WV Bar No. 4104)
W. Jeffrey Vollmer (WV Bar No. 10277)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
trg@goodwingoodwin.com
scw@goodwingoodwin.com
wjv@goodwingoodwin.com

Harold L. Lichten, admitted *pro hac vice*
Zachary L. Rubin, admitted *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA  02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND COURT-SUPERVISED NOTICE PURSUANT TO 29 U.S.C. § 216(b)** was served via CM/ECF system on January 31, 2020 to the following:

Ashley C. Pack
Dinsmore & Shohl LLP
707 Virginia Street, East
Suite 1300
Charleston, WV 25301
*Counsel for Omnicare Defendants*

James J. Swartz, Jr. (pro hac vice)
Nancy E. Rafuse (pro hac vice)
J. Stanton Hill (pro hac vice)
Andrew McKinley (pro hac vice)
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
*Counsel for Omnicare Defendants*
*Counsel for Defendants*

/s/ Thomas R. Goodwin

Counsel for Plaintiff