UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

CATHY L. HAGER,

      Plaintiff,

v.                                     CIVIL ACTION NO.  5:19-cv-00484

OMNICARE, INC.,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending are Plaintiff Cathy L. Hager's Motion for Conditional Certification of Collective Action and Court-Supervised Notice Pursuant to 29 U.S.C. § 216(b) ("motion for conditional certification") [Doc. 32], filed January 10, 2020, and Defendant Omnicare, Inc.'s ("Omnicare") Motion to Strike the Notice of Consent Filed by Eugene Messick and to Dismiss Him Without Prejudice ("motion to strike"), filed January 24, 2020. [Doc. 36].

Omnicare responded to Ms. Hager's motion for conditional certification on January 24, 2020, and Ms. Hager replied on January 31, 2020. [Docs. 35, 39]. Ms. Hager responded to Omnicare's motion to strike on February 7, 2020, and Omnicare replied on February 14, 2020. [Docs. 40, 41].

**I.**

On June 28, 2019, Ms. Hager, on behalf of herself and others similarly situated, instituted this putative nationwide collective action against Omnicare. Ms. Hager alleges Omnicare violated the Fair Labor Standards Act ("FLSA") by misclassifying its employees as independent contractors and failing to pay them minimum wages and overtime compensation. Ms. Hager now

seeks conditional certification of the putative nationwide class and court-supervised notice. Ms. Hager moves the Court to define the class as follows[1]:

> All individuals who delivered pharmaceutical products for Omnicare nationwide to Omnicare's customers, clients, or business partners, (from June 28, 2016 to the date the Court authorizes notice), and who were classified as independent contractors.

On January 16, 2020, a notice of consent was filed by the first opt-in plaintiff, Eugene Messick, an Ohio resident. As noted, Omnicare asserts that conditional class certification is improper and has moved to strike Mr. Messick's notice of consent and dismiss him without prejudice. The Court will first address the motion to strike and then turn to whether conditional certification is proper.

## II.

### A.    Motion to Strike

On January 10, 2020, Omnicare moved to strike Mr. Messick's notice of consent and dismiss him without prejudice based on lack of personal jurisdiction. Specifically, Omnicare contends that the Court lacks personal jurisdiction over it as to the claims of any putative class member who did not work for delivery companies in West Virginia. Inasmuch as Mr. Messick is an Ohio resident and general jurisdiction over Omnicare is lacking, Omnicare asserts that he, and all other nonresident opt-in plaintiffs, must establish specific jurisdiction for each of their claims. Omnicare contends that Mr. Messick is unable to satisfy the requirements for specific jurisdiction given that he asserts in his notice of consent that he has only performed deliveries in Ohio.

---

[1] In her complaint, Ms. Hager excludes drivers who have performed delivery work "in the State of Kentucky for Home Care Pharmacy, LLC; D&R Pharmaceutical Services, LLC; or Three Forks Apothecary, LLC and were based in Ashland, Beattyville, or Lexington, Kentucky" given a previously filed FLSA action in Kentucky, asserting FLSA claims on behalf of all delivery drivers of Omnicare working for these entities. [Doc. 1 at 2].

Omnicare contends there is no nexus between the wages Mr. Messick received and Omnicare's actions in West Virginia; thus, his notice of consent should be stricken, and he should be dismissed without prejudice. In support of these assertions, Omnicare relies entirely on the United States Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) and its application to FLSA collective actions by other district courts.

On February 7, 2020, Ms. Hager responded that Omnicare's *Bristol-Myers Squibb* argument is without merit, and its motion to strike should be denied. Specifically, Ms. Hager contends this Court, and its sister districts within the Fourth Circuit, have conclusively held that *Bristol-Myers Squibb* is inapplicable to class and collective actions in federal court. Additionally, Ms. Hager objects to Omnicare's motion as "superfluous" given that it "raised the exact same erroneous arguments under [*Bristol-Myers Squibb*] in its contemporaneously filed opposition to [Ms. Hager's] motion for conditional certification." [Doc. 40 at 1]. Omnicare reasserts many of the same arguments made in its original motion in its reply.

### 1. Personal Jurisdiction Standard

*Federal Rule of Civil Procedure* 12 provides that "a party may assert the lack of personal jurisdiction" by motion. Fed. R. Civ. P. 12(b)(2). During the early stages of a case, "[w]hen a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citations omitted). This analysis "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

Accordingly, the Court attributes to "the plaintiffs' allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff." *Sneha Media & Entm't, LLC v. Associated Broad. Co.*, 911 F.3d 192, 196 (4th Cir. 2018). But, "[u]nlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226; *see also Universal Leather*, 773 F.3d at 560 (requiring courts to "assume the credibility of [the plaintiff's] version of the facts, and to construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff]."). Ultimately, "if the court denies a Rule 12(b)(2) motion under the *prima facie* standard, it can later revisit the jurisdictional issue when a fuller record is presented because the plaintiff 'bears the burden of demonstrating personal jurisdiction at every stage following [the defendant's jurisdictional] challenge.'" *Sneha Media*, 911 F.3d at 196–97 (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

The Court may properly exercise jurisdiction over a foreign corporation only if: (1) jurisdiction is authorized by West Virginia's long-arm statute; and (2) application of the West Virginia long-arm statute is consistent with the Due Process clause. *See ESAB Grp., Inc. v. Zurich, Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). But "[i]t is important to recognize at the outset that personal jurisdiction in a case in which subject matter jurisdiction is based on diversity jurisdiction (28 U.S.C. § 1332) is different than in a case [, such as this one,] in which it is based on federal question jurisdiction (28 U.S.C. § 1331)." *O'Quinn v. TransCanada USA Servs., Inc.*, No. 2:19-CV-00844, --- F. Supp. 3d ----, ----, 2020 WL 3497491, at *11 (S.D.W. Va. June 29, 2020) (citing *Johnson Creative Arts, Inc., v. Wool Masters, Inc.*, 743 F.2d 947, 950 (1st Cir. 1984)).

Indeed, "the applicable constitutional provision limiting a federal court's exercise of personal jurisdiction in federal question cases is not the Fourteenth Amendment, but the Fifth Amendment." *Weinstein v. Todd Marine Enterprises, Inc.*, 115 F. Supp. 2d 668, 671 (E.D. Va. 2000) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 102-03 (1987)). The Due Process Clause, however, is "not the only limit on a federal court's in personam jurisdiction in such cases." *Id.* Rather, "when there is no provision authorizing nationwide service, federal courts must also follow Rule (4)(k) of the Federal Rules of Civil Procedure, which, *inter alia*, limits the court's exercise of personal jurisdiction to persons who can be reached by the forum state's longarm statute." *Id.* Thus, inasmuch as the FLSA "is silent on the availability of nationwide service of process, such service is governed by the forum state's long-arm statute." *Waters v. Day & Zimmerman NPS, Inc.*, No. 19-11585-NMG, --- F. Supp. 3d ----, ----, 2020 WL 2924031, at *2 (D. Mass. June 2, 2020). Accordingly, the Court must conduct the same personal jurisdiction analysis as in a diversity case pursuant to West Virginia's long-arm statute.

West Virginia's long-arm statute "is coextensive with the full reach of due process;" thus, "the statutory inquiry . . . merges with the Constitutional inquiry." *In re Celotex Corp.*, 124 F.3d 619, 627–628 (4th Cir. 1997). In determining whether exercising personal jurisdiction over a foreign defendant is consistent with due process, the Court must determine "whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dirs., First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Under the Fourteenth Amendment's Due Process clause, there are two paths permitting a court to assert personal jurisdiction over a nonresident defendant." *Universal Leather*,

773 F.3d at 559 (citations omitted). The first, general jurisdiction, allows a court to "hear any and all claims against [foreign corporations] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The paradigm forums in which a corporate defendant is at home . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation marks omitted).

The second, specific jurisdiction, "may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather*, 773 F.3d at 559. The specific jurisdiction analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted). To determine whether the exercise of specific jurisdiction is appropriate, our Court of Appeals requires analysis of "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (internal quotation marks omitted).

### 2.  Waiver

Ms. Hager passively asserts in two footnotes that Omnicare is barred from raising the defense of lack of personal jurisdiction inasmuch as it failed to raise the *Bristol-Myers Squibb* argument in its prior motion to dismiss her personal claims for lack of personal jurisdiction. The Court disagrees.

6

Pursuant to Federal Rule of Civil Procedure 12(g)(2), "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its early motion." Fed.R.Civ.P. 12(g)(2). Rule 12(g) operates in tandem with Rule 12(h), which provides that the defense for lack of personal jurisdiction is waived "by omitting it from a motion in the circumstances described in Rule 12(g)(2)" or by failing to include it in a responsive pleading. Fed.R.Civ.P. 12(h)(1).

Here, when Omnicare filed its motion to dismiss on August 23, 2019, the only plaintiff asserting a claim was Ms. Hager, a West Virginia resident. Indeed, it was not until January 16, 2020, that Mr. Messick, the first nonresident opt-in plaintiff, filed his notice of consent. [*See* Doc. 34, Ex. A]. Thus, the defense of personal jurisdiction as to any nonresident plaintiff was not available to Omnicare when it filed its original motion to dismiss. Furthermore, after the Court denied Omnicare's motion to dismiss without prejudice, Omnicare filed its answer. In its answer, Omnicare expressly preserved the personal jurisdiction defense "with respect to both the claims of [Ms. Hager] or of all other members of the proposed collective [Ms. Hager] purports to represent (including but not limited to, those individuals who did not perform any alleged work in the State of West Virginia.)". [Doc. 28 at 9]. Accordingly, the Court will consider the merits of Omnicare's challenge to personal jurisdiction.

### 3.   Application and Applicability of *Bristol-Myers Squibb*

In *Bristol-Myers Squibb*, a group of plaintiffs, made up of mostly out-of-state residents, filed eight separate complaints in California state court against the defendant pharmaceutical company alleging injuries by one of the defendant's drugs. 137 S. Ct. at 1777 (2017). The plaintiffs structured their claims as a mass tort action. *Id.* The nonresident plaintiffs,

however, did not allege that they received the drug from a California source, that they were injured in California, or that they received treatment for their injuries in California. *Id.* The Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibited California from exercising specific personal jurisdiction over the defendants with respect to the nonresident plaintiffs' claims inasmuch as there was no connection between the forum and the claims at issue. *Id.* at 1783-84. The Supreme Court made clear, however, that its decision only concerned "the due process limits on the exercise of specific jurisdiction by a State," thus leaving "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* Additionally, the Court did not "confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4 (Sotomayor, J., dissenting).

At least one of my colleagues in this District, as well as the majority of district courts that have considered the issue, have determined that *Bristol-Myers Squibb* is inapplicable in the Rule 23 context. *See Ross v. Huron Law Grp. W. Virginia, PLLC*, No. 3:18-0036, 2019 WL 637717, at *4 (S.D.W. Va. Feb. 14, 2019) (rejecting the application of *Bristol-Myers* to federal class action claims); *Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at *3-6 (W.D. Va. July 25, 2018) (holding "*Bristol-Myers Squibb's* holding and logic do not extend to the federal class action context."); *Hicks v. Houston Baptist Univ.*, No. 5:17-CV-629-FL, 2019 WL 96219, at *5 (E.D.N.C. Jan. 3, 2019) (holding that *Bristol-Myers Squibb* does not apply to federal class actions); *Munsell v. Colgate-Palmolive Co.*, No. 19-12512-NMG, --- F. Supp. 3d ----, ----, 2020 WL 2561012, at *8 (D. Mass. May 20, 2020) (concluding *Bristol-Myers Squibb* does not apply to Rule 23 class actions given "the distinct differences between the mass tort action in BMS

and a class action."); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 326 (D. Mass. 2020) (declining to extend the reach of *Bristol-Meyers Squibb* to federal class actions); *Murphy v. Aaron's, Inc.*, No. 19-cv-00601-CMA-KLM, 2019 WL 5394050, at \*8 (D. Colo. Oct. 22, 2019) (agreeing "with the majority position and declin[ing] to extend the holding in *Bristol-Myers* to the class action at issue.").

Omnicare contends, however, that the instant matter is distinguishable from the majority line given that it involves an FLSA collective action, which it asserts is different than a Rule 23 class action and more analogous to the mass tort action in *Bristol-Myers Squibb*. To date, the applicability of *Bristol-Myers Squibb* to FLSA collective actions has not been directly addressed by any United States Court of Appeal, and district courts remain split on the issue. *See Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 276 (S.D.N.Y. 2019) (collecting cases). Indeed, both parties rely on district court decisions from different jurisdictions in support of their respective arguments.[2]

Many of the courts that have declined to apply *Bristol-Myers Squibb* to FLSA collective actions have followed the reasoning first articulated by the court in *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017). *See Waters*, -

---

[2] *See e.g.*, [Doc. 35] (Omnicare citing *Pettenato*, 425 F. Supp. 3d 264; *Chavira v. OS Rest. Servs., LLC*, No. 18-cv-10029-ADB, 2019 WL 4769101 (D. Mass. Sept. 30, 2019); *Rafferty v. Denny's, Inc.*, No. 5:18-cv-2409, 2019 WL 2924998 (N.D. Ohio July 8, 2019); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43 (D. Mass. 2018); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845 (N.D. Ohio 2018)); [Doc. 39] (Ms. Hager citing *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594 (N.D.W. Va. Dec. 4, 2019); *Morgan v. Garcia v. Peterson*, 319 F. Supp. 3d 863 (S.D. Tex. 2018); *Swamy v. Title Source Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017); *Seiffert v. Quest Corp.*, No. CV-18-70-GF-BBM, 2018 WL 6590836 (D. Mont. Dec. 14, 2018); *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB) (RLM), 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360 (N.D. Ga. 2018); *Krumm v. Kittrich Corp.*, No. 4:19-CV-182 CDP, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019)).

-- F. Supp. 3d at ----, 2020 WL 2924031, at *4 (collecting cases). In *Swamy*, the court reasoned that FLSA collective actions are distinguishable from the state-law tort claims at issue in *Bristol-Myers Squibb*, given that a FLSA action is "a federal claim created by Congress specifically to address employment practices nationwide." 2017 WL 5196780, at *2. The court in *Swamy* further reasoned that in enacting the FLSA, "Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated,' and in no way limited those claims to in-state plaintiffs." *Id.* Additionally, the *Swamy* court opined that extending *Bristol-Myers Squibb* to FLSA collective actions "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Id.*

Furthermore, the Court notes that the only district courts within the Fourth Circuit to address this issue have declined to extend the holding in *Bristol-Myers Squibb* to FLSA collective actions. *See O'Quinn*, --- F. Supp. 3d at ----, 2020 WL 3497491, at *14; *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *3 (N.D.W. Va. Dec. 4, 2019). In reaching this conclusion, both the *O'Quinn* and *Hunt* courts relied, at least in part, on the *Swamy* court's ultimate conclusion that personal jurisdiction over the defendant as to the claims brought by the sole named plaintiff was all that was needed "to satisfy the requirement of personal jurisdiction in an FLSA action." *Hunt*, 2019 WL 6528594, at *3 (quoting *Swamy*, 2017 WL 5196780, at *2).

On the other hand, courts who disagree with the analysis in *Swamy* do so on the basis that "opt-in plaintiffs in an FLSA action are 'more similar to plaintiffs in a mass tort action than plaintiffs in a class action' and therefore the application of [*Bristol-Myers Squibb*] divests courts of personal jurisdiction over out of state opt-in plaintiffs in FLSA actions." *Waters*, --- F.

10

Supp. 3d at ----, 2020 WL 2924031, at *4 (internal citations omitted). Essentially, these courts note that the procedural mechanisms associated with Rule 23 class actions and FLSA collective actions are distinguishable. *See Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 58-60 (D. Mass. 2018). For instance, absent class members in a Rule 23 class action are bound by a court's judgment unless they choose to opt-out of the class. *Id.* Whereas, putative plaintiffs in a FLSA collective action do not become a part of the suit unless they affirmatively opt-in to the class, at which point, they attain party status, making them more similar to the plaintiffs in a mass tort action. *Id.*

While that analysis is not without some force, the Court concludes that *Bristol-Myers Squibb* is inapplicable to this case for many of the same reasons expressed by the *Swamy* court in its well-reasoned and thorough analysis on the issue. Indeed, the Court is hesitant to extend *Bristol-Myers Squibb* to the instant matter inasmuch as it would potentially lead piecemeal litigation, "greatly diminish[ing] the efficiency of FLSA collective actions as a means to vindicate employees' rights." *Swamy*, 2017 WL 5196780, at *2. Afterall, "[t]he purpose of a collective action under the FLSA is to allow plaintiffs to minimize individual expense in pursuing wage rights through pooled resources and to benefit the judicial system through unitary resolution of common legal and factual issues arising from the same conduct." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:16 (12th ed. 2015). Simply put, "Congress' purpose in authorizing § 216(b) was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). Extending the holding in *Bristol-Myers Squibb* to all FLSA collective actions would effectively erode this purpose and "hand[] one more tool to corporate defendants determined to prevent the aggregation of individual claims . . .

11

forc[ing] injured plaintiffs to bear the burden of bringing suit in what will often be far flung jurisdictions." *Bristol-Myers Squibb Co.*, 137 S. Ct. 1773, 1789 (Sotomayor, J., dissenting).

Furthermore, the fact that a FLSA collective action "may be, in some ways, similar to a mass-tort claim does not necessarily lead to the conclusion that [*Bristol-Myers Squibb*] is applicable." *Waters*, --- F. Supp. 3d at ----, 2020 WL 2924031, at *4. The Supreme Court's decision in *Bristol-Myers Squibb* was rooted in federalism and state sovereignty concerns inherent in the Fourteenth Amendment's Due Process Clause, which are wholly inapplicable to the case at hand. *See Bristol-Myers Squibb*, 137 S. Ct. at 1779. Indeed, the Supreme Court stressed that

> [b]ecause a state court's assertion of jurisdiction exposes defendants to the State's coercive power, it is subject to review for compatibility with the Fourteenth Amendment's Due Process Clause, which limits the power of a state court to render a valid personal judgment against a nonresident defendant.

*Id.* (internal citations omitted). The Supreme Court went on to emphasize that "restrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of respective States." *Id.* at 1780. "But '[w]hen a federal court adjudicates a federal question claim, it exercises the sovereign power of the United States and no federalism problem is presented.'" *O'Quinn*, --- F. Supp. 3d at ----, 2020 WL 3497491 at *14 (quoting Wright & Miller, *Personal Jurisdiction in Federal Question Cases*, 4 Fed. Prac. & Proc. Civ. § 1068.1 (4th ed.)). Accordingly, it is apparent that "the anxiety surrounding federalism expressed in [*Bristol-Myers Squibb*] is inapplicable to a FLSA action, based on federal question jurisdiction and thus the constitutional limitations imposed by the Fifth Amendment." *Id.*

Moreover, in analyzing specific jurisdiction in *Bristol-Myers Squibb*, the Supreme Court centered its analysis at the level of the suit. Indeed, the Supreme Court concluded that "[i]n order for a state court to exercise specific jurisdiction, 'the suit must ari[se] out of or relat[e] to the

defendant's contacts with the forum.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127 (2014)). Unlike in the mass tort context where specific jurisdiction must be met as to each individual plaintiff, "in an FLSA collective action the suit is between the named plaintiff and the defendant." *Waters*, --- F. Supp. 3d at ----, 2020 WL 2924031, at *4. The fact that putative plaintiffs in a FLSA collective action must opt-in to join the suit is immaterial inasmuch as it "does not change the dynamics of the suit which remains between the plaintiff and the defendant." *Id.*

In sum, the appropriate jurisdictional analysis is at the level of suit, which is between Ms. Hager and Omnicare. Omnicare is subject to personal jurisdiction in West Virginia for the claims brought by Ms. Hager, "the sole named plaintiff in this action, which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action." *Swamy*, 2017 WL 5196780, at *2; *see also* [Doc. 26]. Accordingly, the Court **DENIES** Omnicare's motion to strike and to dismiss Mr. Messick without prejudice.

### B.    Motion to Certify

On January 10, 2020, Ms. Hager moved to certify seeking conditional nationwide class certification of the proposed collective under the FLSA "to hold Omnicare accountable for its ongoing failure to pay statutorily mandated minimum wages and overtime premiums to its pharmaceutical delivery drivers." [Doc. 33 at 1-2]. In addition to conditional certification, Ms. Hager moves the Court to issue notice to all potential members of the proposed collective. Ms. Hager has attached a proposed notice of claim and consent form to be issued to potential plaintiffs that explains the lawsuit, procedure, and consequences of the decision to opt-in. [*See* Doc. 33-14, Ex. L].

Ms. Hager alleges that Omnicare is a for-profit entity that conducts business in at least forty-seven (47) states, including West Virginia. She asserts that Omnicare sells and distributes pharmaceutical products and medical devices throughout the United States. To deliver these products, Ms. Hager alleges that Omnicare subcontracts with regional delivery companies, "who in turn contract with pharmaceutical delivery drivers who meet the demands of Omnicare's comprehensive pharmaceutical and pharmaceutical delivery business." [Doc. 1 at 1]. Ms. Hager asserts that she was employed as a delivery driver making deliveries on behalf of Omnicare from approximately October 2018 to May 17, 2019, and primarily worked out of Omnicare's Nitro, West Virginia, location making deliveries in various locations throughout West Virginia.

According to Ms. Hager, Omnicare directs and supervises the delivery drivers through the intermediary regional delivery companies. She alleges, for example, that Omnicare requires drug tests for the drivers, retains the power to terminate the drivers, creates mandatory schedules and routes for the drivers, and closely monitors the drivers. Ms. Hager contends that this direction and supervision is done both directly by Omnicare, but also indirectly through the third-party delivery companies "to further [Omnicare's] business interests and promote compliance with its policies." [Doc. 1 at 7]. Although contractual agreements "between drivers and the regional delivery companies (and the regional delivery companies and [Omnicare]) state that drivers are not employees of [Omnicare]," Ms. Hager alleges that "the economic reality of the arrangement is that drivers are actually employees." [Doc. 1 at 4]. Accordingly, Ms. Hager alleges that Omnicare has violated the FLSA by misclassifying its delivery drivers nationwide as independent contractors and by failing to pay them minimum wages and overtime compensation.

Ms. Hager asserts that "Omnicare's scheme to subcontract with regional delivery companies across the nation to perform its essential delivery work while evading its employment

obligations" is detailed in the master "Omnicare Courier Agreement" that she has attached to her motion.[3] [Doc. 33 at 6; *see also* Doc. 32-4, Ex. B]. In further support of these assertions, Ms. Hager, along with four other employee delivery drivers, submitted declarations detailing their employment experiences.[4] [*See* Doc. 32, Exs. F-I].  In her declaration, Ms. Hager contends that she was required to contract with an Omnicare courier company, Dicom, that had subcontracted with Omnicare in order to perform delivery work for Omnicare. [Doc. 32-7, Ex. E at 2]. As such, Ms. Hager contends that throughout her tenure as a delivery driver for Omnicare, she has always been classified as an independent contractor as opposed to an employee. [*Id.*]. Ms. Hager further alleges that, based on her discussions with other delivery drivers, she is aware that they, too, are classified as independent contractors of Omnicare's courier subcontractors as opposed to employees of Omnicare. [*Id.*]. Ms. Hager asserts that, based on her conversations with other delivery drivers, their working conditions were substantially the same regardless of the courier company that Omnicare had contracted with. [*Id.*] Specifically, Ms. Hager alleges that delivery drivers have "(1) been required to drive their personal vehicles in order to perform the delivery work on behalf of Omnicare; (2) not been reimbursed for gasoline or any vehicle related expenses;

---

[3] This 2017 agreement is between "CVS Pharmacy, Inc. . . . on its own behalf and on behalf of its subsidiaries and affiliates, including Omnicare, Inc." and "Courier." [Doc. 32-4, Ex. B at 1]. The agreement defines "Courier" as including three different regional courier entities "and their officers, agents, representatives, contactors, sub-contractors and employees," encompassing at least seven (7) states. [*Id.*]

[4] Ms. Hager acknowledges that three out of four of these declarations (Exs. G, H, and I) were filed as part of other cases and two were created outside the claims period at issue here (Exs. G and I). Omnicare thus contends that these declarations are irrelevant and should not be considered. Ms. Hager asserts, however, that these declarations are nonetheless relatively recent evidence that further illustrates that Omnicare's misclassification scheme exists nationwide. The Court agrees with Omnicare and will not consider the declarations attached as Exs. G, H, and I.

(3) never received overtime premiums for hours worked in excess of 40; and (4) always made deliveries to Omnicare's customers and clients." [*Id.* at 3]

Ms. Hager further contends that delivery drivers are required to drive many miles to perform their standard assigned delivery routes. [*Id.*]. Ms. Hager estimates that she drove approximately five hundred (500) miles per five-day work week to perform her standard assigned route but was often given ad hoc delivery assignments, requiring her to drive "hundreds of extra miles per week for Omnicare." [*Id.*]. To perform their work for Omnicare, Ms. Hager contends that delivery drivers arrive at Omnicare's facilities to pick up Omnicare tote bags that contain pharmaceutical products to be delivered to Omnicare's customers that correspond with their assigned delivery routes. [*Id.* at 3-4]. Often times, these tote bags would not be complete when delivery drivers would arrive to perform their standard routes, and delivery drivers would have to wait at the warehouse until the totes were complete but were not paid additional compensation for waiting. [*Id.* at 4]. Additionally, delivery drivers are required to wear a photograph identification badge, maintain a clean and neat appearance, and wear khakis or similar dress pants when making deliveries for Omnicare. [*Id.* at 3].

Ms. Hager estimates that in a five-day work week, she would often work approximately eight (8) to twelve (12) hours a day and recalls working as many as fifteen (15) hours a day on occasion. [*Id.* at 5]. Ms. Hager alleges she was paid approximately forty-five (45) or fifty (50) dollars per day to perform her standard assigned route, which she calculates to be an estimated forty-five (45) to fifty (50) cents per mile given her standard route of approximately five hundred (500) miles per week. [*Id.*] Lastly, Ms. Hager asserts that she and other delivery drivers were never reimbursed for any vehicle related expenses, and delivery drivers would often vent about the high vehicle maintenance costs associated with driving their own personal vehicles given

16

the amount of driving they were required to do as Omnicare delivery drivers. [*Id.* at 5-6]. Mr. Messick, a current delivery driver in Ohio, submitted a declaration detailing similar experiences. [*See* Doc. 32-8, Ex. F].

Given these declarations and the other exhibits provided, Ms. Hager contends that certification is warranted. Ms. Hager asserts that Omnicare accomplishes its "misclassification" scheme of treating its delivery drivers as independent contractors by "jointly employing delivery drivers with courier companies that it contracts with while simultaneously disclaiming employment liability from its drivers." [Doc. 33 at 5-6]. Ms. Hager contends that "in denying its delivery drivers the statutory protection of employment status, Omnicare fails to ensure that its delivery drivers are paid minimum wages and overtime as required by the FLSA." [Doc. 33 at 6].

Ms. Hager further contends that she has provided sufficient evidence to support a showing that Omnicare's misclassification policy impacts its delivery drivers in materially identical ways across the country. Accordingly, Ms. Hager asserts that nationwide class certification is appropriate inasmuch as a similarly situated group of plaintiffs exists who were victims of a common policy, scheme, or plan that violated the law.

Omnicare responded on January 24, 2020, asserting that conditional certification is improper. Omnicare contends that Ms. Hager has failed to meet her burden for conditional certification inasmuch as the putative class members are not similarly situated. Additionally, Omnicare asserts that it did not have a common scheme or policy applicable to the entire collective that violated the FLSA. Specifically, Omnicare first asserts the same argument it made in its motion to strike, contending that it is not subject to personal jurisdiction respecting the claims of the nonresident opt-in plaintiffs on view of *Bristol-Myers Squibb* and its application to FLSA

actions by other district courts.[5] Second, Omnicare contends that Ms. Hager has failed to show that it had a common policy of paying delivery drivers below the minimum wage or failing to pay overtime given that each regional courier company, not Omnicare, had the exclusive ability to determine its own pay practices. Third, Omnicare asserts that Ms. Hager's collective will require individualized alter-ego and joint employment analyses for each opt-in, which are incapable of being resolved on a collective basis. Fourth, Omnicare contends Ms. Hager's proposed collective definition is overly broad. Last, Omnicare asserts that Ms. Hager's proposed notice plan is futile.

On January 31, 2020, Ms. Hager replied contending that she has met her burden for conditional certification. Specifically, Ms. Hager contends that *Bristol-Myers Squibb* is inapplicable to collective actions in federal court and that the remainder of Omnicare's assertions are irrelevant at this stage of the litigation inasmuch as they go to the merits and individual damages of the underlying claims.

## 1.   Governing Standard

Section 216(b) of the FLSA authorizes employees with claims for unpaid wages or unpaid overtime compensation to bring a collective action against the employer on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). When considering motions to certify collective actions under the FLSA, courts generally utilize "a two-stage approach when deciding whether the named plaintiffs . . . are 'similarly situated' to other potential plaintiffs*.*" *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D.Minn. 2007)).

---

[5] The Court has earlier dispensed with this contention and need not readdress it as part of the certification analysis.

"The 'notice' or 'conditional certification' stage comes first." *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 368 (N.D.W. Va. 2012). "This stage typically occurs early in the proceedings, before discovery is completed." *Id.* During this stage, the district court makes a threshold determination as to "whether the plaintiffs have demonstrated that potential class members are similarly situated," warranting court-facilitated notice to the putative class members. *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). "'Similarly situated' [does] not mean 'identical.'" *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (quoting *Bouthner v. Cleveland Constr., Inc.*, 2012 WL 738578, *4 (D. Md. Mar. 5, 2012)). Instead, "a group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law." *Id.* Plaintiffs need only make "a 'relatively modest factual showing' that such a common policy, scheme, or plan exists." *Id.* (quoting *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006)). In other words, "[t]he standard for conditional certification is fairly lenient." *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011).

After the close of discovery, a defendant is permitted to move to decertify the class. It is during the second stage, also referred to as the decertification stage, that "the court conducts a 'more stringent inquiry' to determine whether the plaintiffs are in fact 'similarly situated,' as required by § 216(b)." *Butler*, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (quoting *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)).

## 2.   Analysis

At this early stage, Ms. Hager need only make "a relatively modest factual showing" that she and putative members of the collective were "victims of a common policy,

scheme, or plan that violated the law." *See Butler*, 876 F. Supp. 2d at 576. Ms. Hager has produced sufficient evidence plausibly demonstrating that Omnicare has a uniform misclassification scheme of treating its delivery drivers as non-employee independent contractors nationwide, which, in turn, has resulted in wage and hour law violations under the FLSA. Indeed, Ms. Hager has submitted an Omnicare Courier Agreement between it and three different courier companies, including its subcontractors and contractors, encompassing at least seven (7) different states.[6] [*See* Doc. 32-4, Ex. B]. In the agreement, Omnicare expressly disclaims any responsibility concerning "federal and state wage-hour obligations (including overtime)," while simultaneously retaining a significant level of control regarding critical terms and conditions of the delivery drivers' work. [*Id*. at 17].

For instance, the agreement indicates that Omnicare, via its parent company, CVS, retains the right to terminate or replace "any person performing Courier Services[7] . . . if CVS determines that such substitution or replacement is in the best interests of CVS or patient care, and provided the substituting or replacing personnel meets all requirements under this Agreement." [Doc. 32-4, Ex. B at 7]. The agreement also states that delivery drivers must abide by certain requirements set forth by Omnicare, such as receiving infection control training and training in HAZMAT regulations and the handling of controlled substances, as well as passing background checks and drug screens. [*Id.* at 6-7].

---

[6] These states include Texas, New Mexico, Tennessee, Ohio, Kentucky, Oklahoma, and Colorado. [*See* Doc. 32-4, Ex. B at 1-2].

[7] "Courier Services" is defined in the agreement as "the pickup, transportation, delivery, delivery receipt confirmation, and reporting, by Courier of Property to consignors and consignees specified by Pharmacy, by vehicle delivery, in accordance with the Shipment Schedule or otherwise directed by Pharmacy." [Doc. 32-4, Ex. B at 2].

Additionally, Omnicare's website describes Omnicare as a "national provider of long term care pharmacy services delivering more than 70 million prescriptions a year to skilled nursing facility customers nationwide." [Doc. 32-3, Ex. 3]. In a recent Omnicare job posting for an "Advisor Courier Delivery and Logistics Management" position, it refers to its delivery services as "the face of the company." [Doc. 32-3, Ex. 2]. The posting also lists some relevant duties of this position as "optimizing a courier network," "working directly with couriers in onboarding, training, etc.," and "managing courier performance." [*Id.* at 2].

Moreover, the declarations of Ms. Hager and Mr. Messick[8] further support the allegation that Omnicare has engaged in a nationwide misclassification scheme of treating delivery drivers as independent contractors, rather than employees, resulting in wage and hour violations under the FLSA. Indeed, their declarations describe the same or similar experiences regarding the daily control and direction that delivery drivers were subjected to by Omnicare regarding how deliveries were to be made. [*See* Doc. 32, Exs. E and F]. Specifically, it is alleged that the drivers had no control over their scheduled workdays, their delivery routes, or how deliveries were made. [*Id.*] They were also required to comply with Omnicare's policy to obtain a nurse's signature upon delivery, use an electronic device to confirm the delivery was made in real-time, and return the paperwork to their respective Omnicare facilities at the end of their assigned routes. [*Id.*]. As a result of this alleged misclassification scheme, the delivery drivers contend that they were often required to work more than forty (40) hours per week without receiving overtime pay and were not reimbursed for vehicle related expenses. [*Id.*].

---

[8] Mr. Messick currently performs delivery work out of an Omnicare facility in Ohio; however, he declares that in his sixteen (16) years as a delivery driver, he has also made deliveries for Omnicare in Indiana and Kentucky. [Doc. 32-8, Ex. F at 1].

Importantly, it is alleged that regardless of the regional courier company Omnicare contracts with, the delivery drivers perform the same core delivery work for Omnicare under substantially the same conditions. [*Id.*]. For example, Mr. Messick asserts in his declaration that he has been required to contract with four (4) different courier companies throughout his sixteen (16) year tenure "in order to work for Omnicare as a delivery driver." [Doc. 32-8, Ex. F at 2]. Regardless of which courier company he contracted with, he alleges that he has always been required to use his personal vehicle, has never been reimbursed for any vehicle-related expenses, and has never received overtime compensation for working in excess of forty (40) hours per week.[9] [*Id.*]. Accordingly, these declarations, along with all other evidence submitted by Ms. Hager, provide the modest evidentiary showing that a similarly situated group of putative plaintiffs exists nationwide, thus warranting conditional class certification at this stage.

The Court further concludes that Omnicare's assertions in opposing conditional class certification are without merit. Omnicare contends that Ms. Hager "cannot establish that she and all members of the proposed collective are victims of a common policy or plan that violated the FLSA." [Doc. 35 at 10.] Specifically, Omnicare asserts that Ms. Hager has failed to show that it had a common policy of paying delivery drivers below the minimum wage or failing to pay overtime given that each courier company, not Omnicare, had the exclusive ability to determine its own pay practices. Omnicare points to variations in how drivers are paid depending on which courier company the driver has contracted with in support of denying conditional certification. Omnicare asserts that the declarations submitted by Ms. Hager "only further highlight individualized policies that flowed from and were independently implemented by each individual

---

[9] Mr. Messick notes that his current route does not require him to work more than forty (40) hours per week. [Doc. 32-8, Ex. F at 3].

courier company." [Doc. 35 at 13]. Lastly, Omnicare asserts that Ms. Hager's collective "will require individualized alter ego and joint employment analyses for each opt-in," and "[t]he wide range of entities that will need to be analyzed in relation to [Omnicare] – beyond pay practices – further support denial of conditional certification in this case." [*Id.* at 16].

The assertions are indefensible ground at this stage of the litigation, inasmuch as they concern the merits of the claims at issue or "whether the potential opt-ins are in fact similarly situated to [Ms. Hager]." *Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, No. 18-1698, 2019 WL 4750141 (W.D. Pa. Sept. 30, 2019). "[A]t this early stage . . . the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make creditability determinations." *Byard*, 287 F.R.D. at 371 (internal quotations omitted). Moreover, "[c]ourts routinely find that plaintiffs are similarly situated despite distinctions in their job titles, functions, or pay." *Id.* (internal quotations omitted). Indeed, "courts have held that '[d]ifferences as to time actually worked, wages actually due[,] and hours involved are, of course, not significant' in determining whether proposed class members are similarly situated." *Gordon v. TBC Retail Group, Inc.*, 134 F. Supp. 3d 1027, 1035 n.6 (quoting *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 368 (D.S.C. 2012)). Thus, arguments concerning dissimilarities of the proposed class "are more appropriately decided at step two, [the decertification stage,] after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." *Byard*, 287 F.R.D. at 371 (internal quotations omitted).

Lastly, Omnicare contends that if the Court determines certification is warranted, Ms. Hager's proposed collective definition is temporally overbroad. As previously mentioned, Ms. Hager seeks to define the class as follows:

>All individuals who delivered pharmaceutical products for Omnicare nationwide to Omnicare's customers, clients, or business partners, (from June 28, 2016 to the date the Court authorizes notice), and who were classified as independent contractors.

Omnicare contends that "[b]ecause FLSA opt-in plaintiffs are only able to bring claims dating back, at most, to three years before they join this case, the complaint's filing date, [June 28, 2019], is not the appropriate measuring point." [Doc. 35 at 17]. Omnicare thus asserts that the putative collective members who receive notice should be limited to those drivers who delivered pharmaceutical products for Omnicare three years prior to the date of this Memorandum Opinion and Order. Omnicare contends that this will help ensure that notice of the collective action is not sent to delivery drivers whose statutes of limitations may have already expired. The Court agrees.

"The FLSA provides a statute of limitations of two years unless the cause of action arises from a 'willful violation,' in which case a three-year limitations period applies." *Martin v. Deiriggi*, 985 F.2d 129, 135 (4th Cir. 1992) (quoting 29 U.S.C. § 255(a)). The statute of limitations period for an individual claimant continues to run until that claimant files a written consent to opt-in to the action. 29 U.S.C. § 256(b). Thus, limiting the collective to individuals who delivered pharmaceutical products for Omnicare at any time during the three years preceding the date of this Memorandum Opinion and Order "ensures that the certified class is limited to similarly situated . . . [delivery] [d]rivers and that notice is not sent to individuals lacking a viable claim." *Davis v. Omnicare, Inc.*, No. 5:18-cv-142-REW, 2019 WL 6499127, *6 (E.D. Ky. Dec. 3, 2019); *see also Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, *3 (S.D. Ohio Feb. 26, 2015) (concluding that limiting the proposed class "will help ensure that notice of the collective action is not sent to former employees whose statutes of limitations may have already expired.").

For the reasons set forth above, the Court conditionally certifies the collective FLSA nationwide class as follows[10]:

> All current and former delivery drivers classified as independent contractors who delivered pharmaceutical products for Omnicare to Omnicare's customers, clients, or business partners and received their last paycheck in connection with this delivery work on or after September 29, 2020.

The Court **ORDERS** that this modification be reflected in the proposed notice form [Doc. 32-14, Ex. L] submitted by Ms. Hager. Given the conclusion that conditional certification is proper, the Court now turns to Ms. Hager's request for court-supervised notice to the putative members of the collective.

### 3. Notice

"Courts 'have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b). . . by facilitating notice to potential plaintiffs' of the pendency of the collective action." *Byard*, 287 F.R.D. at 372 (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). "The Court has 'broad discretion' regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Id.* (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006)) (quoting *Hoffmann-La Roche*, 493 U.S. at 171). "In its notice-facilitation role, the Court settles disputes regarding notice content, and 'ensure[s] that it is timely, accurate, and informative.'" *Davis*, 2019 WL 6499127, at *9 (quoting *Hoffmann-La Roche*, 493 U.S. at 172).

Ms. Hager requests the authorization of the issuance of the notice and consent forms, attached as Exhibit L to her motion [Doc. 32-14], to all prospective collective members via United States First Class Mail, electronic mail, and text message. Ms. Hager further requests that

---

[10] Consistent with Ms. Hager's complaint, the Court further orders that putative collective members who in fact received notice as part of *Davis v. Omnicare, Inc, et al.*, Case No. 5:18-cv-00142-REW-MA (E.D. Ky.), not receive notice pursuant to this Memorandum Opinion and Order.

the proposed notice be issued consistent with the method set forth in her Proposed Order attached

as Exhibit M. [*See* Doc. 32-15].

Specifically, to facilitate notice, Ms. Hager requests the Court to direct Omnicare,

within ten (10) days of the date of this Memorandum Opinion and Order, to provide her counsel

the following identifying information for each putative collective member in Excel format:

> [F]ull name; last known mailing address(es) with city, state, and zip code; all known
> email address(es); all known cell phone numbers; beginning date(s) of
> employment; ending date(s) of employment (if applicable); and the courier
> companies that [Omnicare] contracted with during the claims period (indicating
> relevant dates of the contractual relationship).

[Doc. 32-15, Ex. M at 3]. Ms. Hager also requests that putative opt-in plaintiffs be given the option

to consent to join the collective action through use of electronic signatures. [*Id.*] Additionally, Ms.

Hager requests that putative opt-in plaintiffs be given ninety (90) days to file their consent. [*Id.* at

4]. She also requests that her counsel be authorized to send a reminder notice via regular mail,

electronic mail, and text message forty-five (45) days after the initial mailing of the proposed

notice. [*Id.*].

Omnicare raises several objections to the form and method of Ms. Hager's proposed

notice. The Court will address each objection in turn.

### a.   Production of Identifying Information

Omnicare first contends that Ms. Hager "has not identified a feasible plan for

distribution of notice," thus her notice plan is futile and must be denied. [Doc. 35 at 18].

Specifically, Omnicare objects to providing the information listed above to Ms. Hager. Omnicare

contends that inasmuch as it did not hire or contract with the delivery drivers of the third party

courier companies, "it does not know the full list of drivers within the collective definition or

which, if any, 'were classified as independent contractors,' so as to fall within the collective definition." [Doc. 35 at 18]. Omnicare further contends that it is unaware of the identifying information requested that is specific to each of these individuals given that it has no control over this information possessed by the subcontractors.[11]

Ms. Hager replies that "[i]nformation that may technically be in the possession of Omnicare's subcontractors is certainly within its control for discovery purposes." [Doc. 39 at 19]. Ms. Hager contends that Omnicare could easily obtain the identifying information and "streamline the process by simply emailing all its contractors tomorrow to obtain information relevant to notice." [*Id.*]. Ms. Hager further asserts that Omnicare was put "on notice in the Parties' Rule 26(f) Report that it had an obligation to take reasonable efforts to preserve such plainly relevant information." [*Id.*].

As mentioned above, Ms. Hager requests that Omnicare be ordered to produce the names, last known addresses, email addresses, cell phone numbers, the dates of employment of all putative collective members, and to produce the names of the courier companies it contracted with during the claims period. Additionally, Ms. Hager requests that the Court authorize notice to be issued to all putative collective members via United States First Class Mail, electronic mail, and text message. "Courts have discretion to "permit limited discovery to facilitate notice [in FLSA collective actions]." *Lee*, 236 F.R.D. at 201-202 (collecting cases). Additionally, "[c]ourts routinely order the production of names and addresses in collective actions." *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 97 (D.D.C. 2013); *see also Byard*, 287 F.R.D. 365 at 376-77 (requiring

---

[11] Omnicare contends that it lacks control this information for the reasons set forth in its portion of the parties' Rule 26(f) report. In the report, Omnicare asserts that inasmuch as Ms. Hager chose not to include the subcontractors as defendants, such information must be obtained via third-party subpoenas. [*See* Doc. 19 at 7].

defendant to produce names and last known contact information, including addresses and email address, of putative class members). The disclosure of phone numbers, however, "implicates privacy concerns and . . . should not be required absent particularized need." *Blount*, 945 F. Supp. 2d at 97.

As such, Omnicare will be directed to produce the full names, last known addresses, and email addresses of the proposed class members. Further, the Court discerns no reason why the proposed members' dates of employment or the names of the courier companies Omnicare contracted with during the claims period should not be disclosed. The Court will not, however, order production of the mobile phone information at this time. Ms. Hager may move for a further order requiring the disallowed production if some potential class members are unable to be reached based on the information produced. *See Blount*, 945 F. Supp. 2d at 97 (permitting plaintiffs to file an additional motion requesting production of birth dates and phone numbers if some potential plaintiffs are unable to be reached by the information provided.).

Furthermore, although Omnicare asserts that it lacks the ability to obtain the requested information, it could easily obtain such information by simply contacting the subcontractors it did business with during the claims period. Indeed, the only information Omnicare needs to make this request is (1) the scope of the putative class as defined earlier within, and (2) the names of those subcontractors with whom it did business, which it presumably possesses. *See Rivera v. Power Design, Inc.*, 172 F. Supp. 3d 321, 330 (D.D.C. 2016) (ordering the defendant to "contact any of its subcontractors . . . that may have records relating to any potential class members" in order to facilitate notice).

Accordingly, the Court **OVERRULES** Omnicare's objection to producing the information described herein and **AUTHORIZES** Ms. Hager's counsel to send notice to all putative collective members via First Class United States Mail and electronic mail.

**b.   Duration of Opt-in Period**

Omnicare next objects to the ninety (90) day opt-in period proposed by Ms. Hager. Instead, Omnicare requests a notice period of sixty (60) days inasmuch as Ms. Hager has not presented any justification to extend notice beyond this period. Ms. Hager, however, asserts that a ninety (90) day period "is warranted given the scope of the collective and based on Omnicare's self-serving position that it has no ability to obtain information that would streamline the notice process and make administrative issues during the notice period less likely to occur." [Doc. 39 at 18-19].

The Court concludes that a ninety (90) day opt-in period is appropriate given the scope of the proposed nationwide class. Indeed, "[d]istrict courts in the Fourth Circuit generally authorize opt-in periods between thirty and ninety days." *Privette v. Waste Pro of N. Carolina, Inc.*, No. 2:19-CV-3221-DCN, 2020 WL 1892167, *7 (D.S.C. Apr. 16, 2020) (collecting cases). Furthermore, while "notice periods may vary . . . numerous courts around the country have authorized ninety day opt-in periods for collective actions." *Butler*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (collecting cases). Accordingly, given the circumstances of this matter, the Court **OVERRULES** Omnicare's objection and **AUTHORIZES** the ninety (90) day opt-in period.

### c.   Reminder Notice

Omnicare next objects to a reminder notice being sent to putative members of the collective forty-five (45) days after the initial mailing of the notice. Ms. Hager contends that a reminder notice is appropriate given the scope of the class and the concern that some class members may not receive the initial notice.

The Court concludes that a reminder notice of forty-five (45) days after mailing of the initial notice is unwarranted given that "district courts around the country have found reminder notices have a tendency to both stir up litigation . . . and inappropriately encourage putative plaintiffs to join the suit." *Byard*, 287 F.R.D. at 373 (collecting cases) (internal citations omitted); *see also Wolfran v. PHH Corp*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (finding "[m]any courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit and encouraging participation.")). Indeed, "[t]he purpose of notice is to simply inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit." *Id.* (quoting *Witteman v. Wisconsin Bell, Inc.*, No. 09-440, 2010 WL 446033, at *3 (W.D.Wis. Feb. 2, 2010)). Accordingly, the Court **SUSTAINS** Omnicare's objection and **DENIES** Ms. Hager's request to issue a reminder notice.

### d.   Content of Notice and Consent Forms

Lastly, Omnicare objects to the content of the proposed notice and opt-in form submitted by Ms. Hager. Omnicare contends that these documents contain inconsistencies and incomplete and inaccurate statements. First, Omnicare asserts that while the notice form correctly states that opt-ins may obtain their own counsel in paragraph nine, paragraph ten and the consent

form "incorrectly advise that opting into the case is consent to being represented by [Ms. Hager's] counsel." [Doc. 35 at 19]. Second, Omnicare asserts that the submitted consent form "improperly requires that the named plaintiff will act as [the opt-ins'] agent to make decisions in the litigation." [*Id.*]. Third, Omnicare contends that the proposed notice lacks the required statement informing opt-ins that they may be held liable for its costs associated with the litigation. Ms. Hager does not address these objections in her reply.

Contrary to Omnicare's assertion, the proposed notice form accurately contains a statement informing opt-ins that they may be responsible for costs. Indeed, paragraph ten of the notice states "[i]f Plaintiff wins or a settlement is reached, you may be entitled to a sum as part of the judgment or settlement. However, if Plaintiff loses, you will receive nothing, *and court costs and expenses could possibly be assessed against you*." [Doc. 32-14 at 5] (emphasis added). The Court finds this statement to be sufficient.

As to Omnicare's remaining objections, the Court agrees that any suggestion regarding mandatory joint representation or named plaintiff agency in the proposed notice and consent form should be removed or modified. *See Davis*, 2019 WL 6499127, at *11 (concluding "representations regarding Named-Plaintiff agency and any suggestions of mandatory joint representation are incomplete or inaccurate and must be modified or stricken."). As Omnicare mentions, the proposed notice form correctly informs opt-ins of their ability to choose their own counsel in paragraph nine. [*See* Doc. 32-14 at 4]. Paragraph ten, however, for the sake of clarity, should be modified to read as follows:

> By timely submitting a Consent Form you will be part of this case. You may agree to be represented by Plaintiff's counsel or counsel of your own choosing. If you wish to be represented by an attorney of your own choosing, he or she may file the opt-in consent form with the Court on your behalf.

Likewise, paragraph four of the consent form should also be modified to permit opt-ins to choose their own counsel should they be inclined to do so, and paragraph five should be eliminated or modified to remove any mention of named-plaintiff agency.

### III.

Based on the foregoing discussion, and having considered the entirety of the record, the Court **ORDERS** as follows:

1. That Omnicare's motion to strike be, and hereby is, **DENIED**;

2. That Ms. Hager's motion for conditional certification and court-facilitated notice on the terms set forth herein be, and hereby is, **GRANTED** as stated earlier within and otherwise denied as to its residue;

3. That a nationwide collective be, and hereby is, **CONDITIONALLY CERTIFIED** as follows:

   > All current and former delivery drivers classified as independent contractors who delivered pharmaceutical products for Omnicare to Omnicare's customers, clients, or business partners and received their last paycheck in connection with this delivery work on or after September 29, 2020;

4. That it be, and hereby is, as stated in footnote ten earlier within, directed that all putative collective members who in fact received notice as part of *Davis v. Omnicare, Inc, et al.*, Case No. 5:18-cv-00142-REW-MA (E.D. Ky.) will not receive notice pursuant to this Memorandum Opinion and Order;

5. That it be, and hereby is, **ORDERED** that Ms. Hager amend her proposed notice and consent form in accordance with the modifications as detailed above and submit the amended notice and consent forms to the Court for final approval by October 5, 2020;

6. That it be, and hereby is, **ORDERED** that counsel for Ms. Hager provide putative collective members the option to consent to join this collective action through the use of electronic signatures; and

7. That it be, and hereby is, **ORDERED** that, within ten (10) days of the date of this Memorandum Opinion and Order, Omnicare shall provide Ms. Hager the full

names, last known mailing addresses, email addresses, and the dates of employment of the putative class members in Excel format, and the names of the courier companies that Omnicare contracted with during the claims period (indicating the relevant dates of the contractual relationship).

ENTERED:    September 29, 2020

Frank W. Volk
United States District Judge